UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW DUNLAP,<br><br>                    Plaintiff,<br><br>  - versus -<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; MICHAEL R. PENCE, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; KRIS W. KOBACH, IN HIS OFFICIAL CAPACITY AS VICE CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; ANDREW KOSSACK, IN HIS OFFICIAL CAPACITY AS DESIGNATED FEDERAL OFFICER FOR THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; GENERAL SERVICES ADMINISTRATION; TIMOTHY R. HORNE, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION; EXECUTIVE OFFICE OF THE PRESIDENT; OFFICE OF THE VICE PRESIDENT; OFFICE OF ADMINISTRATION; MARCIA L. KELLY, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ADMINISTRATION,<br><br>                    Defendants. | Civil Action No. 17-cv-2361-CKK |

**DECLARATION OF MATTHEW DUNLAP**

I, Matthew Dunlap, declare as follows:

1.     I am the Secretary of State of the State of Maine.  I served as Secretary of State from 2005 through 2010 and was reelected Secretary of State by the Maine legislature in 2013.  As Secretary of State, I oversee the Bureau of Corporations, Elections and Commissions, which has oversight of state elections in Maine.  I was appointed to the Presidential Advisory Commission on Election Integrity (the "Commission") on May 11, 2017.  I submit this declaration in support of my motion for a preliminary injunction.

2. In 2013, in my capacity of Secretary of State, I received the recommendations of the 2012 Maine Elections Commission (the "2012 Commission"), a commission of five Maine citizens that studied and offered strategies to improve Maine's election system. The 2012 Commission met five times, held eight public hearings throughout the state of Maine, received written testimonial submissions, and held three deliberative meetings. Based on this process, the 2012 Commission made several unanimous recommendations, including to maintain same-day voter registration and to institute early voting. The 2012 Commission also determined, by a 4-1 vote, that the negative aspects of a Voter ID law outweighed its potential benefits. The 2012 Commission's report, together with a cover letter from me to the Maine Legislature, is attached to this declaration as Exhibit 1.

3. I believe that it is firmly my role as Secretary of State to facilitate the exercise of the right of American citizens to vote, not to discourage its exercise. There are few rights more important than the sovereign right of a citizen to exercise the franchise of self-governance by voting.

4. I agreed to join the Commission because I believed that my experience and perspective on election issues would be helpful to the issues the Commission planned to study. I believed, and continue to believe, that I can use my position as Commissioner to shape the Commission's report and recommendations to the President.

5. On June 28, 2017, I participated in a conference call with the other commissioners, including Vice President Mike Pence (the Commission's chair), and Vice-Chair Kris Kobach. On that call, Vice-Chair Kobach informed the other commissioners and me that the Commission planned to send letters to all 50 states and the District of Columbia asking that they provide the Commission with information from the states' voter rolls. I was not given the requests in advance of this phone call; this phone call was the first time I had heard of these

letters. The commissioners were not given the opportunity to vote on whether to send the letters, which were sent later that same day. I did not have time to review the letters, to consult with other commissioners regarding the letters, or to consider or object to the letters. If I had been given a meaningful opportunity to discuss this matter, I might have opposed the decision to send these letters, or proposed alternative strategies for gathering voting-related information.

6. The Commission held its first public meeting on July 19, 2017 in Washington, D.C. I received only four documents in advance of the July 19 meeting: the Commission's charter, the Commission's by-laws, the executive order establishing the Commission, and a meeting agenda. I was not consulted or otherwise involved in the creation of the agenda for the July meeting. I was not asked my opinion on possible topics for discussion at the meeting and I was not asked to provide the names of any speakers or witnesses that should be invited to the meeting.

7. Several commissioners, including Mr. Kobach, Hans von Spakovsky, Christy McCormick, and J. Kenneth Blackwell, brought documents to the July 19 meeting that were discussed at that meeting. Although I was provided with these documents at the meeting, I did not receive them in advance. I therefore did not have time to review the documents, formulate questions about them, or engage with my fellow commissioners on those topics at the July 19 meeting.

