**EXHIBIT B[1]**

---

[1] This Exhibit was originally filed in *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 17-cv-1320 (CKK) (D.D.C. July 5, 2017), ECF No. 8-1. It is refiled here for the convenience of the Court and the parties.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*,<br><br>    Defendants. | Civil Action No. 1:17-cv-1320 (CKK) |

## **DECLARATION OF KRIS W. KOBACH**

I, Kris W. Kobach, declare as follows:

1.    I am the Secretary of State of Kansas, having served in that position since 2011. I am also the Vice-Chair of the Presidential Advisory Commission on Election Integrity (the "Commission"), which the President established on May 11, 2017, pursuant to Executive Order 13799. The Commission is charged with studying the registration and voting processes used in federal elections and submitting a report to the President that identifies laws, rules, policies, activities, strategies, and practices that enhance or undermine Americans' confidence in the integrity of the federal election process.

2.    The information provided in this declaration is based on my personal knowledge and upon information provided to me in my official capacity as Vice-Chair of the Commission.

3.    The Commission was established within the Executive Office of the President and is chaired by the Vice President. The membership, not more than fifteen, is appointed by the President. The members of the Commission come from federal, state, and local jurisdictions

across the political spectrum.  The Commission, which is solely advisory, is charged with submitting a report to the President containing its findings and recommendations.  The duties of the Commission are set forth in Executive Order 13799 (attached as Exhibit 1) and the Commission's Charter (attached as Exhibit 2).  Pursuant to the Charter, the records of the Commission and any subcommittees shall be maintained pursuant to the Presidential Records Act of 1978.

      4.      In furtherance of the Commission's mandate, I directed that identical letters (with different addressees) be sent to the secretaries of state or chief election officers of each of the fifty states and the District of Columbia.   The letters solicit the views and recommendations of the secretaries of state and request their assistance in providing to the Commission publicly-available voter roll data to enable the Commission to fully analyze vulnerabilities and issues related to voter registration and voting.  Specifically, I asked for the following data, "if publicly available under the laws of your state":  full first and last names of registrants; middle names or initials if available; addresses; dates of birth; political party (if recorded); last four digits of social security numbers; voter history (elections voted in) from 2006; active/inactive status; cancelled status; information regarding prior felony convictions; information regarding voter registration in another state; military status; and overseas citizen information.  The information requested is similar to the information that states are required to maintain and to make available for public inspection under the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA).  *See, e.g.*, 52 U.S.C. §§ 20507(i), 21083.  The letter I sent to the Secretary of State of Alabama, which is representative of all the letters, is attached as Exhibit 3.

      5.      In these letters, I requested that the states respond by July 14, 2017, and described two methods for responding.  I intended that narrative responses, not containing voter roll data,

be sent via email to the address provided in the letter.  This email is a White House email address (in the Office of the Vice President) and subject to the security protecting all White House communications and networks.  For voter roll data, I intended that the states use the Safe Access File Exchange ("SAFE"), which is a secure method of transferring large files up to two gigabytes (GB) in size.  SAFE is a tested and reliable method of secure file transfer used routinely by the military for large, unclassified data sets.  It also supports encryption by individual users.  My letters state that "documents" submitted to the Commission will be made available to the public.  That refers only to the narrative responses.  With respect to voter roll data, the Commission intends to de-identify any such data prior to any public release of documents.  In other words, the voter rolls themselves will not be released to the public by the Commission.  The Commission intends to maintain the data on the White House computer system.

6. To my knowledge, as of July 5, 2017, no Secretary of State had yet provided to the Commission any of the information requested in my letter.  I have read media reports that numerous states have indicated that they will decline to provide all or some portion of the information, in some cases because individual state law prohibits such transfer of information.  However, it is my belief that there are inaccuracies in those media reports with respect to various states.

7.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

***

Executed this 5th day of July 2017.

_____
Kris W. Kobach

# **EXHIBIT 1**



22389

**Federal Register**

Vol. 82, No. 93

Tuesday, May 16, 2017

**Presidential Documents**

**Title 3—**

**The President**

Executive Order 13799 of May 11, 2017

Establishment of Presidential Advisory Commission on Election Integrity

By the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to promote fair and honest Federal elections, it is hereby ordered as follows:

**Section 1**. *Establishment*. The Presidential Advisory Commission on Election Integrity (Commission) is hereby established.

**Sec. 2**. *Membership*. The Vice President shall chair the Commission, which shall be composed of not more than 15 additional members. The President shall appoint the additional members, who shall include individuals with knowledge and experience in elections, election management, election fraud detection, and voter integrity efforts, and any other individuals with knowledge or experience that the President determines to be of value to the Commission. The Vice President may select a Vice Chair of the Commission from among the members appointed by the President.

