## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

MATTHEW DUNLAP,

          Plaintiff,

     - versus -

PRESIDENTIAL ADVISORY COMMISSION ON ELECTION
INTEGRITY; MICHAEL R. PENCE, IN HIS OFFICIAL
CAPACITY AS CHAIR OF THE PRESIDENTIAL
ADVISORY COMMISSION ON ELECTION INTEGRITY;
KRIS W. KOBACH, IN HIS OFFICIAL CAPACITY AS VICE
CHAIR OF THE PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION INTEGRITY; ANDREW
KOSSACK, IN HIS OFFICIAL CAPACITY AS
DESIGNATED FEDERAL OFFICER FOR THE
PRESIDENTIAL ADVISORY COMMISSION ON ELECTION
INTEGRITY; GENERAL SERVICES ADMINISTRATION;
TIMOTHY R. HORNE, IN HIS OFFICIAL CAPACITY AS
ACTING ADMINISTRATOR OF THE GENERAL SERVICES
ADMINISTRATION; EXECUTIVE OFFICE OF THE
PRESIDENT; OFFICE OF THE VICE PRESIDENT; OFFICE
OF ADMINISTRATION; MARCIA L. KELLY, IN HER
OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF
ADMINISTRATION,

          Defendants.

Civil Action No. 17-cv-2361-CKK

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A
TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND.................................................................................2

    A.    The Court Grants In Large Part Secretary Dunlap's Motion for a Preliminary Injunction .................................................................................2

    B.    Defendants Refuse To Comply With The December 22 Decision .........................3

III.    ARGUMENT .........................................................................................................6

    A.    Secretary Dunlap Is Likely To Succeed On the Merits ...........................7

    B.    A TRO Is Necessary To Prevent Irreparable Harm ................................8

    C.    A TRO Is In the Public Interest and the Balance of Harms Favor Secretary Dunlap10

IV.    CONCLUSION....................................................................................................11

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ctr. for Arms Control & Non-Proliferation v. Lago,*
 2006 U.S. Dist. LEXIS 83226 (D.D.C. Nov. 15, 2006) ........................................................7

\* *Ctr. for Biological Diversity v. Tidwell,*
 239 F. Supp. 3d 213, 227 (D.D.C. 2017) .................................................................7

\* *Cummock v. Gore,*
 180 F.3d 282 (D.C. Cir. 1999) .................................................................. *passim*

*Elec. Privacy Info. Ctr. v. Dep't of Justice,*
 416 F. Supp. 2d 30 (D.D.C. 2006) .................................................................9

*Freedom Watch, Inc. v. Obama,*
 859 F. Supp. 2d 169 (D.D.C. 2012) .................................................................7

*Hall v. Johnson,*
 599 F. Supp. 2d 1 (D.D.C. 2009) .................................................................6

*Judicial Watch v. Nat'l Energy Policy Dev. Group,*
 219 F. Supp. 2d 20 (D.D.C. 2002) .................................................................7

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.,*
 773 F. Supp. 2d 151 (D.D.C. 2011) .................................................................9

*Pinson v. United States DOJ,*
 202 F. Supp. 3d 86, 102 (D.D.C. 2016) .................................................................10

*Sibley v. Obama,*
 810 F. Supp. 2d 309 (D.D.C. 2011) .................................................................6

*Young v. Office of the United States Senate Sergeant at Arms,*
 217 F.R.D. 61 (D.D.C. 2003) .................................................................10

**Statutes**

Federal Advisory Committee Act, 5 U.S.C. app. 2 §§5, 10(b) ............................................ *passim*

**Other Authorities**

Exclusive-Kris Kobach: Voter Fraud Commission 'Being Handed Off' to DHS,
 Will No Longer Be 'Stonewalled' By Dems, Breitbart (Jan. 3, 2018),
 *available at* http://www.breitbart.com/big-government/2018/01/03/exclusive-
 kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-
 be-stonewalled-by-dems/ .................................................................6, 8

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

Statement by the Press Secretary on the Presidential Advisory Commission on
 Election Integrity (Jan. 3, 2018), *available at*,
 https://www.whitehouse.gov/briefings-statements/president-announces-
 formation-bipartisan-presidential-commission-election-integrity ....................................2, 4, 8

Executive Order on the Termination of Presidential Advisory Commission on
 Election Integrity (Jan. 3, 2018), *available at*
 https://www.whitehouse.gov/presidential-actions/executive-order-termination-
 presidential-advisory-commission-election-integrity/ ..............................................................4

