**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MATTHEW DUNLAP,

            Plaintiff,

    v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY *et al.*,

            Defendants.

Civil Docket No. 17-cv-2361 (CKK)

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO RECONSIDER THIS COURT'S DECEMBER 22, 2017, ORDER**</u>

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

STANDARD OF REVIEW ..................................................................................................3

ARGUMENT…………..................................................................................................... 5

I.      In Light of the Dissolution of the Commission, Plaintiff Cannot Show Irreparable
        Injury…......................................................................................................................5

II.     In Light of the Dissolution of the Commission, Plaintiff Cannot Show Likelihood
        of Success on the Merits. ........................................................................................10

III.    In Light of the Dissolution of the Commission, the Balance of the Equities and the
        Public Interest Do Not Warrant Preliminary Injunctive Relief. ........................11

IV.     In the Alternative, This Court Should Stay the Injunction Pending  Consideration
        of a Possible Appeal................................................................................................12

CONCLUSION..................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Cummock v. Gore*
  180 F.3d 282 (D.C. Cir. 1999) ........................................................................... *passim*

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ................................................................................ 5

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ............................................................................................ 12

*Clemente v. Fed. Bureau of Investigation*,
  No. CV 08-1252 (BJR), 2015 WL 10738604 (D.D.C. Dec. 1, 2015) ........................................ 4

*Credit Suisse First Boston Corp. v. Frunwald*,
  400 F.3d 1119 (9th Cir. 2005) ................................................................................ 4

*Ctr. for Arms Control & Non-Proliferation v. Pray*,
  531 F.3d 836 (D.C. Cir. 2008) ................................................................................ 8

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
  15 F. Supp. 3d 32 (D.D.C. 2014) ............................................................................ 8

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
  416 F. Supp. 2d 30 (D.D.C. 2006) ............................................................................ 8

*Favia v. Ind. Univ. of Pa.*,
  7 F.3d 332 (3d Cir. 1993) .................................................................................... 4

*Fox Television Stations, Inc. v. FilmOn X LLC*,
  968 F. Supp. 2d 134 (D.D.C. 2013) .......................................................................... 4

*Freedom Watch, Inc. v. Obama*,
  859 F. Supp. 2d 169 (D.D.C. 2012) ........................................................................ 8, 9

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
  746 F.2d 816 (D.C. Cir. 1984) ................................................................................ 5

*Gill v. Monroe Cty. Dep't of Soc. Servs.*,
  873 F.2d 647 (2d Cir. 1989) .................................................................................. 4

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ................................................................................ 4

*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) (en banc) ............................................................ 12

*John Doe Agency, et al. v. John Doe Corp.*,
488 U.S. 1306 (1989) ........................................................................................... 13

*John Doe Co. v. CFPB*,
235 F. Supp. 2d 194 (D.D.C. 2017) ..................................................................... 13

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
514 F. Supp. 2d 7 (D.D.C. 2007) ........................................................................... 7

*McLaughlin v. Holder*,
864 F. Supp. 2d 134 (D.D.C. 2012) ........................................................................ 5

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
518 F. Supp. 2d 174 (D.D.C. 2007) ................................................................ 12, 13

*Petties ex rel. Martin v. District of Columbia*,
662 F.3d 564 (D.C. Cir. 2011) ............................................................................... 3

*Power Mobility Coal. v. Leavett*,
404 F. Supp. 2d 190 (D.D.C. 2005) ....................................................................... 5

*Sai v. Transp. Sec. Admin.*,
54 F. Supp. 3d 5 (D.D.C. 2014) .......................................................................... 7, 8

*Salazar v. Buono*,
559 U.S. 700 (2010) ............................................................................................... 4

*Wash. Post v. Dep't of Homeland Sec.*,
459 F. Supp. 2d 61 (D.D.C. 2006) ......................................................................... 7

*\*Wisc. Gas. Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ............................................................................... 5

## Statutes

5 U.S.C. app. 2 § 10(b) .............................................................................................. 9

## Regulations

Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017) ................................... 2

Exec. Order No. 13,820, 83 Fed. Reg. 969 (Jan. 3, 2017). ......................................... 3

Fed. R. Civ. P. 59(e) ................................................................................................................. 4

Fed. R. Civ. P. 54(b) ................................................................................................................. 5

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Fed. Prac. & Proc.*(2d ed.
   1996)). ...................................................................................................................................... 4

**INTRODUCTION**

On January 3, 2017, the President terminated the Presidential Advisory Commission on Election Integrity (the "Commission").  The Commission did not issue a report or make any recommendations before its dissolution.  In light of these changed circumstances, defendants respectfully move that this Court reconsider and vacate its December 22, 2017, preliminary injunction ordering defendants to produce certain documents to plaintiff in order to facilitate his participation as a member of the now-dissolved Commission.

