## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MATTHEW DUNLAP,<br><br>    Plaintiff,<br><br>  - versus -<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; MICHAEL R. PENCE, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; KRIS W. KOBACH, IN HIS OFFICIAL CAPACITY AS VICE CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; ANDREW KOSSACK, IN HIS OFFICIAL CAPACITY AS DESIGNATED FEDERAL OFFICER FOR THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; GENERAL SERVICES ADMINISTRATION; TIMOTHY R. HORNE, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION; EXECUTIVE OFFICE OF THE PRESIDENT; OFFICE OF THE VICE PRESIDENT; OFFICE OF ADMINISTRATION; MARCIA L. KELLY, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ADMINISTRATION,<br><br>    Defendants. | Civil Action No. 17-cv-2361-CKK |

## SUPPLEMENTAL BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cummock v. Gore*,
  180 F.3d 282 (D.C. Cir. 1999) ........................................................................................3, 4

*Judicial Watch v. Nat'l Energy Policy Dev. Grp.*,
  219 F. Supp. 2d 20 (D.D.C. 2002) .......................................................................................4

*Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory
  Commission on Election Integrity*,
  No. 17-cv-1354 (D.D.C.) .....................................................................................................6

*Palateria LaMichoacana v. Productos Lacteos Tocumbo*,
  188 F. Supp. 3d 22, 121 (D.D.C. 2016) ...............................................................................5

*Wash. Metro Area Transit Comm'n v. Reliable Limousine Serv.*,
  776 F.3d 1 (D.C. Cir. 2015) .................................................................................................5

*Wash. Metro Area Transit Comm'n v. Reliable Limousine Serv.*,
  985 F. Supp. 2d 23 (D.D.C. 2013) .......................................................................................5

**Statutes and Rules**

18 U.S.C. § 641 .............................................................................................................................7

Federal Records Act .......................................................................................................................4

Federal Rule of Civil Procedure 65(d) .......................................................................................4, 5

Presidential Records Act .............................................................................................................3, 4

**Other Authorities**

41 C.F.R. § 102-3.175(e) ...............................................................................................................4

Exclusive-Kris Kobach: Voter Fraud Commission 'Being Handed Off' to DHS,
  Will No Longer Be 'Stonewalled' By Dems, Breitbart (Jan. 3, 2018),
  *available at* http://www.breitbart.com/big-government/2018/01/03/exclusive-
  kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-
  be-stonewalled-by-dems/ .....................................................................................................7

Jessica Huseman, "Experts Say the Use of Private Email by Trump's Voter Fraud
  Commission Isn't Legal," ProPublica (Sept. 15, 2017), *available at*
  https://www.propublica.org/article/experts-say-the-use-of-private-email-by-
  trumps-voter-fraud-commission-isnt-legal ...........................................................................5

Michael Tackett and Michael Wines, "Trump Disbands Commission on Voter
    Fraud," The New York Times (Jan. 3, 2018), *available at*
    https://www.nytimes.com/2018/01/03/us/politics/trump-voter-fraud-
    commission.html....................................................................................................................7, 8

On the January 10, 2018 teleconference, counsel for Defendants represented that records of the Presidential Advisory Commission on Election Integrity (the "Commission") that are in the Government's possession will be preserved and will not be distributed to the Department of Homeland Security or otherwise while the Court considers Defendants' Motion for Reconsideration (Dkt. 39) and Plaintiff Matthew Dunlap's Application for a Temporary Restraining Order (Dkt. 35).  *See also* Herndon Decl. (Dkt. 39-2).  However, preservation is not the only issue; to maintain the status quo in a meaningful sense also necessitates addressing the ongoing use or dissemination of Commission records.  As counsel for Defendants indicated, the Herndon Declaration is limited to copies of records in the physical custody of the White House. The Herndon Declaration makes no representations about the use or distribution of Commission records that are in the possession of others, including Defendant Vice-Chair Kris Kobach or other commissioners.  Moreover, counsel for Defendants indicated that neither they nor the White House have any control over these individuals, whom they deem "former" commissioners due to the dissolution of the Commission (this position may change based on their consultation with the White House).[1]

With the Court's permission, Secretary Dunlap respectfully submits this supplemental brief to address this potential loophole to the commitments in the Herndon Declaration.  In light of the spirit of the Herndon Declaration and the representations of counsel for Defendants during the hearing, all sides appear interested in maintaining the status quo.  Secretary Dunlap's position is that an order from the Court is necessary to fill the gap identified during the hearing.[2]

Accordingly, Secretary Dunlap requests an order preserving the status quo by enjoining

---

[1] As of this filing, we have heard nothing more from the Government about this substantive issue.

