**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MATTHEW DUNLAP,

              Plaintiff,

      v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY *et al.*,

              Defendants.

Civil Docket No. 17-cv-2361 (CKK)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.   This Court Lacks the Authority to Enter an Injunction Against Former Commission
     Members .................................................................................................................... 2

     A.   Courts cannot enter an injunction against non-parties, and the former members of
          the Commission (other than plaintiff) are not parties to this suit in their individual
          capacities. ...................................................................................................................... 3

     B.   Former Commission members are not in "active concert or participation" with
          defendants such that this Court may exercise jurisdiction over them ......................... 6

II.  This Court Cannot Compel the Remaining Defendants to Place Restrictions on  Former
     Commission Members' Ability to Unofficially Disseminate Commission  Records;
     Nonetheless, Defendants Are Voluntarily Requesting That Former Commission
     Members Not Distribute Records. ....................................................................... 12

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Adams v. Office of Attorney Gen.*,
   No. 2:11-CV-621-WKW, 2012 WL 1067978 (M.D. Ala. Mar. 29, 2012) ............................ 4

*\*Additive Controls & Measurement Sys.,Inc. v. Flowdata, Inc.*,
   96 F.3d 1390 (Fed. Cir. 1996) ............................................................................ 3, 7

*Alemite Mfg. Corp v. Staff*,
   42 F.2d 832 (2d Cir. 1930) ..................................................................................... 7

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) ............................................................................... 13

*Atchison v. U.S. District Courts*,
   240 F. Supp. 3d 121 (D.D.C. 2017) ......................................................................... 3

*County Bd. of Arlington v. U.S. Dep't of Transp.*,
   705 F. Supp. 2d 25 (D.D.C. 2010) .......................................................................... 4

*Cummock v. Gore*,
   180 F.3d 282 (D.C. Cir. 1996) ............................................................................... 6

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*,
   282 F.R.D. 346 (S.D.N.Y. 2012) ............................................................................ 5

*Golden State Bottling Co. v. NLRB*,
   414 U.S. 168 (1973) ............................................................................................. 7

*Hansberry v. Lee*,
   311 U.S. 32 (1940) .............................................................................................. 3

*In re Collins & Aikman Corp. Sec. Litig.*,
   438 F. Supp. 2d 392 (S.D.N.Y. 2006) ..................................................................... 5

*Jackson v. United States*,
   248 F. Supp. 3d 167 (D.D.C. 2017) ....................................................................... 13

*Judicial Watch*, Inc. *v. Nat'l Energy Policy Dev. Grp.*,
   219 F. Supp. 2d 20 (D.D.C. 2002) .......................................................................... 6

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ............................................................................................. 3

*Langan v. United States*,
   No. 14-cv-02563-JCS, 2014 WL 4954667 (N.D. Cal. Oct. 2, 2014) ........................ 4

*Lodestar Anstalt v. Baccardi & Co., Ltd.*
   Ltd., No. 2:16-cv-06411-CAS-FFM, 2017 WL 1434265 (C.D. Cal. Apr. 21, 2017) .............. 5

*Mathie v. Fries*,
121 F.3d 808 (2d Cir. 1997) .................................................... 4

*\*Nat'l Spiritual Assembly of Baha'is Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of the U.S.*,
628 F.3d 837 (7th Cir. 2010) ........................................... 7, 8, 9

*New York Times Co. v. United States*,
403 U.S. 713 (1971) ...................................................... 11

*People of State of N.Y. by Vacco v. Operation Rescue Nat'l*,
80 F.3d 64 (2d Cir. 1996) ................................................ 7, 8

*Regal Knitwear Co. v. NLRB*,
324 U.S. 9 (1945) ...................................................... 3, 11

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ....................................................... 3

*Tice v. Am. Airlines, Inc.*,
162 F.3d 966 (7th Cir. 1998) .............................................. 8

*United States v. McElvenny*,
No. 02 Civ. 3027 (JSM), 2003 WL 1741422 (S.D.N.Y. Apr. 1, 2003) .............. 13

*Wakat v. Montgomery Cty.*,
471 F. Supp. 2d 759 (S.D. Tex. 2007) .................................... 4, 5

*\*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
776 F.3d 1 (D.C. Cir. 2015) .......................................... 7, 8, 9

