## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW DUNLAP,<br><br>               Plaintiff,<br><br>     - versus -<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; MICHAEL R. PENCE, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; KRIS W. KOBACH, IN HIS OFFICIAL CAPACITY AS VICE CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; ANDREW KOSSACK, IN HIS OFFICIAL CAPACITY AS DESIGNATED FEDERAL OFFICER FOR THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; GENERAL SERVICES ADMINISTRATION; TIMOTHY R. HORNE, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION; EXECUTIVE OFFICE OF THE PRESIDENT; OFFICE OF THE VICE PRESIDENT; OFFICE OF ADMINISTRATION; MARCIA L. KELLY, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ADMINISTRATION,<br><br>             Defendants. | Civil Action No. 17-cv-2361-CKK |

## SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................................... 1

II.    THE GOVERNMENT'S DEFICIENT DOCUMENT COLLECTION AND
PRESERVATION EFFORTS REQUIRE RELIEF TO PRESERVE THE STATUS QUO.......... 2

III.    THE COURT HAS INHERENT AUTHORITY TO ENFORCE ITS DEC. 22 ORDER.. 6

    A.    Defendants Remain Subject to a Pending Court Order ..................................... 6

    B.    This Court Has Inherent Authority to Enforce a Pending Court Order ............................ 7

    C.    The Governments' Position Would Provide Official Capacity Defendants a Roadmap to
Circumvent Pending Court Orders................................................................. 8

IV.    VICE-CHAIR KOBACH REMAINS A DEFENDANT NOTWITHSTANDING THE
DISSOLUTION OF THE COMMISSION.................................................................. 9

    A.    The Government's Cases on Substitution of Parties Are Inapposite............................... 10

    B.    The Government's Objections Under Rule 65(d) Are Inapposite. ................................... 11

V.    RELIEF IS NECESSARY TO PLACE SECRETARY DUNLAP ON EQUAL FOOTING
WITH OTHER INDIVIDUAL COMMISSIONERS .................................................. 13

VI.    CONCLUSION.............................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*,
  750 F.2d 81 (D.C. Cir. 1984) ................................................................. 11

\* *Cummock v. Gore*,
180 F.3d 282, 286 (D.C. Cir. 1999) .................................................. 11, 14, 15

*Judicial Watch v. Nat'l Energy Policy Dev. Grp.*,
  219 F. Supp. 2d 20 (D.D.C. 2002) ........................................................ 11

*In re Lafayette Radio Elecs. Corp.*,
  761 F.2d 84 (2d Cir. 1985) .................................................................. 7

*Nat'l Spiritual Assembly of Baha'is Under Hereditary Guardianship, Inc. v. Nat'l
  Spiritual Assembly of Baha'is of the U.S.*,
  628 F.3d 837 (7th Cir. 2010) .............................................................. 12

*NRDC v. Abraham*,
  223 F. Supp. 2d 162 (D.D.C. 2002), *vacated on other grounds*, *NRDC v.
  DOE*, 353 F.3d 40 (D.C. Cir. 2004) ...................................................... 8

*Pub. Citizen Health Research Grp. v. Food and Drug Admin.*,
  953 F. Supp. 400 (D.D.C. 1996) .......................................................... 7

*Roe v. Operation Rescue*,
  919 F.2d 857 (3d Cir. 1990) ................................................................ 12

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ............................................................................ 13

*Teed v. Thomas & Betts Power Solutions, L.L.C.*,
  711 F.3d 763 (7th Cir. 2013) .............................................................. 10

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
  776 F.3d 1 (D. C. Cir. 2015) .............................................................. 12

*Washington Post v. Dep't of Homeland Sec.*,
  459 F. Supp. 2d 61 (D.D.C. 2006) ...................................................... 13

**Statutes and Rules**

44 U.S.C. § 2202 ................................................................................ 3, 4

Fed. R. Civ. P. 25 .............................................................................. 10

Fed. R. Civ. P. 65 ....................................................................................................................11