8. The Commission held its second public meeting on September 12, 2017. I was provided with a meeting agenda several days before the September 12 meeting. I was not consulted or otherwise involved in the creation of the agenda. I was not asked my opinion on possible topics for discussion at the meeting and I was not asked to provide the names of any speakers or witnesses that should be invited to the meeting.

9. Between September 12 and November 12, I received no substantive information

or communications regarding the Commission's work. I have not been informed of the Commission's plans to hold another public meeting, nor have I been consulted about topics for discussion or involved in discussions with other commissioners.

10. I have similarly been left uninformed about the Commission's staff. For example, staff member Ronald Williams was arrested and charged with possession and distribution of child pornography on October 13, 2017. I was informed of the arrest from a journalist, not by the Commission. And I still have not been told whether Mr. Williams has been fired, even after inquiries to Andrew Kossack, the Commission's Designated Federal Officer.

11. On October 17, 2017, I wrote a letter to Mr. Kossack. That letter is attached to this declaration as Exhibit 2. I requested "copies of any and all correspondence between Commission members in the possession of the Commission dating from the signing of the Executive Order on May 11th, 2017 until the receipt of this request." I specifically requested "communications between Commissioners themselves, between Commissioners and/or staff and other Federal agencies, communications used in the development of public documents, and any ongoing discourse between Commissioners and staff about the development of policies and/or policy proposals that may be offered to policymakers as either a component of any report or under separate cover." In my letter, I explained to Mr. Kossack that without the information I requested, I could not competently carry out my duties as a commissioner.

12. On October 19, 2017, the Minnesota Voters Alliance ("MVA"), a group dedicated to preventing voter fraud, sent a fundraising appeal stating that MVA "was invited to speak at the December 2017 meeting of the" Commission. The fundraising email is attached to this declaration as Exhibit 3.

13. On October 25, 2017, I received a response from Mr. Kossack. That email is attached to this declaration as Exhibit 4. He did not provide me with the documents I had

4

requested. Instead, he wrote that he was "consulting with counsel" regarding my request and that he would be in touch soon.

14. Later on October 25, 2017, I wrote back asking Mr. Kossack to shed light on the Commission's work plan and communications. My email is attached to this declaration as Exhibit 5. I asked Mr. Kossack to confirm reports that the Commission's work was "on hold," that the Commission had scheduled a meeting for December 2017, and that the Commission had invited the MVA to speak at the December meeting.

15. On October 27, 2017, Mr. Kossack responded. Mr. Kossack's email is attached to this declaration as Exhibit 6. Mr. Kossack wrote that he had not spoken to the MVA and that no meeting was scheduled for December 2017. He did not address whether any commissioner had spoken to the MVA and invited them to a Commission meeting. Mr. Kossack did not confirm that the Commission's work was on hold, stating only that he "had no prior communication with Secretary Lawson about her statements" that the Commission's work was on hold. Mr. Kossack provided no information regarding my pending request for Commission documents.

16. On November 1, 2017, I wrote to Mr. Kossack asking for an update on my request for Commission documents. This email is attached to this declaration as Exhibit 7. I stated that I did not know how the agenda for the September meeting was developed and did not even know what the goal was for that meeting. Again, I explained that I needed information in order to fully participate as a commissioner.

17. I have not received any response to my November 1, 2017 email and still have not received any substantive response to my October 17, 2017 request for documents. Nor has Mr. Kossack or any other commissioner provided me with any Commission documents in response to my request.

18. The Commission's failure to include me in its work or discussions has rendered

5

me unable to fulfill my responsibilities as commissioner. I am eager to contribute to the work of the Commission but I am unable to participate in a meaningful fashion because the Commission has not shared any documents or communications about the Commission's work and has refused to involve me in investigations or deliberations.

19. If the Commission is not compelled to provide me the documents I requested and to involve me in its work and deliberations, I fear that I will be unable to participate fully in future meetings, I will be unable to contribute to the report and recommendations to the President, and I will be unable to draft a concurrence or a dissent if I disagree with any of the Commission's findings.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of November, 2017.

Matthew Dunlap