**Sec. 3**. *Mission*. The Commission shall, consistent with applicable law, study the registration and voting processes used in Federal elections. The Commission shall be solely advisory and shall submit a report to the President that identifies the following:

(a) those laws, rules, policies, activities, strategies, and practices that enhance the American people's confidence in the integrity of the voting processes used in Federal elections;

(b) those laws, rules, policies, activities, strategies, and practices that undermine the American people's confidence in the integrity of the voting processes used in Federal elections; and

(c) those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting.

**Sec. 4**. *Definitions*. For purposes of this order:

(a) The term ''improper voter registration'' means any situation where an individual who does not possess the legal right to vote in a jurisdiction is included as an eligible voter on that jurisdiction's voter list, regardless of the state of mind or intent of such individual.

(b) The term ''improper voting'' means the act of an individual casting a non-provisional ballot in a jurisdiction in which that individual is ineligible to vote, or the act of an individual casting a ballot in multiple jurisdictions, regardless of the state of mind or intent of that individual.

(c) The term ''fraudulent voter registration'' means any situation where an individual knowingly and intentionally takes steps to add ineligible individuals to voter lists.

(d) The term ''fraudulent voting'' means the act of casting a non-provisional ballot or multiple ballots with knowledge that casting the ballot or ballots is illegal.

**Sec. 5**. *Administration*. The Commission shall hold public meetings and engage with Federal, State, and local officials, and election law experts, as necessary, to carry out its mission. The Commission shall be informed by, and shall strive to avoid duplicating, the efforts of existing government entities. The Commission shall have staff to provide support for its functions.

**Sec. 6**. *Termination*. The Commission shall terminate 30 days after it submits its report to the President.

**Sec. 7**. *General Provisions*. (a) To the extent permitted by law, and subject to the availability of appropriations, the General Services Administration shall provide the Commission with such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out its mission on a reimbursable basis.

(b) Relevant executive departments and agencies shall endeavor to cooperate with the Commission.

(c) Insofar as the Federal Advisory Committee Act, as amended (5 U.S.C. App.) (the "Act"), may apply to the Commission, any functions of the President under that Act, except for those in section 6 of the Act, shall be performed by the Administrator of General Services.

(d) Members of the Commission shall serve without any additional compensation for their work on the Commission, but shall be allowed travel expenses, including per diem in lieu of subsistence, to the extent permitted by law for persons serving intermittently in the Government service (5 U.S.C. 5701–5707).

(e) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(f) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(g) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*May 11, 2017.*

[FR Doc. 2017–10003
Filed 5–15–17; 8:45 am]
Billing code 3295–F7–P

# **EXHIBIT 2**

# CHARTER

# PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY

1. **Committee's Official Designation**. Presidential Advisory Commission on Election Integrity ("Commission").

2. **Authority**. The Commission is established in accordance with Executive Order 13799 of May 11, 2017, "Establishment of a Presidential Advisory Commission on Election Integrity," ("Order") and the provisions of the Federal Advisory Committee Act ("FACA"), as amended (5 U.S.C. App.).

3. **Objectives and Scope of Activities**. The Commission will, consistent with applicable law and the Order, study the registration and voting processes used in Federal elections. The Commission shall be solely advisory and shall submit a report to the President of the United States ("President") that identifies the following:

    a. those laws, rules, policies, activities, strategies, and practices that enhance the American people's confidence in the integrity of the voting processes used in Federal elections;
    b. those laws, rules, policies, activities, strategies, and practices that undermine the American people's confidence in the integrity of voting processes used in Federal elections; and
    c. those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting.

4. **Description of Duties**. The Commission will function solely as an advisory body.

5. **Agency or Official to Whom the Committee Reports**. The Commission shall provide its advice and recommendations to the President.

6. **Agency Responsible for Providing Support**. The General Services Administration ("GSA") shall provide the Commission with such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out its mission, to the extent permitted by law and on a reimbursable basis. However, the President's designee will be responsible for fulfilling the requirements of subsection 6(b) of the FACA.

7. **Estimated Annual Operating Costs and Staff Years**. The estimated annual costs to operate the Commission are approximately $250,000 in FY2017 and approximately $250,000 in FY2018, as needed, including approximately three full-time equivalent employees (FTEs) over the duration of the Commission.

8. **Designated Federal Officer**. Pursuant to 41 CFR § 102-3.105 and in consultation with the chair of the Commission, the GSA Administrator shall appoint a full-time or part-time federal employee as the Commission's Designated Federal Officer ("DFO"). The DFO will approve or

call all Commission meetings, prepare or approve all meeting agendas, attend all Commission meetings and any subcommittee meetings, and adjourn any meeting when the DFO determines adjournment to be in the public interest. In the DFO's discretion, the DFO may utilize other Federal employees as support staff to assist the DFO in fulfilling these responsibilities.