Michael Tackett and Michael Wines, "Trump Disbands Commission on Voter
 Fraud," The New York Times (Jan. 3, 2018), *available at*
 https://www.nytimes.com/2018/01/03/us/politics/trump-voter-fraud-
 commission.html.......................................................................................................................5

The Topeka Capital-Journal (Dec. 30, 2017), *available at*
 http://cjonline.com/news/state-government/2017-12-29/kobach-voter-
 integrity-commission-stalled-lawsuits-will-meet ....................................................................8

## I.     INTRODUCTION

Plaintiff Secretary of State Matthew Dunlap applies for a temporary restraining order to compel Defendants to comply with their duties under the Federal Advisory Committee Act ("FACA") generally, and with this Court's December 22, 2017 Memorandum Opinion and Order (the "Dec. 22 Decision") specifically.  Rather than comply with the Dec. 22 Decision and allow Secretary Dunlap to fully participate in the Presidential Advisory Commission on Election Integrity (the "Commission"), Defendants chose to shut down the Commission.  But dissolving the Commission does not entitle Defendants to evade their statutory duties or the equitable power of this Court.  Defendants not only refuse to provide Secretary Dunlap with any of the documents compelled by the Dec. 22 Decision, but they also now refuse to permit Secretary Dunlap to "fully participate" in the remaining activities of the Commission, including its winding down and its disposition of Commission materials.  Moreover, Defendants have indicated that they will be transferring Commission materials, including "initial findings" to the Department of Homeland Security ("DHS") without consulting Secretary Dunlap.  Secretary Dunlap is unaware of the nature of those findings, has had no opportunity to comment on them, and is being denied an opportunity to issue his own findings.  Faced with Defendants' intransigence and imminent irreparable harm, Secretary Dunlap seeks an order preserving the status quo pending enforcement of the Dec. 22 Decision.  As the Court noted in its Dec. 22 Decision, *Cummock*—in which an advisory committee transmitted its results and disbanded before the plaintiff could meaningfully participate—was "a case that never should have happened."  Dkt. 33 at 16. Notwithstanding the Court's early intervention here, this case stands upon the same precipice.

## II.    FACTUAL BACKGROUND

As the Court is aware, Secretary Dunlap was appointed to the Commission on May 11, 2017 by President Donald Trump.[1]  Frustrated with the Commission's unwillingness to include him in decisions made by the Commission or even to share with him basic information and documents relating to the Commission's work, Secretary Dunlap filed this action on November 9, 2017, seeking relief under, *inter alia*, Sections 5 and 10(b) of the Federal Advisory Committee Act.  Complaint (Dkt. 1).  After making further unsuccessful efforts to obtain access to the documents necessary for him to participate fully in the Commission's work, Secretary Dunlap filed a motion for a preliminary injunction on November 17, 2017.  Dkt. 7.  The government opposed the motion in papers submitted on December 1, 2017.  Dkt. 30.

### A.    The Court Grants In Large Part Secretary Dunlap's Motion for a Preliminary Injunction

On December 22, 2017, this Court issued a written opinion granting in part and denying in part the motion for a preliminary injunction filed by Secretary Dunlap.  Dkt. 33.  The Court held that pursuant to FACA § 10(b), Secretary Dunlap has "a clear and indisputable right" to obtain documents relating to the Commission's work.  *Id.* at 14.  The Court recognized Secretary Dunlap's right as a commissioner to "'fully participate' in the proceedings of the Commission." *Id.* at 15.  Based on this, the Court concluded, Secretary Dunlap has a right to access documents not shared with the public that the Commission might rely on in the course of developing its final recommendations.  *Id.*  Although the Court did not identify each and every document to which Secretary Dunlap was entitled, the Court gave three examples of documents that the Commission

---

[1] Press Release, Office of the Press Secretary, President Announces Formation of Bipartisan Presidential Commission on Election Integrity (May 11, 2017), *available at* https://www.whitehouse.gov/briefings-statements/president-announces-formation-bipartisan-presidential-commission-election-integrity

should have shared with him.[2]  *Id.* at 18.  The Court also held that Secretary Dunlap would suffer irreparable harm if he did not receive the documents.  *Id.* at 22.  Finally, the Court held that the balance of equities and the public interest supported ordering production of the documents.  *Id.* at 22-23.[3]

The Court relied on *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999) in reaching its decision.  *Id.* at 14.  In *Cummock*, a member of a presidential advisory committee on aviation safety was denied access to documents, even at the point when the commission delivered its final recommendations.  *Cummock*, 180 F.3d at 286-87.  This denied the commissioner an opportunity to comment on the recommendations or to issue a fully informed dissent.  *Id.* at 293.  Even though the commission in question had already concluded its work, the D.C. Circuit still ruled that the commissioner was entitled to receive the documents.  *Id.*  This Court rejected Defendants' attempt to distinguish *Cummock* on the grounds that the Commission was still operating, while the *Cummock* decision related to a commission whose operations had concluded by the time of the lawsuit.  Dkt. 33 at 16-17.

**B.   Defendants Refuse To Comply With The December 22 Decision**

Rather than comply with the Dec. 22 Decision, the Government decided to disband the Commission before any documents were produced to Secretary Dunlap.  On January 3, 2018,

---

[2] Secretary Dunlap should have received a draft of the voter data request made by Commission Vice-Chair Kris Kobach, the proposals made by Secretary Gardner about the location, content and possible speakers at the September 12, 2017 meeting, and documents concerning a once-anticipated Commission meeting in December 2017, as well as documents about the ultimate decision not to hold that meeting.  Dkt. 33 at 18.

[3] The Court denied Secretary Dunlap's motion in part, finding that it would be premature to order participation on an equal basis or to enjoin a final report.  The Court suggested it would reconsider granting the denied relief if Defendants did "not provide the required documents in a timely fashion."  Dkt. 33 at 21.

President Trump issued an executive order terminating the Commission.[4]  An accompanying statement from the Press Secretary to the President averred that the Commission was being shuttered due to "legal battles."[5]  The press statement also stated that President Trump had "asked the Department of Homeland Security to review [the Commission's] initial findings and determine next courses of action."[6]  A notice of the executive order was filed in this matter.  Dkt. 34.

The following day, counsel for Secretary Dunlap wrote a letter to defense counsel at the Department of Justice stating that Secretary Dunlap expected to be permitted to participate in the process of winding down the Commission, including any contemplated transfer of information from the Commission to DHS.  (Jan. 4, 2017 Letter at 1-2 (Ex. 1)).  Counsel also stated that it still expected the Commission to share with Secretary Dunlap the documents that are within the scope of the Court's Decision.  *Id.* at 2.

In response, the Department of Justice wrote a letter stating that it would not comply with the Court's decision because the Commission was no longer in existence, and that the Defendants intended to ask this Court to reconsider and vacate the preliminary injunction.  (Jan. 5 Letter at 2 (Ex. 2)).  Thus, although the proffered reason for disbanding the Commission was to end the "endless legal battles at taxpayer expense,"[7] the Government has made clear that it intends to continue this litigation rather than provide the documents to Secretary Dunlap and end

---

[4] Executive Order on the Termination of Presidential Advisory Commission on Election Integrity (Jan. 3, 2018), *available at* https://www.whitehouse.gov/presidential-actions/executive-order-termination-presidential-advisory-commission-election-integrity/

[5] Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity (Jan. 3, 2018), *available at*, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/

[6] *Id.*

[7] Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity (Jan. 3, 2018), *available at*, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/

this dispute. The letter stated that Secretary Dunlap had no rights greater than those of a member of the general public because the Commission will not "develop any *final* recommendations." *Id*. (emphasis added).

The Department of Justice also addressed the disposition of the Commission's records. Although it represented that "the state voter data collected by the Commission is not being transferred or utilized," it denied Secretary Dunlap's right to have any role in the "disposition of materials formerly used" by the Commission.  *Id.* at 2.  No citation was offered for Defendants' decision not to permit Secretary Dunlap participate in the winding down of the Commission. Moreover, implicit in the DOJ's assurance that the state voter data is not being transferred is the possibility that other Commission files—for example, the "initial findings" referenced in the Press Secretary's statement—have been or will be transferred to DHS or other persons or entities within or outside of the federal government.  Commission Vice-Chair Kris Kobach (a defendant in this action) made public statements last week that this is exactly what will happen:

> "It got to the point where the staff of the commission was spending more time responding to litigation than doing an investigation," Mr. Kobach said. "Think of it as an option play; a decision was made in the middle of the day to pass the ball.  The Department of Homeland Security is going to be able to move faster and more efficiently than a presidential advisory commission."[8]

Mr. Kobach himself has stated that he will be "an informal adviser to homeland security"[9] and that he will be "working closely with the White House and DHS to ensure the investigations

---

[8] Michael Tackett and Michael Wines, "Trump Disbands Commission on Voter Fraud," The New York Times (Jan. 3, 2018), *available at* https://www.nytimes.com/2018/01/03/us/politics/trump-voter-fraud-commission.html.

[9] *Id.*

continue,"[10] suggesting that the Commission will live on in some form but without Secretary Dunlap's participation.

On the morning of January 9, 2018, counsel for Secretary Dunlap wrote to the Department of Justice asking them to stipulate to conditions which would maintain the status quo and protect Secretary Dunlap's rights pending the Court's consideration of Defendants' anticipated motion for reconsideration of the Dec. 22 Decision, which would obviate the need for Secretary Dunlap to seek immediate relief from the Court. Email and Proposed Stipulation, (Ex. 3). After waiting several hours, DOJ attorney wrote back to say that he was unable to provide a substantive response. The attorney did not commit to maintain the status quo for the time being or promise to provide a substantive response by a specific time. Email (Ex. 4).

In light of the Government's letter refusing to comply with the Dec. 22 Decision, the Government's troubling assertion of the unilateral right to dispose of the Commission's materials in whatever manner it chooses, the statements of Vice-Chair Kobach, and the Government's refusal to stipulate to conditions that would protect Secretary Dunlap's rights, Secretary Dunlap has no choice but to seek the Court's intervention. It is clear that Defendants are not maintaining the status quo while they draft their promised motion.

## III.    ARGUMENT

The standards for obtaining a preliminary injunction and a temporary restraining order are the same. *Hall v. Johnson*, 599 F. Supp. 2d 1, 3. n. 2 (D.D.C. 2009). "To obtain a temporary restraining order, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the temporary restraining

---

[10] John Binder, "Exclusive-Kris Kobach: Voter Fraud Commission 'Being Handed Off' to DHS, Will No Longer Be 'Stonewalled' By Dems, Breitbart (Jan. 3, 2018), *available at* http://www.breitbart.com/big-government/2018/01/03/exclusive-kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-be-stonewalled-by-dems/

order were not granted; (3) that such an order would not substantially injure other interested

parties; and (4) that such an order furthers the public interest." *Sibley v. Obama*, 810 F. Supp. 2d

309, 310 (D.D.C. 2011) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290,

297 (D.C. Cir. 2006)).  Secretary Dunlap satisfies each factor.

## A.  Secretary Dunlap Is Likely To Succeed On the Merits

The Court has already found that Secretary Dunlap has demonstrated a likelihood of

success on the merits of his claims under the Federal Advisory Committee Act, Dkt. 33, and

none of the events since the Dec. 22 Decision disturb that finding.  It is well-established that a

"claim for document disclosure survives the termination of a FACA advisory committee, at least

until all of the relevant materials have been disclosed." *Ctr. for Biological Diversity v. Tidwell*,

239 F. Supp. 3d 213, 227 (D.D.C. 2017) (citing *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir.

1999)); *see also Judicial Watch v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 30

(D.D.C. 2002) ("whether relief [under FACA § 10(b)] is available is contingent not on the

continued existence of the group, but on the continued existence of the records and

information"); *Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169, 174-75 (D.D.C. 2012)

(same); *Ctr. for Arms Control & Non-Proliferation v. Lago*, 2006 U.S. Dist. LEXIS 83226, at

*10-11 (D.D.C. Nov. 15, 2006) (same).  Because Defendants have not provided the documents,

Secretary Dunlap's FACA claim remains live and valid.

In fact, this case is now even more similar to the controlling case of *Cummock.*  In their

preliminary injunction briefing, Defendants attempted to *distinguish Cummock* on the basis that

*Cummock* involved an advisory committee that had been terminated, while the Commission was

still operating.  Defs' PI Brief (Dkt. 30) at 24; Dec. 22 Decision (Dkt. 33 at 16-17).  As

*Cummock* confirms, "FACA rights are enforceable even after an advisory committee has been

disbanded." *Cummock*, 180 F.3d at 292.  It is of no moment that the Commission was shuttered

before an official report was published; Secretary Dunlap's right to Commission documents clearly and indisputably survives the end of the Commission.

### B.      A TRO Is Necessary To Prevent Irreparable Harm

Secretary Dunlap will suffer irreparable harm if this application is not granted. Regrettably, the Court's Order was not sufficient to ward off "the level of dysfunction that precipitated *Cummock*" and the Commission is in the process of being disbanded. Dkt. 33 at 17.[11]  Unlike Ms. Cummock, however, it may not be too late for Secretary Dunlap to exercise some of his rights under FACA.  Decisions relating to the Commission (including the disposition of Commission documents, communications, and work product) are still being made and Secretary Dunlap has a right to "fully participate" in those decisions.  *Id.* at 22.  President Trump and Vice-Chair Kobach both have stated that the Commission's "initial findings" will be transferred to DHS.[12]  Because the Commission is now disbanded, these "initial findings" will not be supplanted by other findings and are in reality "final" determinations to which Secretary Dunlap is entitled to respond.  *See Cummock*, 180 F.3d at 290, 293 (commissioner has a right "to prepare a fully informed dissent").[13]

---

[11] The level of dysfunction at the Commission continued right to the end:  only five days before President Trump disbanded the Commission, there were indications the Commission was in the process of scheduling its next meeting, again without consulting Secretary Dunlap in apparent violation of the Dec. 22 Decision.  *See* Allison Kite, "Kobach voter integrity commission, stalled by lawsuits, will meet in January," The Topeka Capital-Journal (Dec. 30, 2017), *available at* http://cjonline.com/news/state-government/2017-12-29/kobach-voter-integrity-commission-stalled-lawsuits-will-meet

[12] Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity (Jan. 3, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/; John Binder, "Exclusive-Kris Kobach: Voter Fraud Commission 'Being Handed Off' to DHS, Will No Longer Be 'Stonewalled' By Dems, Breitbart (Jan. 3, 2018), *available at* http://www.breitbart.com/big-government/2018/01/03/exclusive-kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-be-stonewalled-by-dems/

[13] Moreover, in hindsight, it is hard to reconcile the DOJ's statement in its December 1, 2017 brief that "no recommendations . . . have been formulated" by the Commission, Dkt. 30 at 24, with President Trump's January 3, 2018 statement that "initial findings" already have been formulated.

Secretary Dunlap will be irreparably harmed if any documents or findings are in fact transferred to DHS or to any other person or entity before Secretary Dunlap has an opportunity to review those findings and all Commission documents that underpin those findings or may have been considered in making those findings.  Moreover, transmission of the Commission's "initial findings" (and untold other material) to DHS so DHS (with Vice-Chair Kobach's apparent participation) can continue the Commission's work will irreparably harm Secretary Dunlap by bestowing upon those "findings" the "prestige" and "political legitimacy" that arises from the commission's balanced makeup.  *See Cummock*, 180 F.3d at 292 (quoting *Ass'n of Amer. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1997) (quotation marks omitted)).  The Court recognized the harm suffered by Secretary Dunlap that arose from the Commission's conduct prior to December 22; that harm will be amplified if DHS is empowered to utilize the commission's work before Secretary Dunlap has an opportunity to confirm or dispute its validity.

Given President Trump's, Vice-Chair Kobach's, and the Government's statements, the relief of an injunction against the dissemination of any findings or Commission documents is no longer "premature" and should now be granted.  *See* Dkt. 33 at 20-21.  The status quo is not being maintained.  *See Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 162 (D.D.C. 2011) ("The purpose of a TRO is to maintain the status quo of a case until the court has an opportunity to hear a request for fuller relief.").  Absent a temporary restraining order, Secretary Dunlap will be precluded "from obtaining in a timely fashion information vital to the current and ongoing debate" surrounding election and voter fraud issues.  *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006).

9

**C.    A TRO Is In the Public Interest and the Balance of Harms Favor
        Secretary Dunlap**

The balancing of the equities and public interest factors also strongly favor Secretary

Dunlap.  As the Court recognized, "[b]y withholding the substantive documents discussed in [the

Court's] opinion, the Commission ignores the strictures imposed by FACA to prevent

unbalanced commissions, and ignores the rights and obligations required by *Cummock*, leaving

the public to pay any concomitant price." Dkt. 33 at 23.  The harm to Secretary Dunlap and the

public interest in favor of disclosure and Secretary Dunlap's right to be fully involved in any

remaining Commission decisions is even more heightened now.  Only by obtaining Commission

documents and enjoining the distribution of Commission "findings" until he has a chance to

review and comment can Secretary Dunlap fulfill his interest in contributing to the discussion he

was appointed to participate in.  He is still entitled to draft and publish a "dissent incorporating

[his] fully enlightened views" responding to the statements published in the press by President

Trump and Vice-Chair Kobach.  *Cummock*, 180 F.3d at 293.

In addition, if Defendants are allowed to avoid the requirements of FACA, the public at

large will suffer.  *See Pinson v. United States DOJ*, 202 F. Supp. 3d 86, 102 (D.D.C. 2016)

(noting the "public interest in knowing what the government is up to").  Moreover, Defendants

should not be allowed to evade compliance with a Court order by terminating the Commission.

*See Young v. Office of the United States Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C.

2003) (noting the "public interest in preserving the integrity of the courts").  The Commission

was created, it existed for several months, and it gathered information about issues of vital public

importance, and it cannot—in response to a court order granting a complaining commissioner

equal participation—simply be thrown down the "memory hole," as the Government is seeking

to do.

Finally, Defendants will not be harmed by an order maintaining the status quo.  Aside from the steps it plans to take with respect to the disposition of records and the transfer of materials to DHS, the Commission asserts that its work has concluded.  Accordingly, any temporary restriction on the disposition of Commission materials will not be harmful, especially balanced against the harm Secretary Dunlap will suffer if his rights are further infringed.

## IV.    CONCLUSION

Secretary Dunlap has satisfied the requirements for a temporary restraining order. Accordingly, he respectfully requests that this Court grant his application for a temporary restraining order and issue an order: (1) ordering Defendants to preserve, pending the outcome of this litigation, all documents and communications relating to the Commission, including but not limited to all documents and communications on the *Vaughn*-type index, all documents and communications regarding the decision to dissolve the Commission, all documents and communications regarding the disposition of Commission data and documents, and all documents and communications regarding the transfer of Commission activities and responsibilities to the Department of Homeland Security or any other agency, person, group, or entity; (2) ordering Defendants to permit Secretary Dunlap to fully participate, on an equal basis as any other commissioner, in all remaining Commission activities, including but not limited to the winding down of the Commission and the disposal or other disposition of documents, data, and communications (including but not limited to all documents and communications listed on the *Vaughn*-type index) received by, generated by, or otherwise related to the Commission; (3) ordering Defendants to permit Secretary Dunlap's full participation in discussions regarding whether and how to transfer documents, data, and communications (including but not limited to all documents and communications listed on the *Vaughn*-type index) received by, generated by, or otherwise related to the Commission to the Department of Homeland Security, any other

agency, or any other person, group or entity; (4) enjoining Defendants from transferring to the

Department of Homeland Security or any other agency, person, group or entity any documents,

data, and communications (including but not limited to all documents and communications listed

on the *Vaughn*-type index) received by, generated by, or otherwise related to the Commission;

(5) enjoining Defendants from disseminating or publishing any initial, preliminary, or final

findings or report of the Commission until such time as Secretary Dunlap has been provided with

all Commission documents to which he is entitled, given a meaningful opportunity to participate

in deliberations that lead to the findings, and has been given a reasonable amount of time in

which to draft comments, a concurrence, or dissent to the findings or report; and (6) ordering

Defendants to produce without further delay the documents required by the Court's December

22, 2017 Order and requested in Secretary Dunlap's January 4, 2018 letter to counsel for

Defendants.

Finally, given Defendants stated unwillingness to comply with the Court's Dec. 22

Decision pending resolution of their forthcoming motion for reconsideration, should the Court

decline to order immediate production of the documents required by the Court's order, Secretary

Dunlap respectfully requests that this Court expedite briefing and consideration of Defendants'

anticipated motion for reconsideration.

Dated: January 9, 2018                          Respectfully submitted,


                                                By:
                                                   /s/ Harry Sandick
                                                _____

                                                PATTERSON BELKNAP WEBB & TYLER LLP
                                                Daniel S. Ruzumna (D.C. Bar No. 450040)
                                                Harry Sandick (admitted *pro hac vice*)
                                                Daniel A. Friedman (admitted *pro hac vice*)
                                                1133 Avenue of the Americas

New York, N.Y. 10036
Tel:  (212) 336-2000
Fax:  (212) 336-2222
druzumna@pbwt.com
hsandick@pbwt.com
dfriedman@pbwt.com

AMERICAN OVERSIGHT
Austin R. Evers (D.C. Bar No. 1002367)
Melanie Sloan (D.C. Bar No. 434584)
John E. Bies (D.C. Bar No. 483730)
Cerissa Cafasso (D.C. Bar No. 1011003)
1030 15th Street NW, B255
Washington, DC 20005
Tel: (202) 869-5246
austin.evers@americanoversight.org
msloan@americanoversight.org
john.bies@americanoversight.org
cerissa.cafasso@americanoversight.org