First, there is no longer a prospect of irreparable injury to the plaintiff.  This Court entered its preliminary injunction so that plaintiff "can contribute along the way in shaping the ultimate recommendations of the Commission."  Mem. Op. at 17, ECF No. 33.  But because the Commission has been terminated, there is no longer a prospect of injury caused by plaintiff's inability to participate in any deliberations of a now-dissolved Commission.  Accordingly, this case is now about plaintiff's right to a closed universe of documents, *i.e.*, those created before the Commission's dissolution, and those rights can be adjudicated in the normal course, without the need for the extraordinary remedy of preliminary injunctive relief.  Furthermore, to the extent plaintiff now suggests that he has a right to participate in the post-Commission disposition of the state voter data that was collected by the Commission (and is now in the custody of White House officials), neither *Cummock v. Gore* nor this Court's opinion clearly provides a former Commission member the right to information about such activities.  And in any event, such "state voter data will not be transferred to or accessed or utilized by, DHS or any other agency, except to the National Archives and Records Administration ('NARA'), pursuant to federal law, if the records are not otherwise destroyed.  Pending resolution of outstanding litigation involving the Commission, and pending consultation with NARA, the White House intends to destroy all

state voter data."  Second Herndon Decl. ¶ 4.  "Non-public Commission records will continue to

be maintained as Presidential Records," and they will not "be transferred to the DHS or another

agency, except to NARA, if required, in accordance with federal law."  *Id.* ¶ 5.

      None of the other factors continue to justify preliminary injunctive relief.  In light of the

dissolution of the Commission, plaintiff has not shown a likelihood of success on the merits.

The Court's initial decision was based on *Cummock v. Gore*'s holding that a committee member

has "the right to fully participate in the work of the committee to which he . . .is appointed," 180

F.3d 282, 291 (D.C. Cir. 1999), and concluded that plaintiff is "entitled to substantive

information so that he can contribute along the way in shaping the ultimate recommendations of

the Commission,"  Mem. Op. at 17.  Neither *Cummock* nor this Court addressed the scope of a

member's right to participate when a committee was dissolved before any report or

recommendations were issued, and defendants respectfully submit that this duty is best briefed

and decided on the basis of a full record and full briefing.  Furthermore, the balance of equities

and the public interest no longer warrant preliminary injunctive relief.  In its opinion, this Court

concluded that they do based on the plaintiff's interest in full participation in the Commission; in

light of the Commission's dissolution, that calculus has changed.  Finally, if this Court denies

defendants' motion for reconsideration of the preliminary injunction, defendants respectfully

request that the Court stay its order pending consideration of an appeal, as the immediate release

of documents would moot defendants' right to appeal that disclosure order.

## **BACKGROUND**

      The Presidential Advisory Commission on Election Integrity was established by

Executive Order 13,799 on May 11, 2017.  *See* Exec. Order No. 13,799, 82 Fed. Reg. 22,389

(May 11, 2017).  On December 22, 2017, this Court granted-in-part and denied in part plaintiff's

motion for a preliminary injunction, requiring defendants to produce to plaintiff three categories

of documents "and any similar documents that exist now or in the future."  Mem. Op. at 18-19.

After that order was issued, on January 3, 2017, the President issued an Executive Order

revoking the original Executive Order establishing the Commission and ordering that "the

Presidential Advisory Commission on Election Integrity is accordingly terminated."  *See*

Termination of Presidential Advisory Commission on Election Integrity § 1, Exec. Order No.

13,820 § 1, 83 Fed. Reg. 969 (Jan. 3, 2017).   The Commission did not issue any report or make

any recommendations before its dissolution.  Furthermore, "[t]he Commission did not create any

preliminary findings."  Second Herndon Decl. ¶ 5.

In addition, "[t]he state voter data has never been transferred to, or accessed, or utilized

by, the Department of Homeland Security ("DHS") or any other agency."  *Id.* ¶ 4.  It will not be

"transferred to, or accessed or utilized by, DHS or any other agency, except to [NARA], pursuant

to federal law, if the records are not otherwise destroyed."  *Id.*  "[T]he White House intends to

destroy all state voter data" pending the "resolution of outstanding litigation involving the

Commission, and pending consultation with NARA."  *Id.*  Currently, only four members of the

White House Information Technology staff have access to the data, and "[t]hese staff members

are not authorized to transfer or utilize this data."  *Id.* ¶ 3.  "Non-public Commission records will

continue to be maintained as Presidential Records," and will not "be transferred to the DHS or

another agency, except to NARA, if required, in accordance with federal law."  *Id.* ¶ 5.

## STANDARD OF REVIEW

A district court should reconsider, modify, or vacate a preliminary injunction when

"changed circumstances ha[ve] rendered continued enforcement of the preliminary injunction . . .

contrary to the public interest."  *Petties ex rel. Martin v. District of Columbia*, 662 F.3d 564, 571

(D.C. Cir. 2011); *see also Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) ("To obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstances since the previous ruling.") (quoting *Gill v. Monroe Cty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir. 1989)); *see also Salazar v. Buono*, 559 U.S. 700, 714-15 (2010) (plurality op.) ("Because injunctive relief 'is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an 'instrument of wrong.'") (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Fed. Prac. & Proc.*, § 2961 (2d ed. 1996)).

Courts in this Circuit have not squarely resolved the standard of review of a motion for reconsideration of a preliminary injunction, *i.e.*, whether it is the standard set out in Federal Rule of Civil Procedure 54(b), which addresses orders that "adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties," or that of Rule 59(e), which is generally used for reconsideration of final judgments. *See Fox Television Stations, Inc. v. FilmOn X LLC*, 968 F. Supp. 2d 134, 139-40 (D.D.C. 2013) (discussing standard of review). When, as here, a motion is brought "when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form in equitable," the more permissive standard applies. *See id.* at 140 (citing *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993), *Credit Suisse First Boston Corp. v. Frunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005)). "When there are no such changed circumstances, the Rule 59(e) reconsideration standard applies." *Id.* Under either standard, however, the court may reconsider its previous order if "new facts are presented that were not available earlier," *Clemente v. Fed. Bureau of Investigation*, No. CV 08-1252 (BJR), 2015 WL 10738604, at *1

(D.D.C. Dec. 1, 2015), *aff'd*, 867 F.3d 111 (D.C. Cir. 2017) (Rule 59(e)) or "where a controlling

or significant change in the law or facts has occurred since the submission of the issue to the

court," *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (Rule 54(b)).[1]

## ARGUMENT

### I.   In Light of the Dissolution of the Commission, Plaintiff Cannot Show Irreparable Injury.

In order to justify injunctive relief, the plaintiff's "injury must be both certain and great;

it must be actual and not theoretical." *Wisc. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.

1985); *see also Power Mobility Coal. v. Leavett*, 404 F. Supp. 2d 190, 203 (D.D.C. 2005)

(plaintiff must show that the injury is "imminent, certain, and irreparable.").  This is a "high

standard," and "[t]he possibility that adequate compensatory or other corrective relief will be

available at a later date, in the ordinary course of litigation weighs heavily against a claim of

irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C.

Cir. 2006); *see also id.* ("The key word in this consideration is *irreparable*.  Mere injuries,

however substantial, in terms of money, time and energy expended in the absence of a stay are

not enough.") (quoting *Wisc. Gas. Co.*, 758 F.2d at 674); *see also Friends for All Children, Inc.*

*v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 (D.C. Cir. 1984) (preliminary injunction is

appropriate to "prevent future injury").

In light of the Commission's dissolution, there is no longer any risk of future injury

justifying the extraordinary remedy of preliminary injunctive relief.  Instead, as this case now

concerns a closed universe of documents, this litigation can be resolved in the ordinary course.

---

[1] One significant difference between the standards is that a motion filed under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  This difference is immaterial here, however, since this motion is filed well within the 28 day timeframe.

In its order partially granting plaintiff's motion for a preliminary injunction, this "Court f[ound] that in the absence of being provided with past and future documents of the kinds described above, Plaintiff's right to fully participate in the Commission would be irreparably harmed." Mem. Op. at 22.  The Court analogized to the plaintiff in *Cummock*, concluding that "[t]here is no way to tell whether Cummock's full participation in the commission along the way would have affected its final report," and that "[i]n this case, the injunctive remedy is warranted to allay the same kind of irreparable harm to Plaintiff that Cummock herself suffered." *Id.*  Given the Commission's dissolution *without* issuing a final report or making any recommendations, *see* Second Herndon Decl. ¶ 5,  (unlike in *Cummock*), there is no prospect of such future harm, much less any irreparable harm.  Because the Commission no longer exists, there will no longer be any deliberations, and injunctive relief is no longer required to protect plaintiff's right to participate in such deliberations.  *See* Mem. Op. at 17 ("Plaintiff is entitled to substantive information so that he can contribute along the way in shaping the ultimate recommendations of the Commission . . . .").

Moreover, because the Commission was terminated without issuing a final report or making any recommendations, including any preliminary findings, Second Herndon Decl. ¶ 5, plaintiff will not prospectively be "denied the opportunity to review documents that were prepared for or relied by the Commission in formulating its recommendations." *Cummock*, 180 F.3d at 285; *see also* Mem. Op. at 16 (plaintiff is entitled to material which will "inform his full participation in the Commission and its development of recommendations to the President."). This case, therefore, is unlike *Cummock* where a committee member was denied the ability to shape the recommendations of the committee, in the form of a published report or a "dissent incorporating her fully enlightened views." *See Cummock*, 180 F.3d at 293.  Here, there simply

are no recommendations, past, present, or future.  *See* Second Herndon Decl. ¶ 5.  Accordingly,

there is no longer a prospect of future injury warranting preliminary injunctive relief.

Nor would any potential injury to a legally cognizable interest be irreparable.  To the

extent that there are materials to which plaintiff remains entitled under FACA section 10(b) or

*Cummock*, those can be obtained through the normal litigation process (including any appeals, if

necessary).  That litigation can also fully develop what rights, under this procedural posture,

plaintiff has pursuant to *Cummock*.  As in "FOIA, it is difficult for a plaintiff to demonstrate

'irreparable harm' that is in fact 'beyond remediation' because he is entitled to obtain all

responsive and non-exempt documents at the conclusion of the litigation."  *Sai v. Transp. Sec.*

*Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014); *Judicial Watch, Inc. v. U.S. Dep't of Homeland*

*Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007) ("While plaintiff argues, in effect, that *any* delay [in

the production of records] is an irreparable harm, there is no indication that our Circuit Court

would sanction such a sweeping contention in the context of FOIA litigation.").  That reasoning

follows in the FACA context as well, particularly when, as here, the Commission has been

terminated without issuing a report or recommendations.

In its order, this Court stated that "[d]istrict courts in this circuit have recognized that,

where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied

access to information that is highly relevant to an ongoing public debate."  Mem. Op. at 21.

Under these circumstances, however, there is no such urgency.  Given the dissolution of the

Commission, plaintiff has not demonstrated that the information he seeks would be "vital to any

*current and ongoing debate*" about the Commission itself.  *Sai*, 54 F. Supp. 3d at 5 (emphasis

added).  The Commission no longer exists; a debate about its past operations does not cause

future injury.  This case, then, is unlike the situations cited by this Court in *Washington Post v.*

*Department of Homeland Security*, 459 F. Supp. 2d 61, 74-75 (D.D.C. 2006), where the court granted a preliminary injunction based on the determination that the "information is of vital public interest for an upcoming congressional election," or in *Electronic. Privacy Information. Center v. Department of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006), where the court found that the information would be vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program."  Rather, it is more like cases where plaintiffs sought general information without demonstrating prospective urgency.  *See, e.g.*, *Sai*, 54 F. Supp. 3d at 11; *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 45 (D.D.C. 2014) (rejecting the claim of irreparable harm when it "is not at all 'certain' that the records EPIC seeks are crucial to the public's understanding of, or participation in, the ongoing surveillance debate").

Plaintiff has also suggested that he would be injured prospectively if he cannot participate in conversations about the final disposition of the state voter data information that had been collected by the Commission and maintained for the Commission by the Director of White House Information Technology.  *See, e.g.*, *Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836, 839 n.* (D.C. Cir. 2008) ("Commission relinquished custody of its records and ceased to exist"); *Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169, 174-75 (D.D.C. 2012) (FACA section 10(b) claims could be brought against the "current custodian" of records produced by a then-existing, now-dissolved FACA committee); *see also* Second Herndon Decl. ¶ 3 ("Only four members of the WHIT's staff have had and continue to have access to the data. These staff members are not authorized to transfer or utilize this data.").  But plaintiff's desire for information about activities related to winding down the Commission so that he can participate in determining the final disposition of the state voter data collected by the

Commission does not constitute an injury to a legally cognizable interest.  Plaintiff has no legal

interest in activities or materials that post-date the dissolution of the Commission.  FACA section

10(b) itself requires that certain documents "shall be available for public inspection . . . *until the*

*advisory committee ceases to exist*."  5 U.S.C. app. 2 § 10(b) (emphasis added).  By the plain text

of FACA, the right to information does not extend beyond the Commission's life.[2]  Similarly, as

this Court held, "the Commission's duty to provide information pursuant to Section 10(b) and

*Cummock*, is like Plaintiff's right to the same, *applicable during the life of the Commission*."

Mem. Op. at 17-18 (emphasis added).  Again, plaintiff's rights concern information that was

created or obtained during the Commission's existence, not information that post-dates the

Commission.

　　　　Indeed, plaintiff's argument depends on a fundamental misconception: that the post-

Commission wind-down activities concern activities done by *the Commission*, to which plaintiff

has a right to participate.  They are not; the Commission no longer exists, plaintiff is no longer a

Commission member, and any such wind-down activities would be done by the current custodian

of the Commission's records.  *See* Second Herndon Decl. ¶ 4 (disposition of state voter data); *id.*

¶ 5 (disposition of non-public Commission records).  Plaintiff has pointed to no authority, and

defendants are aware of none, that suggest that a former advisory committee member has the

right to control the disposition of material once possessed by a now-dissolved advisory

committee.  *Cummock*, which concerned the rights of FACA committee members to participate

---

[2] Defendants recognize that the right to information that predated the Commission's dissolution may persist after the Commission's termination.  *See, e.g.*, *Freedom Watch*, 859 F. Supp. 2d at 174-75.  That right is distinct from the separate claim to information that was created after the Commission was dissolved, which appears to be what plaintiff is seeking.

in a FACA committee's formulation of its recommendations, does not address that issue, nor did this Court's opinion.

II.     **In Light of the Dissolution of the Commission, Plaintiff Cannot Show Likelihood of Success on the Merits.**

In its order partially granting the motion for preliminary injunction, the Court concluded that "[t]he likelihood of Plaintiff's success in securing mandamus relief is attributable to this right to substantive material that would inform his full participation in the Commission and its development of recommendations to the President."  Mem. Op. at 16.  The Court further concluded that plaintiff "has a right to access documents that the Commission is considering relying on in the course of developing its final recommendations," so that he may "fully participate" in the Commission's proceedings.  *Id.* at 15; *see also id.* at 17 ("Plaintiff is entitled to substantive information so that he can contribute along the way in shaping the ultimate recommendations of the Commission.").  The Court's ruling therefore was intended to effectuate plaintiff's "right to fully participate in the deliberations of the Commission," and to ensure that he had an "opportunity to review documents that were prepared for or relied upon by the Commission in formulating its recommendations."  *Cummock*, 180 F.3d at 284.

In light of the changed circumstances, however, plaintiff has not shown that he is likely to succeed on the merits of his *Cummock* claim.  As this Court repeatedly recognized, *Cummock*'s holding was about ensuring that a Commission member had a right to fully participate in the Commission's development of recommendations.  But *Cummock* did not consider the scope of a member's right to participate when the Commission was dissolved before any report or recommendations were issued; instead, it explicitly considered a scenario where a final report was issued without a Commission member having the chance to participate.  Mem. Op. at 16.  Defendants respectfully submit that, in light of these changed circumstances, as well

10

as the lack of prospective injury, the proper remedy is to fully brief the application of *Cummock* to this situation, which *Cummock* itself never addressed.  Finally, even to the extent that this Court eventually determines that plaintiff has a clear right to materials, either via his status as a former Commission member pursuant to *Cummock* or as a member of the public pursuant to FACA section 10(b),[3] defendants respectfully submit that a full record and full briefing are appropriate in order to determine whether equitable grounds exist for requiring disclosure.  *See* Mem. Op. at 20.

### III.    In Light of the Dissolution of the Commission, the Balance of the Equities and the Public Interest Do Not Warrant Preliminary Injunctive Relief.

Given the changed circumstances caused by the dissolution of the Commission, the balance of the equities and the public interest do not warrant preliminary injunctive relief.  In its opinion, the Court concluded that the balance of the equities and the public interest justified relief because "[d]enial of the requested injunction would frustrate [plaintiff's] interest in contributing his unique perspective [to the Commission] as well as gaining the 'recognition and even prestige,' of full participation in such a commission."  Mem. Op. at 23 (internal citations and quotation marks omitted).  In light of the Commission's dissolution, plaintiff no longer has an interest in contributing his perspective to the Commission, since the Commission no longer exists.  Nor can plaintiff gain recognition and prestige by participating in a Commission that does not exist.  And, as discussed earlier, the public interest is significantly diminished given the dissolution of the Commission.

---

[3] Plaintiff does not appear to claim in his motion that he is entitled to any particular materials based solely on FACA section 10(b), as opposed to his status as a then-Commission member.

Furthermore, defendants would be harmed by the continuation of this injunction. Plaintiff appears to seek forward-looking documents related to the disposition of data collected by a now-dissolved Commission, which are now held by individuals within the Executive Office of the President. *See* Second Herndon Decl. ¶¶ 4, 5. Such a request would insert a non-federal employee into sensitive internal government discussions about the proper disposition of records in compliance with federal law, and may also touch upon internal security practices and litigation-related obligations. Defendants would be harmed if they were required to release such sensitive and privileged information to a member of the general public (as plaintiff now is). *See In re Cheney*, 406 F.3d 723, 727 (D.C. Cir. 2005) (en banc) ("[S]pecial considerations control when the Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated.") (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004)). In addition, under these changed circumstances, defendants would also be harmed by the immediate release of the documents that are the subject of the preliminary injunction order. Such documents, particularly if the order is broadly interpreted, would include internal deliberations among members of the President's and Vice President's staff, not shared with any former Commission members. In light of *Cheney*'s discussion about the importance of preserving Presidential communications, defendants respectfully suggest that the equities have now shifted with respect to these and other documents.

IV.     **In the Alternative, This Court Should Stay the Injunction Pending Consideration of a Possible Appeal.**

If the Court denies defendants' motion for reconsideration of the preliminary injunction, defendants respectfully request that the Court stay its order pending consideration of appeal. "[C]ourts have routinely issued stays where the release of documents would moot a defendant's right to appeal." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174,

177 (D.D.C. 2007) (citing *John Doe Agency, et al. v. John Doe Corp.*, 488 U.S. 1306, 1308-09 (1989) (Marshall, J., in chambers)); *see also John Doe Co. v. CFPB*, 235 F. Supp. 2d 194, 206 (D.D.C. 2017) ("Courts routinely issue injunctions to stay the status quo when the trial court's order would otherwise allow the prevailing party to engage in actions that would moot the loosing party's right to appeal.").  Defendants would be irreparably harmed if they were ordered to "release documents prior to having the opportunity to seek meaningful appellate review." *People for the Am. Way Found.*, 518 F. Supp. 2d at 177.  Furthermore, given the Commission's dissolution, any injury to the plaintiff (to the extent there is any) would be significantly diminished relative to his previous posture where the Commission remained in existence.

## CONCLUSION

For the aforementioned reasons, this Court should reconsider and vacate its December 22, 2017, order granting-in-part and denying-in-part plaintiff's motion for a preliminary injunction.


Dated:  January 9, 2018                      Respectfully submitted,

                                             CHAD A. READLER
                                             Acting Assistant Attorney General

                                             ELIZABETH J. SHAPIRO
                                             Deputy Director

                                             */s/Joseph E. Borson*
                                             CAROL FEDERIGHI
                                             Senior Trial Counsel
                                             KRISTINIA A. WOLFE
                                             JOSEPH E. BORSON (Va. Bar. No. 85519)
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             P.O. Box 883
                                             Washington, D.C. 20044
                                             Tel: (202) 514-1944 / Fax: (202) 616-8460
                                             E-mail: Joseph.Borson@usdoj.gov