[2] The Court may modify the proposed order and partially grant Secretary Dunlap's application for a temporary restraining order, holding the remainder in abeyance consistent with the Court's intention as expressed during the January 10 hearing.

Mr. Kobach and those acting in concert with him from distributing Commission records (including documents on the *Vaughn*-type index) in his possession to the Department of Homeland Security or otherwise pending the resolution of the motion for reconsideration and the receipt by Secretary Dunlap of documents to which he is entitled under the Court's December 22, 2017 Order.  (Dkts. 32, 33).[3]  We set forth below the legal and factual justification for such an order:

1. **All Defendants remain in the case.**  Counsel for Defendants suggested that the dissolution of the Commission caused Mr. Kobach effectively to cease to exist as a defendant (as we understand it, their suggestion was that no Vice-Chair defendant exists because no Commission exists).  However, none of the Defendants have been dismissed from this case.  To the extent Mr. Kobach wishes to raise dissolution as a jurisdictional bar, he may do so (as described below, those arguments would be without merit).  While Secretary Dunlap takes no position on whether the Department of Justice ("DOJ") can continue to represent Mr. Kobach, the internal rules governing the permissible scope of DOJ representation have no bearing on the jurisdiction of the Court.  If anything, the suggestion that federal government (whether through the DOJ and/or the White House) might lack ongoing authority over Mr. Kobach heightens the need for a Court order to address the gap in the Herndon Declaration.

In addition, the Commission and its staff have taken a number of actions that indicate they do believe they have continuing authority to control the "former" commissioners in at least some respects.  For instance, as part of the communication informing commissioners that the Commission had been dissolved, every commissioner was "reminde[d] of [their] preservation obligations" and received a litigation-hold direction regarding records in their possession related

---

[3] Secretary Dunlap does not seek a gag order that would prevent any commissioner from speaking about Commission records or about his or her experiences on the Commission.

to the Commission.  (Ex. 1).  Similarly, counsel for Defendants expressed to the Court their
intention of seeking from individual commissioners copies of any Commission records in their
possession, such as communications between two or more individual commissioners engaged in
preparatory work for Commission meetings or positions that may not yet have been shared with
any federal officials.  Such records are not necessarily currently in the White House's possession
but nonetheless are undoubtedly Commission records subject to the Presidential Records Act.

We do not understand defense counsel to believe that compliance with the litigation hold
and the return of records to the White House is voluntary on the part of individual
commissioners.  Nor has defense counsel indicated any intention to withdraw from
representation of any Defendant, including Mr. Kobach.  This continued representation likewise
indicates that counsel retains authority to bind its clients, including Mr. Kobach in his capacity as
a former commissioner.

**2.  The dissolution of the Commission does not change the Court's authority.**  Mr.
Kobach and the other Defendants remain defendants in this case notwithstanding the dissolution
of the Commission.  As an initial matter, this is apparent from the fact that counsel for
Defendants did not raise concerns about the Court's ongoing authority over other Defendants,
such as Andrew Kossack, notwithstanding that they, too, were sued in their official capacity but
no longer serve on an active Commission.  Moreover, the cases involving terminated FACA
committees demonstrate that defendants sued in their official capacities as the Chair or Vice-
Chair of an advisory committee remain subject to court jurisdiction even after the advisory
committee is disbanded.  In *Cummock v. Gore*, for example, Ms. Cummock sued Vice President
Gore in his capacity as Vice Chairman of the White House Commission on Aviation Safety and
Security after the Commission was disbanded.  *See Cummock v. Gore*, 180 F.3d 282, 286 (D.C.
Cir. 1999) ("Several months after the Commission was disbanded, Cummock filed suit in

District Court, naming Vice President Gore, the Secretary of Transportation, and the Commission as defendants."). This Court and the D.C. Circuit compelled Defendants to comply with FACA and produce to Ms. Cummock the documents to which she was entitled. *Id.* at 293. This is not a case in which a former defendant "no longer exists." *Judicial Watch v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 35 (D.D.C. 2002). Mr. Kobach still exists, he is still in possession of Commission records, he retains ongoing obligations that flow from his role as a Commissioner, and he is still subject to the jurisdiction of this Court.[4]

**3. The Court has broad authority to maintain the status quo.** Because all Defendants remain in the case, the Court's authority remains the same as it was on December 22, when it partially granted Secretary Dunlap's motion for a preliminary injunction. Accordingly, the Court has the authority to order a narrow injunction enjoining Mr. Kobach and other Defendants, along with those acting in active concert or participation with the Defendants, from using Commission records or providing them to DHS or other potential recipients until such time as Defendants comply with the December 22 Order or that Order is vacated. The Court's authority derives from Federal Rule of Civil Procedure 65(d), under which an injunction or restraining order binds not only the parties and the parties' "officers, agents, servants, employees, and attorneys," but also any other persons "who are in active concert or participation with" these persons so long as they receive actual notice of the order.

Under Rule 65(d), other commissioners who are in "active concert or participation" with

---

[4] In addition, so long as he retains custody of Commission documents, Defendant Kobach remains subject to the authority of this Court as a custodian of the Commission's documents. 41 C.F.R. § 102-3.175(e) ("Official records generated by or for an advisory committee . . . must be processed in accordance with the Federal Records Act . . ., or in accordance with the Presidential Records Act."). The alternative would be that an advisory committee may allow former commissioners to retain records and to distribute them in whatever fashion individual commissioners so choose. This gives perverse incentives to future commissions:  collect documents, disband for the express purpose of avoiding litigation, and then deprive certain commissioners of access to documents while those documents are selectively disclosed.

the defendants in this action also may be bound by a temporary restraining order, so long as they receive actual notice of the order.  *See Wash. Metro Area Transit Comm'n v. Reliable Limousine Serv.*, 985 F. Supp. 2d 23, 30-31 (D.D.C. 2013) (explaining that this rule derives from the common law doctrine that an injunction binds not only the defendants, but "any person or entity through whom the defendants might carry out enjoined activity and so nullify the order").  The purpose of this rule is to prevent defendants from "nullify[ing] an injunction by carrying out prohibited acts through aiders and abettors who were not parties to the original proceeding." *Wash. Metro Area Transit Comm'n v. Reliable Limousine Serv.*, 776 F.3d 1, 9 (D.C. Cir. 2015) (internal citations and quotations omitted).  Given the apparent inability of the Government to speak for Mr. Kobach and other commissioners, it is appropriate here for the Court to exercise its authority under Rule 65(d) to issue an order that applies to those commissioners who are in "active concert or participation" with the Defendants.[5]

**4.  There is no doubt that Commission records are held by Mr. Kobach.**  The Government's reliance on the Herndon Declaration is deficient because it is based on an incorrect factual predicate:  that Mr. Herndon is the only custodian of Commission records.  It is clear that Mr. Kobach (and other commissioners) have Commission records in their possession. Commissioners were not provided with U.S. Government email addresses for Commission business; instead, they used personal or business email addresses—to which they still have access—to send and receive Commission records.[6]  Thus, while the Government has represented

---

[5] The Court's order need only refer to the defendants and those who are "in active concert or participation" with the defendants and need not identify other individuals by name at this time. *See* Fed. R. Civ. P. 65(d); *Palateria LaMichoacana v. Productos Lacteos Tocumbo*, 188 F. Supp. 3d 22, 121 (D.D.C. 2016).

[6] *See* Jessica Huseman, "Experts Say the Use of Private Email by Trump's Voter Fraud Commission Isn't Legal," ProPublica (Sept. 15, 2017), *available at* https://www.propublica.org/article/experts-say-the-use-of-private-email-by-trumps-voter-fraud-

that it has *copies* of Commission records and will not provide the Government's copies to DHS, individual commissioners maintain their own copies of Commission records sent or received before the Commission was disbanded.  *See* Fourth Kossack Declaration, Dkt. 33-2, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1354 (D.D.C.) ("I have reminded Commission members that they should copy or forward to my email address or another Commission staff email address all communications related to Commission business . . . .").  Moreover, the individual Commissioners may currently have the *only* copy of Commission records generated after the date of the *Vaughn*-type index; the Government did not represent in the Herndon Declaration or during the January 10 teleconference that it has ensured that it has in its possession all Commission records held by individual commissioners, such as communications between two individual Commissioners engaged in preparatory work for Commission meetings or positions that may not yet have been shared with any federal officials.

Apart from any voter data records, the *Vaughn*-type index contains hundreds of entries reflecting emails sent to or from Mr. Kobach's personal email address.  Document Index, Dkt. 33-3, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1354 (D.D.C.).  While Mr. Kobach may have provided *copies* of these records to the Government, there has been no representation that Mr. Kobach then deleted these records from his personal account or otherwise destroyed the records.  He still has these documents and may believe he is free to share them with DHS, with advocacy organizations, or selectively with other persons or organizations.  Moreover, as discussed above, it is conceivable that individual Commissioners currently have the only copy of Commission records.

---

commission-isnt-legal ("Kobach confirmed that he plans to continue to use his personal gmail account to conduct commission business.").

**5.  An injunction is required to prevent irreparable harm.**  Secretary Dunlap is likely to suffer immediate and irreparable harm if the use or dissemination of Commission records is not enjoined.  Mr. Kobach has expressly stated his intention to provide Commission records to DHS without consulting other commissioners.[7]  Mr. Kobach has stated that the Commission's work will be "handed off to Homeland Security" and that he will "be working closely with the White House and DHS."[8]

These statements are consistent with those of the White House after the dissolution of the Commission, indicating that Mr. Kobach may have the White House's blessing.  Mr. Kobach has also described the transfer from the Commission to DHS "as an option play; a decision was made in the middle of the day to pass the ball."[9]  The Herndon Declaration's statement that the "Commission did not create any preliminary findings" cannot be squared with Mr. Kobach's public statements describing purported "findings" of the Commission.[10]  (Dkt. 39-2).

---

[7] The records in question here are government records, not Mr. Kobach's personal papers, and he may not convert Commission documents for his personal use.  *See* 18 U.S.C. § 641 ("Whoever . . . knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record . . . of the United States . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.").

[8] John Binder, "Exclusive-Kris Kobach: Voter Fraud Commission 'Being Handed Off' to DHS, Will No Longer Be 'Stonewalled' By Dems, Breitbart (Jan. 3, 2018), *available at* http://www.breitbart.com/big-government/2018/01/03/exclusive-kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-be-stonewalled-by-dems/

[9] Michael Tackett and Michael Wines, "Trump Disbands Commission on Voter Fraud," The New York Times (Jan. 3, 2018), *available at* https://www.nytimes.com/2018/01/03/us/politics/trump-voter-fraud-commission.html

[10] Nor is it clear what basis Mr. Herndon had to make this declaration, including what is meant by "finding" in the declaration and whether Mr. Herndon, in his role as Director of White House Information Technology, was privy to all communications between DHS (or other federal agencies and officials) and the Chair, Vice Chair, Executive Director, and/or other Commission officials.

On January, 3, 2018, Mr. Kobach was quoted as saying this about the Commission's work:

> Thus far, the voter fraud commission has revealed:
>
> - 938 convictions for voter fraud since the year 2000
> - Fewer than 1 in 100 cases ends in a conviction
> - In Kansas, alone, there are 127 known cases of non-citizen aliens registering to vote
> - In 21 states, there were 8,471 cases of double voting discovered[11]

Whether the "findings" quoted in this article constitute findings in an official or formal sense is irrelevant. Members of the Commission are making public statements about the Commission's work and attributing the content of those statements to the Commission. By depriving Secretary Dunlap of Commission records possessed by other commissioners, Defendants are denying Secretary Dunlap an opportunity to make his own informed comments about the Commission's work.

In the absence of assurances that either (1) Mr. Kobach does not have Commission records in his possession; or (2) Mr. Kobach will not provide Commission records in his possession to DHS or otherwise use or distribute them, this Court should issue a narrow order enjoining Mr. Kobach and those acting in concert or active participation with him from taking those actions until the motion practice concludes. Such an order would be minimally burdensome on Defendants.

Finally, if the Government is correct that neither the Government nor this Court has authority to enjoin Mr. Kobach and other commissioners from distributing Commission records in their possession to DHS or otherwise, the only way to mitigate the ongoing harm to Secretary Dunlap is for Defendants to immediately provide Secretary Dunlap with the Commission records

---

[11] *Id.*

to which he is entitled so that he can be an informed participant in the currently one-sided public

discussion about the Commission's "findings" about voter fraud and election integrity.  As

demonstrated by the December 22, 2017 Order (with which Defendants have refused to comply),

the Court has the authority needed to end the current situation in which some commissioners can

purport to speak authoritatively about the work of the Commission while other commissioners

are denied access to documents in violation of law.


Dated: January 11, 2018                         Respectfully submitted,

                                                By:
                                                    /s/ Harry Sandick

                                                PATTERSON BELKNAP WEBB & TYLER LLP
                                                Daniel S. Ruzumna (D.C. Bar No. 450040)
                                                Harry Sandick (admitted *pro hac vice*)
                                                Daniel A. Friedman (admitted *pro hac vice*)
                                                1133 Avenue of the Americas
                                                New York, N.Y. 10036
                                                Tel:  (212) 336-2000
                                                Fax:  (212) 336-2222
                                                druzumna@pbwt.com
                                                hsandick@pbwt.com
                                                dfriedman@pbwt.com

                                                AMERICAN OVERSIGHT
                                                Austin R. Evers (D.C. Bar No. 1002367)
                                                Melanie Sloan (D.C. Bar No. 434584)
                                                John E. Bies (D.C. Bar No. 483730)
                                                Cerissa Cafasso (D.C. Bar No. 1011003)
                                                1030 15th Street NW, B255
                                                Washington, DC 20005
                                                Tel: (202) 869-5246
                                                austin.evers@americanoversight.org
                                                msloan@americanoversight.org
                                                john.bies@americanoversight.org
                                                cerissa.cafasso@americanoversight.org


                                                *Attorneys for Plaintiff Matthew Dunlap*