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
985 F. Supp. 2d 23 (D.D.C. 2013) ...................................... 9, 10

*Williams v. Goldsmith*,
4 F. Supp. 2d 1112 (M.D. Ala. 1998) ...................................... 4

*Wishom v. Hill*,
No. 01-cv-3035, 2004 WL 303571 (D. Kan. Feb. 13, 2004) .................... 4

## Statutes

44 U.S.C. § 2201 ..................................................... 12, 13

44 U.S.C. § 2203 ......................................................... 3

## Rules

Fed. R. Civ. P. 25 ....................................................... 5

Fed. R. Civ. P. 65 ....................................................... 7

## **Other Authorities**

Black's Law Dictionary (10th ed. 2014) ..................................................................... 13

Exec. Order No. 13,820, 83 Fed. Reg. 969 (Jan. 3, 2018). ...........................................................3

Government Accountability Institute, America The Vulnerable: The Problem of Duplicate
Voting,
  https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/pacei-govt-accountability-
  institute-problem-duplicate-voting.pdf ................................................................................10

Wright & Miller, Fed. Prac. & Prod. § 2956 (2d ed. 1995) .......................................................... 8

## **INTRODUCTION**

Except in extraordinary circumstances not present here, due process prevents a court from entering an order binding a non-party.  This elementary principle resolves in the negative the question of whether this Court can enter an injunction against non-party former members of the now-terminated Presidential Advisory Commission on Election Integrity ("Commission").  Specifically, the former Commission members were never named as defendants to this suit in their personal capacities and were not personally served.  The two individual Commission members named as defendants (Vice President Pence and Secretary Kobach) were sued only in their official capacities as Chair and Vice Chair of the former Commission.  And even these two officials are no longer parties to this litigation.  An official capacity suit is a suit against an office, not against the individual person.  Thus, once the Commission was terminated, the former Commission members no longer had an official capacity and are properly dismissed.  And while there is a limited exception that allows an injunction to run against non-parties who are in privity with a party, that exception requires an exceptionally close alignment of legal interests simply not present here.  Furthermore, extending judicial contempt power over an unrepresented non-party, as plaintiff requests, raises serious due process challenges which plaintiff never acknowledges, much less addresses.

Nor can this Court order the remaining defendants to require the non-party former Commissioners not to disseminate Commission materials.  The Commission no longer exists and no longer has the power to compel the actions of its former Commission members.  Moreover, any dissemination by the now-decommissioned individuals would not violate the Presidential Records Act or any other statute of which defendants are aware.  The Presidential Records Act governs the preservation of Presidential Records by the White House, not the dissemination of records (or information within those records) held by third parties.

Notwithstanding the foregoing limitations, the defendants remaining in this case have taken steps to address plaintiff's concerns.  They have requested that the former Commission members not independently share Commission records with other entities, including the Department of Homeland Security ("DHS"), except as may be necessary for records retention activities required by federal law.  They have also directly followed up with Secretary Kobach, the apparent focus of plaintiff's concerns, and requested that he not share with DHS or any other federal entity (except the White House) any Commission records not otherwise already made public during the pendency of the plaintiff's motion.  He has agreed to do so.  In light of defendants' actions and Secretary Kobach's representations there is no need for this Court to grant the injunctive relief requested by plaintiff, let alone any need to decide the scope of the Court's power to issue such injunctive relief.

## ARGUMENT

### I.      This Court Lacks the Authority to Enter an Injunction Against Former Commission Members.

Plaintiff has expanded his original request for a temporary restraining order to also seek an injunction to fill the "gap" created by the possibility that individual former Commissioners may attempt to disseminate any Commission records that are in their possession.  Pl.'s Supp. Mem. at 1, ECF No. 42.  However, this Court lacks the power under Federal Rule of Civil Procedure 65(d) to enter such an extraordinary injunction to control the activities of non-parties.  Such an injunction would raise serious due process concerns that Rule 65, and the traditional principles of equity it codifies, are designed to protect.

### A. Courts cannot enter an injunction against non-parties, and the former members of the Commission (other than plaintiff) are not parties to this suit in their individual capacities.

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Atchison v. U.S. District Courts*, 240 F. Supp. 3d 121, 126 (D.D.C. 2017) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940)); *see also Taylor v. Sturgell*, 553 U.S. 880, 884 (2008); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) ("[C]ourts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it."). This principle is based on the concept of due process, and in particular, the "deep-rooted historic tradition that everyone should have his own day in court." *Taylor*, 553 U.S. at 892-93 (internal citation omitted); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945) ("The courts, nevertheless, may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.").

None of the individual former Commissioners has been sued in his or her individual capacity; instead, the Commission itself was sued, as were Vice President Pence "in his official capacity as Chair of the Commission," and Secretary Kobach "in his official capacity as Vice Chair of the Commission." Compl. ¶¶ 11-13, ECF No. 1. An official capacity suit is a way of pleading an action against a government entity; "[it] is *not* a suit against the official personally, for the real person in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Commission no longer exists, and accordingly, there is no longer a Chair, Vice Chair, or indeed, any Commission member. *See* Exec. Order No. 13,820, 83 Fed. Reg. 969 (Jan. 3, 2018).

"[I]nherent in the state of being a *former* official is that one no longer has an official capacity." *Langan v. United States*, No. 14-cv-02563-JCS, 2014 WL 4954667, at *3 (N.D. Cal. Oct. 2, 2014); *see also Cty. Bd. of Arlington v. U.S. Dep't of Transp.*, 705 F. Supp. 2d 25, 29 (D.D.C. 2010) ("Where a suit seeks relief against an official in his official capacity, the officer is not 'on trial' at all; . . . . If he leaves office during the interim, he leaves the case behind and his successor becomes the party." (citation and internal quotation marks omitted)); *Wishom v. Hill*, No. 01-cv-3035, 2004 WL 303571, at *8 (D. Kan. Feb. 13, 2004) ("Suit against a person in his former official capacity, however, has no meaning.") (citing *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997)). Accordingly, individual former Commission members are no longer defendants as soon as they no longer have an official capacity, *i.e.*, when, as with Vice President Pence and Secretary Kobach, they are no longer part of the entity in whose capacity they were sued. *See, e.g.*, *Cty. Bd. of Arlington*, 705 F. Supp. 2d at 29; *Wakat v. Montgomery Cty.*, 471 F. Supp. 2d 759, 767 (S.D. Tex. 2007) ("Since the plaintiffs specifically named Williams as a defendant in his official capacity, he ceased to be a defendant the moment he ceased to be sheriff."); *Adams v. Office of Attorney Gen.*, No. 2:11-CV-621-WKW, 2012 WL 1067978, at *3 (M.D. Ala. Mar. 29, 2012) ("[T]o allow an official capacity claim against former officials would be 'to allow them to be sued as representatives of an entity that they . . . no longer represent.'") (quoting *Williams v. Goldsmith*, 4 F. Supp. 2d 1112, 122 (M.D. Ala. 1998) (citation and internal quotation marks omitted)).

Plaintiff puts forward no argument for how Secretary Kobach, Vice President Pence, or any other former Commission member other than his own client is currently a "party" to this case. He says, correctly, that "none of the Defendants ha[s] been dismissed from this case." Pl.'s Supp. Br. at 2. But Secretary Kobach and other former Commission member were no

longer parties to this suit by operation of law as soon as the Commission was terminated on

January 3, 2018, and, in any event their (former) presence in this suit in their official capacities

has nothing do with being parties to the suit in an individual capacity. *See, e.g.*, *Wakat*, 471 F.

Supp. 2d at 767; Fed. R. Civ. P. 25(d). Indeed, by plaintiff's logic, former President Obama,

when sued in his official capacity in a lawsuit, would remain a defendant in that lawsuit – and

subject to the contempt power of the court – even after departing government service. Such a

conclusion cannot be accorded with the nature of an official capacity suit, which constitutes a

suit where an *entity* is the true defendant, not a *person*. Moreover, in other circumstances, such

as venue, former employees of a party are considered to be non-parties. *See, e.g.*, *Lodestar*

*Anstalt v. Baccardi & Co. Ltd.*, No. 2:16-cv-06411-CAS-FFM, 2017 WL 1434265, at *3 (C.D.

Cal. Apr. 21, 2017); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397

(S.D.N.Y. 2006).

    Plaintiff next suggests that the fact that former Commission staff reminded former

Commission members of their litigation hold preservation obligations means that the former

Commission members remain parties to the suit who may be personally enjoined. Pl.'s Supp. Br.

at 2-3. But the fact that individuals may have litigation preservation obligations, or that

defendants are working to ensure that all relevant materials are maintained, does not mean that

individuals to whom a litigation hold has been sent constitute "parties" subject to the court's

personal jurisdiction, particularly in an official capacity suit, which is against an entity. *See, e.g.*,

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 354 (S.D.N.Y. 2012) (litigation

hold may be sent to third party).

    Plaintiff's remaining arguments can be easily dispatched. He first says that defendants

"did not raise concerns about the Court's ongoing authority over other Defendants, such as

Andrew Kossack, notwithstanding that they, too, were sued in their official capacity but no longer serve on an active Commission."  Pl.'s Supp. Br. at 3.  But Mr. Kossack is also a government official and an associate counsel in the Office of the Vice President, which is a defendant in this suit, Compl. ¶ 17; he is not a private citizen.  Nor does plaintiff seek to enjoin his conduct.  Plaintiff also argues that, "the cases involving terminated [Federal Advisory Committee Act] FACA committees demonstrate that defendants sued in their official capacities as the Chair or Vice-Chair of an advisory committee remain subject to court jurisdiction even after the advisory committee is disbanded."  Pl.'s Supp. Br. at 3 (citing *Cummock v. Gore*, 180 F.3d 282, 286 (D.C. Cir. 1996); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 35 (D.D.C. 2002)).  But these cases stand merely for the unobjectionable proposition that FACA document claims can persist after an advisory committee has been dissolved, at least if a proper defendant (in those cases, always an official capacity defendant) still had custody of the former advisory committee's records.  These cases offer no discussion – and certainly do not suggest – that persons sued in their official capacities remain parties in their individual capacities even after they no longer serve in an official capacity.  Plaintiff closes by saying that "Mr. Kobach still exists."  Pl.'s Supp. Br. at 4.  True, but jurisdiction requires more than sentience.  Secretary Kobach is not a party to this case.  Accordingly, this Court lacks the authority to exercise jurisdiction over him.

**B.      Former Commission members are not in "active concert or participation" with defendants such that this Court may exercise jurisdiction over them.**

There are limited exceptions to the principle that an injunction binds only the parties, which are set out in Federal Rule of Civil Procedure 65(d)(2).  That rule states that injunctions may only bind "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with [the above]."

Fed. R. Civ. P. 65(d). "Rule 65(d)(2) incorporates the common-law principle that an injunction 'not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them, or subject to their control." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)). Even under this provision, however, this Court still lacks jurisdiction to enjoin the non-party former Commissioners. To begin, none of the *former* Commissioners is a *current* "officer, agent, servant, employee [or] attorney" of the former Commission. Fed. R. Civ. P. 65(d)(2)(B). Former officers, or in this case, former Commission members, cannot be enjoined under Rule 65(d)(2)(B). *See Nat'l Spiritual Assembly of Baha'is Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of the U.S.*, 628 F.3d 837, 848 (7th Cir. 2010) (individual defendants "obviously no longer held that status" as officers or agents once the organization they were formally members in was dissolved); *N.Y. ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) (same); *Additive Controls*, 96 F.3d at 1394 (former employee not bound by injunction against former employer) (citing *Alemite Mfg. Corp v. Staff*, 42 F.2d 832 (2d Cir. 1930)).

Nor does Rule 65(d)(2)(C) apply, which allows a court to enjoin individuals "in active concert or participation" with the defendants, Fed. R. Civ. P. 65(d)(2)(C). This language has been interpreted to apply to those closely related to a party, *i.e.*, "those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Wash. Metro. Ara. Transit Comm'n*, 776 F.3d at 9. Despite plaintiff's attempt to minimize it, this concept, usually just called "privity," is a high bar, and is "ultimately bounded by due process, which starts from a presumption that each person has a right to her day in court." *Nat'l Spiritual Assembly*, 628 F.3d at 849 (citations omitted). "When privity is invoked as a basis for binding a

nonparty to an injunction, it is 'restricted to persons so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding." *Id.* (citing Wright & Miller, Fed. Prac. & Prod. § 2956 (2d ed. 1995)).  Plaintiff puts forward no basis for concluding that any of the former Commission members are so closely related to the defendants as to satisfy this constitutional hurdle.  Indeed, plaintiff presents no evidence of privity whatsoever.

"The caselaw suggests that when it comes to injunctions, the concept of nonparty privity has at least two subcategories." *Id.*  The first line "holds that an injunction will bind nonparty successors in interest to an enjoined party." *Id.*  "The critical inquiry is whether there is a substantial continuity of identity between the two organizations." *Vacco*, 80 F.3d at 70; *see also Wash. Metro. Area Transit Comm'n*, 776 F.3d at 10.  Here, the Commission has been terminated, and the individual former Commissioners – acting individually and in their personal capacity – are not "successors in interest" to a former Presidential Advisory Committee constituted under Executive Order to collectively advise the President.

The second concept of privity looks to whether the "nonparty is otherwise 'legally identified' with the enjoined party." *Nat'l Spiritual Assembly*, 628 F.3d at 849.  This is a high standard, as "serious due process problems would arise if the . . . . nonparty were barred from her own day in court." *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998).  Accordingly, in order to satisfy the "legal identification" prong, "due process requires an *extremely close identification*" between the non-party and the defendant. *Nat'l Spiritual Assembly*, 628 F.3d at 854 (emphasis added).  This occurs, for example, when the non-party "completely controls [the defendant]," *Wash. Metro. Area Transit Comm'n*, 776 F.3d at 10, or is "so identified in interest with [the defendant] that [the defendant] represents precisely the same legal right in respect to

the subject matter involved in the injunction." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 30 (D.D.C. 2013); *Nat'l Spiritual Assembly*, 628 F.3d at 854 (analogizing "legal interest" test to the "piercing-the-corporate-veil doctrine"). Even here, however, "[a] key officer, employee, or shareholder of an enjoined corporation may be personally bound by the injunction after the corporation dissolves *if* he is so closely identified in interest and had a controlling role in the corporation *and in the underlying litigation that it is fair to conclude that he had his day in court when the injunction was issued*." *Nat'l Spiritual Assembly*, 628 F.3d at 854 (second emphasis added).

There is no basis for concluding that the former Commission members and the defendants are so "legally identified" that the current defendants represent the interests of the former Commissioners, and indeed, plaintiff's theory raises a host of due process problems. First, none of the former Commissioners has a "controlling role" in the present litigation, such that they can be said to have had their "day in court when the injunction is issued" (except, of course, for plaintiff himself). *Id.* They are not parties to this suit and they have no control over the defendants. *See Wash Metro Area Transit Comm'n*, 776 F.3d at 10 (discussing control). Nor are there "high degree of similarities between the activities of the old organization [the Commission] and the new [the private citizen former Commission members]." *Nat'l Spiritual Assembly*, 628 F.3d at 854. The Commission was constituted by Executive Order to collectively advise the President; any advice the individual Commissioners may choose to give would be in their personal capacity. Furthermore, the legal interests between the defendants and the former Commissioners are not identical. *See, e.g.*, *Wash. Metro Area Transit Comm'n*, 985 F. Supp. 2d at 30 (privity exists when entity "represents precisely the same legal right in respect to the subject matter involved in the injunction") (citation omitted). The individual former

9

Commissioners have a due process right in being able to speak or share information freely, without threat of court sanctions, an interest which cannot be said to be identical to the interests of the official defendants, which may have different rights with respect to controlling information (and certainly have different legal obligations under FACA).

Moreover, plaintiff appears to argue that the proposed injunction should run only against one former Commission member, Mr. Kobach, and those "acting in concert or active participation with him," Pl.'s Supp. Br. 8, not against all of the former Commission members (a category that would, of course, include himself). There is no basis for this self-serving claim. Indeed, although plaintiff cites 18 U.S.C. § 641 to suggest (improperly) that Secretary Kobach has committed a crime by misappropriating government documents for personal use, Pl.'s Supp. Br. 7, n.7, plaintiff would be equally guilty of the same purported crime, having freely provided Commission documents to the media. Secretary Kobach was never a defendant in his personal capacity, and is not one now, and there is no basis for distinguishing the legal relationship between Secretary Kobach and the defendants, from that between the plaintiff (or any other former Commissioners) and the defendants. Targeting Secretary Kobach specifically and personally, without him having an opportunity to defend himself, only illustrates the significant due process concerns inherent in plaintiff's proposed injunction. Indeed, plaintiff's brief largely constitutes an argument about what materials Secretary Kobach personally possesses, Pl.'s Supp. Br. at 5-6, or supposition about Secretary Kobach's present or future intentions, *id.* at 7-8.[1] Due

---

[1] Plaintiff cites supposed "findings" that Secretary Kobach allegedly attributed to the Commission. *See* Pl.'s Supp. Br. at 8. As stated in Mr. Herndon's declaration, "[t]he Commission did not create any preliminary findings." Second Herndon Decl. ¶ 5, ECF No. 39-2. In any event, the statement by Mr. Kobach appears to reference material that was presented to the Commission at its meetings, not findings by the Commission itself. *Compare* Supp. Br. at 8 (stating that "In 21 states, there was 8,471 cases of double voting discovered"), *with* Government Accountability Institute: America The Vulnerable: The Problem of Duplicate Voting, at 2

process requires that Mr. Kobach (and the other former Commissioners) be given the opportunity to defend himself against these claims before being subjected to the contempt power of this Court.  *See, e.g.*, *Regal Knitwear*, 324 U.S. at 13 (courts cannot enter an injunction against "persons who acted independently and whose rights have not been adjudged according to law").

Plaintiff's proposed injunction raises further due process problems.  Plaintiff proposes enjoining unrepresented private non-parties from "distributing Commission records" to anyone, Pl.'s Supp. Br. at 2, and thus subjecting those individuals to the possibility of contempt, without clearly defining what constitutes a "Commission record" for these purposes.  Nor does he explain the difference between preventing a former Commissioner from "distributing Commission records," *id.* at 2, which he seeks to enjoin, and "speaking about Commission records," *id.* at 2 n.2, which is apparently acceptable.  Could the enjoined former Commissioners read from "Commission records"?  Could they paraphrase them?  Could they speak about them from memory?  Plaintiff disavows seeking a gag order, with its obvious First Amendment implications,[2] but offers no meaningful distinction between the speech he endorses and the document transfer he wishes to forbid.  Such ambiguity would be problematic in any context, but when the party to be enjoined lacks the ability to have his or her day in court to challenge the scope of an order to be entered against him or her, the constitutional defects are even more

---

(stating that report had found 8,471 highly likely duplicate votes after obtaining voter roll data from 21 states), https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/pacei-govt-accountability-institute-problem-duplicate-voting.pdf.  Material presented to the Commission at a meeting does not constitute a "finding" by the Commission any more than material presented to a Court in the context of litigation constitutes a "finding" by the Court.  Furthermore, the fact that Mr. Kobach does not have an opportunity to explain his statement – a statement which would be the basis for injunctive relief entered against him – further illustrates the due process problem inherent in plaintiff's motion.

[2] *See New York Times Co. v. United States*, 403 U.S. 713, 714 (1971).

pronounced.  And it is especially pronounced here, where plaintiff seeks to insert himself into *post*-Commission discussions in a context where there was no final, or even preliminary Commission report, without ever articulating any statutory basis for such supposed participation right.  *See* Mem. Supp. Mot Reconsideration, at 8-9, ECF No. 39-1.

## II.   This Court Cannot Compel the Remaining Defendants to Place Restrictions on Former Commission Members' Ability to Unofficially Disseminate Commission Records; Nonetheless, Defendants Are Voluntarily Requesting That Former Commission Members Not Distribute Records.

This Court cannot compel the remaining defendants to place restrictions on former Commission members to unofficially disseminate Commission records, because the defendants themselves cannot directly issue such binding commands to the former Commissioners under these circumstances.  Defendants are requesting, however, that the former Commission members not distribute Commission records to any entity, including the Department of Homeland Security.  Defendants have also affirmatively reached out to Secretary Kobach and asked that he not share with DHS or any other federal entity, other than the White House for preservation purposes, any Commission records not otherwise made public, during the pendency of the plaintiff's motion.  He has agreed to that request.[3]

Defendants are not aware of authority that would allow them to directly restrict former Commission members' ability to unofficially disseminate Commission records under these circumstances.[4]  The Presidential Records Act, 44 U.S.C. § 2201 *et seq*., governs Presidential

---

[3] Counsel for the defendants advised plaintiff's counsel of Secretary Kobach's agreement by email sent on January 12, 2018, at 4:20pm.

[4] Defendants do not address the issue of restrictions on the dissemination of information that is classified, privileged, or confidential via an agreement or other mechanism.  Some documents on the *Vaughn*-like index are clearly privileged (*i.e.*, internal discussion with counsel), but there is no indication that former Commissioners are in possession of any such

12

records (including, in this context, Commission records).  The Act requires that the President

"preserve[] and maintain[]" Presidential records, 44 U.S.C. § 2203(a), but does not address the

President's control over the disposition of additional copies of presidential records that are held

by third parties.  In other words, it is a statute governing preservation, not, by its terms, control

over additional copies of Presidential records not otherwise restricted.[5]  Nor does the Presidential

Records Act impose any restrictions on oral or written discussions about presidential records.

 To the extent that defendants or the National Archives and Records Administration

determined that the Presidential records needed to be recovered, the remedy could be an action in

replevin.  *See, e.g.*, *Jackson v. United States*, 248 F. Supp. 3d 167, 170 n.2 (D.D.C. 2017)

("Replevin is a common law action 'for the repossession of personal property wrongfully taken

or detained by the defendant.'") (quoting Black's Law Dictionary (10th ed. 2014)); *United States*

*v. McElvenny*, No. 02 Civ. 3027 (JSM), 2003 WL 1741422 (S.D.N.Y. Apr. 1, 2003) (Department

of Justice lawsuit in the form of a civil replevin action, seeking recovery of a map of Cuba

annotated by President Kennedy during the Cuban Missile Crisis).  Here, however, the

documents are being preserved in accordance with the Presidential Records Act.  *See* Declaration

of Philip C. Droege [attached hereto].  In any event, there is no private right of action under that

statute.  *See, e.g.*, *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991) ("We conclude that

---

documents, with the possible exception of litigation-related documents sent to Mr. Kobach in his
former capacity as Vice Chair.

 [5] Indeed, it is not clear how such a requirement would be enforceable.  Presidential
records constitute materials "created or *received*" by the President or his staff "in the course of
conducting activities" related to his official duties.  44 U.S.C. § 2201(2) (emphasis added).  By
this definition, a letter received by the President from a private citizen would be a Presidential
record when in the President's custody, but the President could not restrict the use or distribution
of the private citizen's copy of that letter, even though that letter, in the hands of the White
House, would be a Presidential record.  Similarly, Presidential records are routinely shared with
federal agencies, which then become federal records subject to the Freedom of Information Act.

permitting judicial review of the President's compliance with the [Presidential Records Act] would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns.  We therefore hold that the [Presidential Records Act] is one of the rare statutes that does implicitly preclude judicial review.")

What defendants are doing to preserve the status quo is to request that the former Commission members not share Commission records with other entities.  The White House Office of Records Management is sending all the former Commission members a letter requesting that they not independently transfer non-public Commission records to DHS or any other entity.  Counsel from the White House Counsel's Office has also reached out to Mr. Kobach in his personal capacity, requesting that he not share with the Department of Homeland Security or any other federal entity, other than the White House for preservation purposes, any Commission records not otherwise made public, during the pendency of the plaintiff's motion. Secretary Kobach has agreed to that request.[6]

## **CONCLUSION**

For the aforementioned reasons, this Court should deny plaintiff's motion to enjoin the former Commission members from disseminating Commission documents.

---

[6] Plaintiff claims that absent an injunction, he will suffer irreparable harm.  Pl.'s Supp. Br. at 8 ("Defendants are denying Secretary Dunlap an opportunity to make his own informed comments about the Commission's work").  But there is no statutory right permitting plaintiff to "make informed comments" to the media or to the public about the former Commission's work. His rights as a Commissioner were limited to providing collective advice to the President.  *See* Mem. Supp. Mot. Reconsideration, at 8-9.

Dated:  January 16, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINIA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-1944 / Fax: (202) 616-8460
E-mail: Joseph.Borson@usdoj.gov