## I.     INTRODUCTION

This Court's Order of December 22, 2017 (the "Dec. 22 Order") (Dkt. No. 33) bound the Defendants to provide Secretary Dunlap with certain Commission records.  Secretary Dunlap filed this motion for a temporary restraining order ("TRO") to preserve his rights in light of the Government's voluntary decision to dissolve the Commission and to re-litigate the issues already decided in that Order.  The status quo should be preserved so that Secretary Dunlap does not suffer further harm based on the Government's decision to engage in endless litigation rather than simply comply with the Court's order.  However, the Government's supplemental brief in opposition to the TRO motion demonstrates that absent Court intervention, there can be no assurance that the situation will remain frozen.  The conduct of the Government and of former commissioners to date demonstrates further harm will continue to accrue.

The Government asserts that individual commissioners, like Vice-Chair Kobach, are beyond the reach of this Court's authority and cannot be ordered to do anything. This is despite the fact that the Commission and defendant commissioners were subject to a pending Court order with which they failed to comply and the Court has never relinquished its jurisdiction over them. The Government arrogates to itself the authority to deprive this Court of jurisdiction through the unilateral action of dissolving the Commission, offering only modest concessions that leave Secretary Dunlap disadvantaged (compared to several of his fellow commissioners) in the public debate over the Commission's work and the subject of voter fraud.  Along the way, the government concedes that it folded the tent of the Commission without taking any steps to safeguard the documents created by individual commissioners after the compilation of the *Vaughn*-type index.  In a rush to shut down the Commission in order to avoid compliance with this Court's order, the Government has left itself in a remarkable position in which it may be unable to comply with the Dec. 22 Order.

Faced with these challenges in defending against the TRO, the Government tries to change the subject.  The Government says that any effort by this Court to protect its own preliminary injunction violates core principles of Anglo-American jurisprudence—as if it were somehow a novel proposition that a court can enforce its orders.  The Government contends that it violates due process to order those in possession of government documents not to distribute those documents unless they are first returned to the Government and shared with dissenting commissioners.  The Government accuses Secretary Dunlap of seeking prior restraint when all that is sought is equal treatment for a member of the Commission who is being deprived of the right to publish a dissent and respond to the claims by other commissioners that the Commission found widespread voter fraud.

The Court should look past these evasions of responsibility and preserve its ability to enforce its prior order by issuing a temporary restraining order.

## II.    THE GOVERNMENT'S DEFICIENT DOCUMENT COLLECTION AND PRESERVATION EFFORTS REQUIRE RELIEF TO PRESERVE THE STATUS QUO

There no longer can be any doubt that absent judicial intervention, the status quo will not be preserved, and there is serious danger that Defendants will never be able to comply with either this Court's Dec. 22 Order or with any eventual final judgment granting Secretary Dunlap relief on the merits of his FACA claim (which this Court has already determined is likely to succeed).  A court order is necessary to protect Secretary Dunlap's rights.

The Government's collection and preservation of documents subject to the Dec. 22 Order, and otherwise highly relevant to this litigation, has been woefully inadequate.  In response to the Court's inquiry regarding their preservation of documents relevant to this litigation, the Government states that it has collected and preserved the documents on the *Vaughn*-type index.  Droege Decl. ¶ 3.  But despite the pendency of this litigation, the Dec. 22 Order requiring

Defendants to provide Secretary Dunlap with documents **through the date of that order and in the future**, and the Government's obligations under both the Presidential Records Act and FACA, the Government apparently **has not collected** all communications or documents from individual commissioners in the three months since the *Vaughn*-type index was filed with this Court on September 29, 2017, and remarkably has failed to take any steps in the two weeks since the dissolution of the Commission despite repeatedly expressing an intention to do so. *See id.* Worse, the Government now takes the position that this Court has no jurisdiction over the individual commissioners and that the best the Government can do is make a non-binding and non-enforceable "request" (to be transmitted at some uncertain point in the future) that the individual commissioners forward documents for preservation to the White House. Shapiro email (Ex. 1).

Defendants' nonchalance toward the preservation of documents subject to this Court's Order is alarming. The Dec. 22 Order placed binding obligations on Defendants (including the Commission itself and Vice-Chair Kobach) to collect and produce the documents that were subject to that Order. *See* Dec. 22 Order at 18-19 ("The Court . . . expects Defendants to comply with the guidance set forth in this decision. The Commission has a clear duty to provide Plaintiff with these documents and any similar documents that exist now or in the future."). The Government's untenable position is that voluntary actions taken by the Government days later have effectively eliminated the prerequisite to complying with the Court's Order: the collection of documents so that they can be provided to Secretary Dunlap. But this cannot be correct. The Government cannot be permitted to take voluntary steps that, whether by design or in effect, thwart pending court orders leaving the Court and Plaintiff no remedy to ensure compliance with the orders. The Government cannot be permitted effectively to annul the Dec. 22 Order by neglecting to diligently collect documents, voluntary disbanding the Commission, and claiming

that the Court is helpless to bind those individuals whose compliance is necessary to comply with the Order.

Because the individual commissioners' preservation obligations flow from their agreement to be appointed as commissioners to a FACA commission, they withstand the Commission's dissolution so long as they possess documents that are Commission records.  By law, the records in the possession of individual commissioners—including records related to preparatory work or administrative work—are the property of the United States and all individual commissioners have an ongoing legal obligation to return copies of them so that they may be preserved in accordance with the Presidential Records Act.  *See* 44 U.S.C. § 2202 ("The United States shall reserve and retain ***complete ownership***, possession, and control of Presidential records.") (emphasis added); *id.* § 2201(2) (defining "Presidential records" to include "documentary materials . . . created or received by the President, the President's immediate staff, ***or a unit or individual of the Executive Office of the President*** whose function is to advise or assist the President") (emphasis added).  Moreover, even the Government concedes that disclosure suits brought under FACA are not moot once an advisory committee dissolves.  Dkt. 39-1 at 9 n.2. Yet, the Government takes the position that it may cause a pending disclosure order to be unenforceable by allowing covered records to escape its custody and control.

This Court also must reject the Government's suggestion that its failure to diligently collect and preserve documents generated after the date the *Vaughn*-type index was filed should be excused because no official public Commission meetings were held after September 12, 2017.  Droege Decl. ¶ 4 ("After the September 12 meeting and after the Vaughn-like index was submitted, there were no further meetings of the Commission.").  The Dec. 22 Order left no room for doubt that the Government was required to collect and produce documents post-dating

the *Vaughn*-type index.  *See* Dec. 22 Order at 18-19 ("The Court . . . expects Defendants to comply with the guidance set forth in this decision.  The Commission has a clear duty to provide Plaintiff with these documents and any similar documents that exist now or in the future.").[1]  The Dec. 22 Order squarely held that Secretary Dunlap has a right to documents about plans to hold subsequent meetings, even if no future public meetings actually took place.  Indeed, one of the three exemplar categories of documents that the Court ordered must be provided to Secretary Dunlap consisted of documents related to "plans for the next meeting whenever it is held, the decision about whether or not to hold it in December, speaker possibilities for that meeting, and any proposal to invite [the Minnesota Voters Alliance]."  Dec. 22 Order at 18.

Despite this clear order to produce documents concerning a potential December 2017 meeting—and the knowledge that documents responsive to this order resided on individual commissioners' personal email addresses—the Government apparently took no steps to collect these documents in the two-week period between the date of the Order and the dissolution of the Commission.  Now, the Government states that the best it can do is send a nonbinding and unenforceable letter at an unspecified date in the future to "all former Commissioners instructing them to forward . . . any documents that they created or received regarding Commission work that they have not already sent to the White House."  Droege Decl. ¶ 4.  It is imperative that the Court step in to ensure that its Dec. 22 Order is followed, or at a minimum is susceptible to being followed in the future.

_____

[1] Even before the Dec. 22 Order, this was not a reasonable interpretation of the Government's collection and preservation obligations.  In response to this Court's Order requiring the indexing of "categories of documents . . . appropriately included in the universe of documents potentially subject to disclosure pursuant to FACA section 10(b)," the Government compiled the *Vaughn*-type index that included many documents not directly tied to public Commission meetings.  *See* Order, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1354 (Aug. 30, 2017) (Dkt. No. 28).

### III.     THE COURT HAS INHERENT AUTHORITY TO ENFORCE ITS DEC. 22 ORDER

In their most recent response, the Government—speaking on behalf of an undefined set of clients or perhaps former clients—takes the extraordinary position that the Government can take unilateral steps to relieve government officials of their Court-ordered obligations.  Dkt. No. 44.  This is not, and cannot be, the case.  All Defendants, including Vice-Chair Kobach, remain subject to the pending Dec. 22 Order and were subject to it when they unilaterally decided to, in their view, constructively transfer documents in the possession of commissioners to the possession of private citizens by virtue of the dissolution of the Commission.  The Court has inherent authority to enforce its Order, entered with notice to all Defendants after full briefing by both sides.  This outcome is both intuitive and consistent with case law in this Circuit.  A contrary outcome would provide official-capacity defendants a roadmap to circumvent pending court orders.

#### A.     Defendants Remain Subject to a Pending Court Order

Absent an order to the contrary, the Defendants remain subject to the pending Dec. 22 Order.  It is undisputed that when the Dec. 22 Order was issued, Vice-Chair Kobach was a party to this case and subject to the jurisdiction of the Court.  Nevertheless, and despite his clear legal duty, Vice-Chair Kobach has failed to comply with the Court's directive.

The recent submission by the Government argues that the "former Commission members" are "no longer parties to this litigation."  Dkt. No. 44 at 1.  But the brief is silent as to who now holds the enigmatic title of "Defendants."  Is the Government attempting to back out Defendants one by one until the Court's Dec. 22 Order is rendered a nullity?  It appears that the Government is drawing a distinction between, on the one hand, what they have deemed "former defendants"—the Commission; Commission Chair, Michael R. Pence; Commission Vice-Chair,

Kris Kobach; and, perhaps, Designated Federal Officer for the Commission, Andrew Kossack—and, on the other hand, what they consider "current defendants"—the General Services Administration ("GSA"); the Acting Administrator of the GSA, Timothy R. Horne; the Executive Office of the President; the Office of the Vice President; the Office of Administration; and the Director of the Office of Administration, Marcia L. Kelly.  In reality, until the Court dismisses a defendant, or substitutes a successor for a defendant, that defendant remains in the action.  Neither the Government nor individual defendants can unilaterally decide to ignore court orders.

### B.    This Court Has Inherent Authority to Enforce a Pending Court Order

Put simply, within weeks of being ordered to disclose records to Secretary Dunlap, Defendants voluntarily and unilaterally took actions that, under their view of the law, stashed the only copies of Commission records outside of the reach of the Court's enforcement.  That is not correct.  This Court has inherent authority to ensure compliance with its Dec. 22 Order.  *See, e.g.*, *Pub. Citizen Health Research Grp. v. Food and Drug Admin.*, 953 F. Supp. 400, 404 (D.D.C. 1996) (observing that a court has "inherent authority to control and preserve the integrity of [its] judicial proceedings.").  Defendants have evaded their obligations under the Dec. 22 Order for almost a month.  Until they have complied with that order, the Court retains jurisdiction over all Defendants to ensure compliance.  *See In re Lafayette Radio Elecs. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985) ("[A]ncillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity[.]").[2]

---

[2] It cannot be that the sole means available for Secretary Dunlap to obtain documents the Court ordered to be disclosed is to seek an order authorizing a Rule 45 subpoena against "third party" Kobach, or to wait for months until the discovery phase to do so while leaving the documents uncollected, uncontrolled, and subject to disclosure or potential destruction.

In essence, the primary relief sought by Secretary Dunlap in this motion—that Vice-Chair Kobach preserve all records arguably related to the Commission's activities and return those records to the Government—is simply a prerequisite for the enforcement of the Dec. 22 Order.  Vice-Chair Kobach remains subject to that Order and to further orders from this Court as necessary for the Court to be able to effectuate the relief therein.

### C.    The Governments' Position Would Provide Official Capacity Defendants a Roadmap to Circumvent Pending Court Orders

The Government's position is that it can choose to voluntarily take steps—such as the dissolution of the Commission—before taking the steps necessary to maintain the *status quo* with respect to pending orders of the Court, and that these voluntary steps can thwart the ability of the Court to fully enforce its orders.  This runs counter to the judicial process and the underlying purposes of FACA.  *See NRDC v. Abraham*, 223 F. Supp. 2d 162, 184 (D.D.C. 2002) (a "finding that disclosure of the documents was no longer available because the committees ceased to exist would allow *agencies to frustrate the purposes of FACA by convening committees and disbanding them before materials could be requested, or a lawsuit concluded*" and determining that the "Court has the authority to provide equitable relief to remedy a statutory violation by defendants" (emphasis added)), *vacated on other grounds*, *NRDC v. DOE*, 353 F.3d 40, 41 (D.C. Cir. 2004).

Indeed, the Government could have gathered copies of all Commission records in the possession of individual commissioners prior to the dissolution of the Commission, thus ensuring the preservation of all records subject to the Dec. 22 Order and the Government's ability to fully comply with the Dec. 22 Order after any further contemplated litigation.  In a headlong rush to avoid compliance with the Dec. 22 Order, the Government failed to do so and now takes the

untenable position that the Court likewise cannot fully enforce its order because of this voluntary action by the Government.

The suggestion that there is a due process problem with imposing a continuing obligation on a properly served, noticed and engaged Defendant subject to a pending court order strains credulity.  A Defendant cannot be allowed to cry due process as he runs away from the courthouse; a properly served, noticed, and engaged Defendant subject to obligations under a pending court order cannot escape his responsibilities by effectively quitting his job and absconding with official records.  The Government's position is a direct affront to the authority of this Court to ensure compliance with its order and warrants invocation of the Court's inherent authority.

## IV.    VICE-CHAIR KOBACH REMAINS A DEFENDANT NOTWITHSTANDING THE DISSOLUTION OF THE COMMISSION

Secretary Dunlap seeks relief against Vice-Chair Kobach because of his leadership role on the Commission, his continued possession of Commission records necessary for compliance with the Dec. 22 Order, his failure to transmit those records to the White House, and his public statements since the Commission's closure stating that the Commission has reached initial findings.  His continued exclusive possession of Commission records belies the Government's assertions that Mr. Kobach is a strictly private individual with no continuing legal obligations stemming from his role as Vice-Chair of the Commission.  Dkt. No. 44 at 5.  Mr. Kobach and other individual commissioners still have official duties and legal obligations stemming from their positions as commissioners, including the obligation to retain documents in connection with litigation hold notices each received in his capacity as commissioner.  Mr. Kobach and other commissioners sent or received documents in their capacity as commissioners, received a litigation hold in their capacity as commissioners, and cannot now be exempt from the

requirement to preserve and produce documents.

### A.    The Government's Cases on Substitution of Parties Are Inapposite

The Government cites no case holding that a FACA commissioner had no continuing

obligations simply because the advisory committee on which he served had been disbanded.

Instead, the Government relies heavily on case law governing substitution of a party sued in his

official capacity.  Dkt. No. 44 at 3-5.  However, reliance on these cases and selected dicta

contained therein is misplaced.  Unlike the situation in those cases—in which a federal or state

official sued in his official capacity was replaced by operation of law with that individual's

successor—the commissioners here have no named successors who will assume their official

duties and legal obligations. The cases involving substitution are thus inapposite because, unlike

here, a plaintiff with an active case against a seamlessly substituted party faces no detriment or

delay in prosecuting her case against the new defendant.  For the same reason, Federal Rule of

Civil Procedure 25(d) is inapposite.  Substitution is a mechanism to preserve a pending action

but here the Government seeks to use it to euthanize one.  Fed. R. Civ. P. 25(d) ("An action does

not abate when a public officer who is a party in an official capacity . . . ceases to hold office.").

To take the analogous commercial context, a corporation facing a legal judgment cannot

evade that judgment by dissolving, distributing its assets to shareholders, and spurning its

creditors.  *See Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 468 (7th Cir.

2013) ("[T]o allow Thomas & Betts to acquire assets without their associated liabilities, thus

stiffing workers who have valid claims under the Fair Labor Standards Act, is equally a

'windfall.'").  Defendants are trying to accomplish the same result:  maintain the documents (i.e.,

assets) of the Commission in the hands of former commissioners but tell Secretary Dunlap (the

"creditor" with a legal judgment against the Commission) that he cannot enforce that judgment

against the former commissioners.[3]

Moreover, Defendants' attempt to distinguish cases establishing that jurisdiction remains over advisory committee members after the dissolution of the committee is unpersuasive. *See* Dkt. No. 44 at 6. They have no answer for *Cummock v. Gore*, which largely mirrors the current situation. 180 F.3d 282, 286 (D.C. Cir. 1999). There, plaintiff sued Vice President Gore *in his capacity* as Vice Chairman of the White House Commission on Aviation Safety and Security following the disbanding of the Commission. *See id*. This Court and the D.C. Circuit compelled Defendants to comply with FACA and produce the documents to plaintiff. *Id.* at 293. While *Cummock* does not pronounce a sweeping principle that "persons sued in their official capacities remain parties in their individual capacities even after they no longer serve in an official capacity", Dkt. No. 44 at 6, it does provide the most pertinent guidance on whether FACA obligations survive service on a Commission. Both there and here, the answer is yes. *See also Judicial Watch v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 35 (D.D.C. 2002).

### B.     The Government's Objections Under Rule 65(d) Are Inapposite.

The Government recognizes that the Court possesses the authority pursuant to Federal Rule of Civil Procedure 65(d)(2)(C) to enjoin individuals "in active concert or participation" with "the parties" or the "parties' officers, agents, servants, employees, and attorneys" so long as those individuals receive actual notice of the order. Fed. R. Civ. P. 65(d)(2)(C); *see also* Fed. R. Civ. P. 65(d)(2)(A) & (B). The Government further agrees that this Rule "incorporates the common-law principle that an injunction not only binds the parties defendant but also those

---

[3] In addition, when a governmental entity goes out of existence, the authority wielded by that entity does not disappear but rather is transferred to another governmental entity. *See Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 87-88 (D.C. Cir. 1984) (stating that after the Civil Aeronautics Board goes out of existence, "this Court will retain jurisdiction over this case" and successors at the Department of Transportation will be responsible for "inform[ing] this Court of the manner in which it intends to expedite resolution of these claims").

identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D. C. Cir. 2015) (quotations and internal citation omitted); *see also Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) ("The law does not permit the instigator of contemptuous conduct to absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others."). *Cf.* 11A Wright & Miller § 2956 (3d ed. 2014) (noting that an injunction covers these persons/entities even if they are not expressly mentioned in the text of the order).

But the Government is wrong that this Court's injunctions will not reach the "former" commissioners because there is no privity of interest between the "former" commissioners and the other defendants in this action. The very law that the Government cites supports the existence of privity of interest. The Government contends that there are two "subcategories" of "nonparty privity." *Washington Metro.*, 776 F.3d at 9. One subcategory comprises "nonparty successors in interest to an enjoined party." The second subcategory of privity is where the "nonparty is otherwise 'legally identified' with the enjoined party." *Nat'l Spiritual Assembly of Baha'is Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of the U.S.*, 628 F.3d 837, 848 (7th Cir. 2010).

With respect to this second category, the Government admits that "a key officer, employee, or shareholder of an enjoined corporation may be personally bound by the injunction after the corporation dissolves *if* he is so closely identified in interest and had a controlling role in the corporation and in the underlying litigation that it is fair to conclude that he had his day in court when the injunction was issued." *Id*. at 854 (emphasis in original). Under this definition, Vice-Chair Kobach is in privity with the other defendants that the Government does not dispute remain defendants in the case. It is impossible to deny that Vice-Chair was a key officer of the

12

Commission.  It is likewise clear that, as Vice-Chair, he held a "controlling role" in the

Commission; the Government argued in their preliminary injunction brief that the bylaws gave

him such a role.  Dkt. No. 30 at 26-27.  Further, accepting *arguendo* the Government's position

that the dissolution of the Commission turned Kobach into a mere private citizen, "private

citizen" Kobach is in privity with the "Vice Chair Kobach" (and with whomever currently has

authority over the Commission's records) insofar as the latter constructively transferred

possession of records to the former when the Commission dissolved.  Finally, there is no doubt

that Vice-Chair Kobach had his day in court when the original injunction issued.  Even in

connection with this motion, Vice-Chair Kobach has had his day in court, as the Department of

Justice continues to present arguments on his behalf just as if he were an active commissioner.

Vice-Chair Kobach is adequately represented by defense counsel and the remaining defendants,

and so he may be bound by the Court's orders.  *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008)

("[I]n certain limited circumstances, a nonparty may be bound by a judgment because she was

adequately represented by someone with the same interests who [wa]s a party to the suit.")

(internal quotation and citation omitted).

## V.     RELIEF IS NECESSARY TO PLACE SECRETARY DUNLAP ON EQUAL FOOTING WITH OTHER INDIVIDUAL COMMISSIONERS

Finally, a temporary injunction and/or an order compelling Defendants to immediately

produce Commission records to Secretary Dunlap is necessary so that Secretary Dunlap can

participate on equal footing as other individual commissioners in the current ongoing national

debate surrounding the issues the Commission was tasked with studying.  *See Washington Post*

*v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) (citing the irreparable harm if a

party is "denied access to information that is highly relevant to an ongoing public debate").

Using personal email accounts to which they still have access, Vice-Chair Kobach and other

13

commissioners undertook Commission activities and discussed Commission business in violation of the statutory obligation to include Secretary Dunlap. *See* Dec. 22 Order at 18. In its most recent filing, the Government disclaims any authority "to directly restrict former Commission members' ability to unofficially disseminate Commission records." Dkt. No. 44 at 12.

Further, the informal requests made to commissioners by the Government are wholly inadequate and will not stop Mr. Kobach and other commissioners from distributing Commission materials in their possession. The Government states only that Mr. Kobach has agreed "not to share [Commission records] with the Department of Homeland Security or any other federal entity." *Id.* at 14. The Government has not requested—nor has Mr. Kobach agreed—that he preserve the status quo and refrain from distributing Commission records in his possession to any state entity or other third party.

The upshot is that Mr. Kobach and other former commissioners are free to discuss and distribute Commission records, and to suggest their statements have the imprimatur of the Commission's legitimacy, while Secretary Dunlap—because Mr. Kobach and the other Defendants violated his FACA rights and have not complied with the Dec. 22, 2017 Order—is effectively precluded from doing the same. Rather than disputing that Mr. Kobach and other commissioners have this unfair advantage, the Government contends that Secretary Dunlap has "no statutory right" to "make informed comments" about the Commission's work. Dkt. No. 44 at 14 n.6.[4] Not for the first time, *see* Dec. 22 Order at 15-16, the Government wrongly interprets *Cummock* and is incorrect about the scope of a commissioner's FACA rights. In *Cummock*, the

---

[4] It is difficult to square this position with the Government's position that "the individual former Commissioners have a due process right in being able to speak or share information freely," Dkt. No. 44 at 9-10, unless the Government contends that only Vice-Chair Kobach (but not Secretary Dunlap) has a right to make informed comment about the Commission's work.

D.C. Circuit held that a former commissioner "must . . . be given an opportunity to amend ***and***

***publish*** a dissent incorporating her fully enlightened views."  180 F.3d at 293 (emphasis added).

Her rights therefore were decidedly ***not*** limited to "providing collective advice to the President."

Dkt. No. 44 at 14 n.6.  Because the commission's report "garnered extensive media attention,"

the D.C. Circuit ordered that Cummock's revised dissent be "publish[ed] and distribute[d] . . . in

the same places as it originally circulated the final report and dissent."  *Id.* at 286, 293.[5]  The

Government's unsupported position that Secretary Dunlap's right to use Commission records is

limited to providing advice directly to the President ignores that a FACA advisory committee is

"a public deliberative body that is subject to precise statutory mandates designed to ensure

openness and fair deliberations."  *Cummock*, 180 F.3d at 291.  Vice-Chair Kobach and others

have made the decision to discuss the Commission's "findings" and other work in the public

domain.[6]  Dkt. No. 42 at 7-8.  Secretary Dunlap's right to fully participate in the Commission

allows him to participate in that public discussion regarding election integrity, including what the

Commission purportedly "found."

　　　The Government misconstrues Secretary Dunlap's position as unfairly seeking an

injunction that would restrain Mr. Kobach but not himself.  Dkt. No. 44 at 10.  Secretary Dunlap

does not seek to enjoin any commissioner's distribution of Commission records in perpetuity.

---

[5] Even were the Government correct that Secretary Dunlap's rights are limited to providing advice directly to the President, *Cummock* makes clear that such advice includes preparation of a fully-informed dissent.  180 F.3d at 293.  Until Secretary Dunlap is provided with the documents necessary for him to prepare a fully informed dissent, the advice or "initial findings" reviewed by President Trump are not the product of a fully balanced Commission, as FACA requires them to be.

[6] The Director of White House Information Technology has made an unsupported claim that the Commission did not make any "preliminary findings."  Herndon Decl. (Dkt. No. 39-2) ¶ 4.  But the Herndon Declaration did not define what it meant by "findings," and failed to explain the basis for this claim given that Mr. Herndon performed no role on the Commission.  Nor does it reconcile this claim with the President's contrary official statement that initial findings would be transmitted to DHS.

He only seeks a *temporary* injunction until such time as Secretary Dunlap is provided with the documents to which he is entitled under FACA so that he can fully and fairly participate in the ongoing discussions.  If the Government complies promptly with the Dec. 22 Order, there would be no need for any injunction on distribution.  But, as evidenced by the Government's motion for reconsideration, Dkt. No. 39, the Government is seeking to avoid or delay compliance with the Dec. 22 Order.  In short, the government should be required to share the Commission records with Secretary Dunlap now or, in the alternative, other commissioners should not be permitted to share them selectively and for personal or partisan advantage until the motion is decided.

## VI.    CONCLUSION

For the foregoing reasons, Secretary Dunlap respectfully requests that the Court grant his motion to temporarily enjoin Vice-Chair Kobach and the other former commissioners from distributing Commission records until such time as Defendants provide Secretary Dunlap with the documents required by the Dec. 22 Order.

Dated: January 17, 2018                          Respectfully submitted,

By:
    /s/ Harry Sandick

PATTERSON BELKNAP WEBB & TYLER LLP
Daniel S. Ruzumna (D.C. Bar No. 450040)
Harry Sandick (admitted *pro hac vice*)
Daniel A. Friedman (admitted *pro hac vice*)
1133 Avenue of the Americas
New York, N.Y. 10036
Tel:  (212) 336-2000
Fax:  (212) 336-2222
druzumna@pbwt.com
hsandick@pbwt.com
dfriedman@pbwt.com

AMERICAN OVERSIGHT
Austin R. Evers (D.C. Bar No. 1002367)
Melanie Sloan (D.C. Bar No. 434584)

John E. Bies (D.C. Bar No. 483730)
Cerissa Cafasso (D.C. Bar No. 1011003)
1030 15th Street NW, B255
Washington, DC 20005
Tel: (202) 869-5246
austin.evers@americanoversight.org
msloan@americanoversight.org
john.bies@americanoversight.org
cerissa.cafasso@americanoversight.org


*Attorneys for Plaintiff Matthew Dunlap*