9. **Estimated Number and Frequency of Meetings**.  Meetings shall occur as frequently as needed, called, and approved by the DFO. It is estimated the Commission will meet five times at a frequency of approximately 30-60 days between meetings, subject to members' schedules and other considerations.

10. **Duration and Termination**.  The Commission shall terminate no more than two (2) years from the date of the Executive Order establishing the Commission, unless extended by the President, or thirty (30) days after it presents its final report to the President, whichever occurs first.

11. **Membership and Designation**.

    (a) The Vice President shall chair the Commission, which shall be composed of not more than fifteen (15) additional members.

    (b) Members shall be appointed by the President of the United States and shall include individuals with knowledge and experience in elections, election management, election fraud detection, and voter integrity efforts, and any other individuals with knowledge or experience determined by the President to be of value to the Commission.  Members of the Commission may include both regular Government Employees and Special Government Employees.

    (c) The Vice President may select a Vice Chair from among those members appointed by the President, who may perform the duties of the chair if so directed by the Vice President. The Vice President may also select an executive director and any additional staff he determines necessary to support the Commission.

    (d) Members of the Commission will serve without additional compensation.  Travel expenses will be allowed, including per diem in lieu of subsistence, as authorized by law for persons serving intermittently in the Government service (5 U.S.C. 5701-5707), consistent with the availability of funds.

12. **Subcommittees**.  The Chair of the Commission, in consultation with the DFO, is authorized to create subcommittees as necessary to support the Commission's work.  Subcommittees may not incur costs or expenses without prior written approval of the Chair or the Chair's designee and the DFO. Subcommittees must report directly to the Commission, and must not provide advice or work products directly to the President, or any other official or agency.

13. **Recordkeeping**.  The records of the Commission and any subcommittees shall be maintained pursuant to the Presidential Records Act of 1978 and FACA.

14. **Filing Date**.  The filing date of this charter is June 23, 2017.

# **EXHIBIT 3**

# Presidential Advisory Commission on Election Integrity

June 28, 2017

The Honorable John Merrill
Secretary of State
PO Box 5616
Montgomery, AL 36103-5616

Dear Secretary Merrill,

I serve as the Vice Chair for the Presidential Advisory Commission on Election Integrity ("Commission"), which was formed pursuant to Executive Order 13799 of May 11, 2017. The Commission is charged with studying the registration and voting processes used in federal elections and submitting a report to the President of the United States that identifies laws, rules, policies, activities, strategies, and practices that enhance or undermine the American people's confidence in the integrity of federal elections processes.

As the Commission begins it work, I invite you to contribute your views and recommendations throughout this process. In particular:

1. What changes, if any, to federal election laws would you recommend to enhance the integrity of federal elections?
2. How can the Commission support state and local election administrators with regard to information technology security and vulnerabilities?
3. What laws, policies, or other issues hinder your ability to ensure the integrity of elections you administer?
4. What evidence or information do you have regarding instances of voter fraud or registration fraud in your state?
5. What convictions for election-related crimes have occurred in your state since the November 2000 federal election?
6. What recommendations do you have for preventing voter intimidation or disenfranchisement?
7. What other issues do you believe the Commission should consider?

In addition, in order for the Commission to fully analyze vulnerabilities and issues related to voter registration and voting, I am requesting that you provide to the Commission the publicly-available voter roll data for Alabama, including, if publicly available under the laws of your state, the full first and last names of all registrants, middle names or initials if available, addresses, dates of birth, political party (if recorded in your state), last four digits of social

security number if available, voter history (elections voted in) from 2006 onward, active/inactive status, cancelled status, information regarding any felony convictions, information regarding voter registration in another state, information regarding military status, and overseas citizen information.

You may submit your responses electronically to ElectionIntegrityStaff@ovp.eop.gov or by utilizing the Safe Access File Exchange ("SAFE"), which is a secure FTP site the federal government uses for transferring large data files. You can access the SAFE site at https://safe.amrdec.army.mil/safe/Welcome.aspx. We would appreciate a response by July 14, 2017. Please be aware that any documents that are submitted to the full Commission will also be made available to the public. If you have any questions, please contact Commission staff at the same email address.

On behalf of my fellow commissioners, I also want to acknowledge your important leadership role in administering the elections within your state and the importance of state-level authority in our federalist system. It is crucial for the Commission to consider your input as it collects data and identifies areas of opportunity to increase the integrity of our election systems.

I look forward to hearing from you and working with you in the months ahead.

Sincerely,

*Kris Kobach*

Kris W. Kobach
Vice Chair
Presidential Advisory Commission on Election Integrity

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al*,<br><br>　　　　Defendants. | Civil Action No. 1:17-cv-1320 (CKK) |

## [PROPOSED] ORDER

It is hereby ORDERED that Plaintiff's Motion for a Temporary Restraining Order, ECF No. 3, is DENIED.

DATE:_____            _____

　　　　　　　　　　　　　　　　　　　　HON. COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE