**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MATTHEW DUNLAP,

                Plaintiff,

v.                                     Civil Docket No. 17-cv-2361 (CKK)

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY *et al.*,

                Defendants.

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
TO RECONSIDER THIS COURT'S DECEMBER 22, 2017, ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT..........................................................................................................................2

    I.  In Light of the Commission's Dissolution, Plaintiff Cannot
        Show Irreparable Harm…...................................................................................................2

    II.  In Light of the Dissolution of the Commission, Plaintiff Cannot
        Show a Likelihood of Success on the Merits......................................................................6

    III. Light of the Dissolution of the Commission, the Balance of Equities
        and the Public Interest Do Not Warrant Preliminary Injunctive Relief……………………..8

    IV. Alternatively, This Court Should Stay the Injunction Pending Consideration
        of a Possible Appeal..........................................................................................................10

CONCLUSION.......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Case**                                               **Page(s)**

*Armstrong v. Exec. Office of the President*,
   1. F3d 1274 (D.C. Cir. 1993) ...........................................................................................5

*Cheney v. U.S. Dist. Ct. for D.C.*,
   406 F.3d 723 (D.C. Cir. 2005) ........................................................................................9

*CityFed Fin. Corp. v. Office of Thrift Supervision*
   58 F.3d 738 (D.C. Cir. 1995)........................................................................................... 2

*Coal. for Common Sense in Gov't Procurement v. United States*,
   576 F. Supp. 2d 162 (D.D.C. 2008)..................................................................................2

*Center for Biological Diversity v. Tidwell*,
   239 F. Supp. 3d 212 (D.D.C. 2017) ................................................................................ 8

*\*Cummock v. Gore*,
   180 F.3d 282 (D.C. Cir. 1999).................................................................................. passim

*Elec. Privacy Info. Ctr. v. DOJ*,
   416 F. Supp. 2d 30 (D.D.C. 2006) ..................................................................................4

*Elec. Privacy Info. Ctr. v. DOJ*,
   15 F. Supp. 3d 32 (D.D.C. 2014)..................................................................................4, 5

*Human Touch DC, Inc. v. Merriweather*,
   2015 WL 1256162 (D.D.C. May 18, 2015)......................................................................2

*In re al-Nashiri*,
   791 F.3d 71 (D.C. Cir. 2015) ...........................................................................................7

*John Doe Co. v. CFPB*,
   235 F. Supp. 3d 194 (D.D.C. 2017)................................................................................10

*Leadership Conf. on Civil Rights v. Gonzales*,
   404 F. Supp. 2d 246 (D.D.C. 2005) .................................................................................4

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
   518 F. Supp. 2d 174 (D.D.C. 2007)................................................................................10

*Sai v. Transp. Sec. Admin.*,
   54 F. Supp. 3d 5 (D.D.C. 2014) .......................................................................................4

*Salazar v. Buono*,
  559 U.S. 700 (2010) .......................................................................................................... 9

*Washington Post v. DHS*,
  459 F. Supp. 2d 61 (D.D.C. 2006) ...................................................................................... 3

*\*Wisc. Gas. Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) .................................................................................... 2, 3, 5

*Young v. Office of the U.S. Senate Sergeant at Arms*,
  217 F.R.D. 61 (D.D.C. 2003) .............................................................................................. 9

### **Statutes**

5 U.S.C. app. 2 § 10(b) ................................................................................................................ 7

5 U.S.C. § 552(a)(6)(E) ............................................................................................................... 3

**INTRODUCTION**

Plaintiff continues to seek a preliminary injunction in order to participate in a Presidential Commission that no longer exists -- a Commission that was dissolved before issuing a report or making any recommendations or findings. Plaintiff cannot show he is entitled to such extraordinary relief under these circumstances, and accordingly, defendants respectfully request that this Court reconsider and vacate its preliminary injunction order.

First, there is no longer a risk of irreparable harm. The Court issued a preliminary injunction to prevent irreparable injury to "Plaintiff's right to fully participate in the Commission." Mem. Op. at 22, ECF No. 33. Plaintiff effectively admits that there is no longer a prospect of injury to that right. Instead, he argues that voting issues generally are a matter of public concern, and the Commission records he seeks would inform that concern. But the connections between the former Commission's records and generalized voting concerns are far too attenuated to show that injury is both certain and great, as this Circuit requires.

Second, plaintiff can no longer show a likelihood of success on the merits given the change in circumstances. This Court's order was based on its determination that relief was necessary to secure plaintiff's rights under *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), to "fully participate" in the activities of the Commission. But the Commission no longer exists, and plaintiff has not shown how receiving documents that pre-date the dissolution would effectuate those no-longer-existing participation rights, particularly when the Commission issued no report or findings from which he could dissent or concur. At the very least, the scope of *Cummock* under these circumstances should be decided on a full record with full briefing, not on an emergency basis. Further, plaintiff has failed to put forward any authority in his opposition in support of a supposed

right to participate in *post*-Commission wind-down activities – and there is no such right. Nor has plaintiff shown that the balance of the equities and public interest warrant preliminary relief.

Finally, if this Court denies defendants' motion for reconsideration, this Court should stay its order pending consideration of an appeal. The immediate release of documents would moot defendants' right to appeal the disclosure order, and, tellingly, plaintiff never claims otherwise.

## ARGUMENT[1]

### I.      In Light of the Commission's Dissolution, Plaintiff Cannot Show Irreparable Harm.

This Court should reconsider its order because plaintiff can no longer show irreparable injury based on the current circumstances. "The irreparable injury requirement erects a very high bar for a movant." *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008). To warrant injunctive relief, the plaintiff's "injury must be both certain and great; it must be actual and not theoretical." *Wisc. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "If a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." *Human Touch DC, Inc. v. Merriweather*, 2015 WL 1256162, at *3 (D.D.C. May 18, 2015) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

The Court issued a preliminary injunction to prevent irreparable injury to "Plaintiff's right to fully participate in the Commission." Mem. Op. at 22; *see also id.* at 17 ("Plaintiff is entitled to substantive information so that he can contribute along the way in shaping the ultimate recommendations of the Commission . . ."). Because there is no longer a Commission, and because the Commission was terminated without issuing a report or making any recommendations,

---

[1] Plaintiff notes that motions for reconsideration are "strongly disfavored." Pl.'s Opp'n at 3. One of the situations where motions for reconsideration *are* appropriate, however, are where, as here, there has been a significant change in factual circumstances. *See* Recons. Mem. at 3-5.

2

including any preliminary findings, Second Herndon Decl. ¶ 5, ECF No. 39-2, there is no longer any prospect of future injury to plaintiff's right to fully participate in the Commission, the purported injury which was the basis for the preliminary injunction. Def.'s Mot. to Reconsider ("Recons. Mem."), at 6-7, ECF No. 39-1. Indeed, plaintiff never argues that there is, which should end the inquiry. *See* Mem. Opp'n Def.'s Mot. to Reconsider (" Pl.'s Opp'n"), at 7-9, ECF No. 46.

Instead, plaintiff changes tack altogether. Instead of claiming an injury to the right to participate in the former Commission, he asserts an injury to his ability to opine generally about voter issues – a right divorced from the *Cummock* right upon which he based his motion. Plaintiff now claims that "[t]he issues that Secretary Dunlap was appointed to the Commission to study – *inter alia*, election integrity, the existence or non-existence of voter fraud, and impediments to the right to vote – are indisputably 'matters of current national debate,'" – Pl.'s Opp'n at 7 (quoting *Wash. Post v. DHS.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006)), and such debate "would benefit from [plaintiff's] fully informed views," *id.* This novel position has several flaws. First, *Cummock* was about a Commissioner's right to "fully participate in the deliberations of the Commission," 180 F.2d at 284; it was not about facilitating a former Commission member's right to participate generally in public discussions about issues related to the former Commission's mission.

Second, even by his own terms, plaintiff's asserted injury, caused by his supposed lack of access to information, is not "certain and great," as this Circuit requires. *Wisc. Gas. Co.*, 758 F.2d at 674. In the FOIA context (which is, of course, a document disclosure statute designed to further *public* debate, as opposed to *Cummock*, where document disclosures are intended to further the member's participation rights),[2] courts have generally held that "it is difficult for a plaintiff to

---

[2] FOIA has a provision for expedited processing which recognizes the importance of timeliness and sets criteria for determining expedited processing. 5 U.S.C. § 552(a)(6)(E). FACA lacks such a provision.

3

demonstrate 'irreparable harm' that is in fact 'beyond remediation' because he is entitled to obtain all responsive and non-exempt documents at the conclusion of the litigation." *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014).  As discussed in defendants' opening motion, Recons. Mot. at 7-8, there is a limited exception if the "specific subject" of the information is of "vital public interest" for an upcoming legislative or executive action. *Id.* at 10.  That includes where the information was "vital to the current and ongoing debate about the legality of the Administration's warrantless surveillance program," *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006), or was necessary because of the "upcoming expiration" of a statutory provision, *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005). If, however, "it is not at all 'certain' that the records [plaintiff] seeks are crucial to the public's understanding of, or participation in, the ongoing . . . debate," there is no irreparable injury." *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 45 (D.D.C. 2014).

Plaintiff, at best, claims that the documents to which he is supposedly entitled bear on a general debate about voter registration processes; but this general pertinence does not establish irreparable injury here.  *See Sai*, 54 F. Supp.3d at 10; *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 45.  Moreover, the documents on which plaintiff now focuses are unrelated to the documents that were the subject of this Court's injunction.  The Court held that plaintiff is entitled to documents like a draft of the former Vice Chair's data request to the states, and "Secretary Gardner's proposals for location, content, and possible speakers at [the September 12] meeting," and documents related to "plans for the next [Commission] meeting" (of which there was, of course, none), as well as "similar documents."  Mem. Op. at 18.  Plaintiff never argues how these specific Commission-related documents are related to any ongoing debate about voter issues, much less how he would be injured by a delay in receiving them (if this Court eventually rules that he is entitled to them).

4

Plaintiff's remaining objections also fail. He states that "[h]e cannot confirm, clarify, or dispute the Commission statements on which others are relying," apparently referring to non-Commission statements about "findings." Pl.'s Opp'n at 8. But as stated in a sworn declaration by a Deputy Assistant to the President, "[t]he Commission did not create any preliminary findings." Second Herndon Decl. ¶ 5. Plaintiff's speculation about other documents, or his desire to engage in public debate with other former Commission members, cannot establish the required "certain" irreparable injury. *Wisc. Gas. Co.*, 758 F.2d at 674. Plaintiff next criticizes defendants for focusing on public debate "about the Commission itself." Pl.'s Opp'n at 8. But the case law requires as a necessary element that the specific information sought – in this case, information about the Commission's activities – relate to a matter of "vital public interest" that is the basis for supposed irreparable injury. *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 45, 47.

Finally, plaintiff's claims of irreparable injury to his supposed right to participate in *post*-Commission wind-down activities rests on even flimsier ground. *See* Pl.'s Opp'n at 9-10. To begin, plaintiff offers no claim of injury, much less irreparable injury, based on a violation of this supposed right. *Id.* Second, plaintiff never offers legal argument for his right to participate in these activities, *id.*, and there is no such right. *See* § II, *infra*. Instead, plaintiff claims – without support – that he has a right to provide "input into the process of collecting Commission records," Pl.'s Opp'n at 9, even though there is little to no role for the courts – much less private parties – to play in effectuating the Presidential Records Act, and certainly not under circumstances such as these, where the White House is collecting materials. *See Armstrong v. Exec. Office of the President*, 1. F3d 1274, 1284 (D.C. Cir. 1993). Plaintiff further claims that he has the right to "participate in "[t]he decision to dissolve" the Commission," Pl.'s Opp'n at 9, even though that decision rests with the President, and, in any event, has already been made.

**II.     In Light of the Dissolution of the Commission, Plaintiff Cannot Show a Likelihood of Success on the Merits.**

This Court partially granted plaintiff's motion for a preliminary injunction on the basis that the extraordinary remedy of preliminary injunctive relief was necessary to secure plaintiff's right under *Cummock v. Gore* to "inform his full participation in the Commission and its development of recommendations to the President." Mem. Op. at 16; *see also id.* at 15, 17; Recons. Mem. at 10-11. The Commission no longer exists; and so there is nothing to participate in, nor are there any recommendations to submit to the President; indeed, there are not even any preliminary findings from which to object. *See* Second Herndon Decl. ¶ 5. Under these circumstances, plaintiff does not show how he is likely to succeed on the merits of a mandamus claim under a *Cummock* theory.

First, with respect to documents that predate the termination of the Commission, plaintiff has no longer shown that he is clearly entitled to such documents, because access to those documents is not necessary to effectuate a participation right that no longer exists. *Cummock* holds that a committee member "has the right to fully participat[e] in [the committee's] deliberations," 180 F.3d at 284, so that the member may "contribute along the way in shaping the ultimate recommendations of the Commission," Mem. Op. at 17. *Cummock* makes clear that the right to participate includes the right to review documents used in the creation of a final report even after the committee no longer exists. *See* 180 F.3d at 292 ("the Commission could not deny her access to information that it reviewed and relied upon in formulating its recommendations").

But neither *Cummock* nor this Court's opinion speaks to the situation at issue here – the scope of a member's participation rights when a Commission has been dissolved *and* no report, recommendations, or findings were issued, and never will issue. *See* Recon. Mem. at 10-11. In *Cummock*, the plaintiff was prevented from fully participating in the report and recommendations issued by the committee because she was denied access to information used in that report.

6

Moreover, that participatory violation was ongoing, because there was a report to which she could not respond on an equal footing with other committee members absent remedial relief. Here, by contrast, the Commission was terminated without issuing a report or making recommendations or findings, and there is nothing for plaintiff to dissent from, or, more generally, to participate in. Plaintiff, therefore, has not shown that he is entitled to documents that could effectuate his participation rights in a Commission that no longer exists, particularly, as here, in a mandamus context where there is no on-point precedent addressing this situation. *See In re al-Nashiri*, 791 F.3d 71, 86 (D.C. Cir. 2015) ("Legal aporias are the antithesis of the 'clear and indisputable' right needed for mandamus relief."). In any event, this legal issue can and should be briefed and decided on a non-emergency basis.

Second, plaintiff has not even attempted to show that he has a legal interest in activities or materials that *post-date* the dissolution of the Commission. *See* Recons. Mem. at 9-10. He lacks such an interest: FACA section 10(b) only requires that documents "be available for public inspection . . . *until the advisory committee ceases to exist*," 5 U.S.C. app. 2 § 10(b) (emphasis added), and, as this Court has held, the Commission's duty to effectuate plaintiff's right to participate in Commission activities is only "applicable during the life of the Commission," Mem. Op. at 18. Plaintiff's right to information to facilitate his participation in Commission activities applies only to information that was created or obtained during the Commission's existence, not information that post-dates the Commission. Indeed, plaintiff never argues otherwise, stating only that he "is clearly and indisputably entitled to the documents generated through the Commission's dissolution on January 3, 2018." Pl.'s Opp'n at 6. He says nothing about his entitlement to documents that may have been created after that date, and his silence is telling.

Plaintiff's limited attempts to show continued likelihood of success are unavailing. He first states that a claim for documents is not mooted by the termination of a FACA advisory committee. *See* Pl.'s Opp'n at 5 (citing, e.g., *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 227 (D.C. Cir. 2017)). But these cases merely state that an otherwise-valid claim by *a third party* for FACA documents is not mooted by the dissolution of an advisory committee; they say nothing about the central issue in this case, whether a *Commissioner's* right to participate in an advisory committee's activities (with his concomitant right to documents in his role *as Commission member*) survives the termination of an advisory committee that never issued a report or made any recommendations or findings. *See* Recons. Mem. at 10-11. Second, plaintiff argues that there is no "loophole" exempting from compliance those advisory committees that do not publish a final report, and that FACA section 10(b)'s language "applies to all materials 'which were made available to or prepared for or by each advisory committee.'" Pl.'s Opp'n at 6 (quoting 5 U.S.C. app 2. § 10(b)). But plaintiff did not base his preliminary injunction motion on the right to documents under FACA section 10(b) that is common to all members of the public, and the Court did not enter an order based on that claim. *See* Mem. Op. at 20; Recons. Mem. at 11 n.3. Rather, the preliminary injunction was based on effectuating plaintiff's right as a Commission member to participate in the activities of a committee that now no longer exists.

**III.    In Light of the Dissolution of the Commission, the Balance of Equities and the Public Interest Do Not Warrant Preliminary Injunctive Relief.**

In its initial order, the Court concluded that the balance of the equities and the public interest justified relief because "[d]enial of the requested injunction would frustrate [plaintiff's] interest in contributing his unique perspective [to the Commission] as well as gaining the 'recognition and even prestige,' of full participation in such a commission." Mem. Op. at 23 (internal citations and quotation marks omitted). Those concerns no longer apply, *see* Recons.

8

Mem. at 11, and plaintiff never claims that they do, *see* Pl.'s Opp'n at 10. Instead, plaintiff discusses his interest in contributing his perspective "to the ongoing debate on election integrity," *id.*, but this, of course, has nothing to do with the public interest in his right to participate *in the Commission.* Plaintiff also says that the "'public interest in preserving the integrity of the courts' will also be damaged if Defendants use the dissolution of the Commission to avoid FACA obligations and this Court's Order." Pl.'s Opp'n at 10 (quoting *Young v. Office of the U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003)). But defendants' motion does neither; rather, it seeks to clarify defendants' FACA obligations and the continued propriety of preliminary injunctive relief in light of changed circumstances. *See Salazar v. Buono*, 559 U.S. 700, 714-15 (2010) (plurality op.) ("Because injunctive relief 'is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an 'instrument of wrong.'") (citations omitted). *Young*, which discussed monetary sanctions, is inapposite.

Nor does the public interest support the release of materials, either pre or post dissolution. With respect to plaintiff's supposed right to participate in activities *post*-dating the Commission (a right that, again, he lacks), he merely says that "Defendants would not be harmed by Secretary Dunlap's participation." Pl.'s Opp'n at 11. But defendants would be harmed if they were required to insert a non-federal employee into sensitive internal government discussions about the disposition of records in compliance with federal law, including discussions that involve sensitive and privileged materials. Recons. Mem. at 12; *see also Cheney v. U.S. Dist. Ct. for D.C.,* 406 F.3d 723, 727 (D.C. Cir. 2005) (en banc). With respect to documents that predate the Commission's dissolution, this Court's earlier decision was based on a right to participate in a Commission that no longer exists. The public interest in such an order is necessarily diminished.

Furthermore, the balance of harms – particularly if internal White House materials not shared with any former Commission members are released – now tilts in favor of the defendants.

### IV. Alternatively, This Court Should Stay the Injunction Pending Consideration of a Possible Appeal.

If this Court denies defendants' motion for reconsideration of the preliminary injunction, defendants respectfully request that the Court stay its order pending consideration of appeal. Recons. Mem. at 12-13; *see also People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) ("[C]ourts have routinely issued stays where the release of documents would moot a defendant's right to appeal."). Plaintiff never argues, nor can he, that a release of documents would not moot defendants' right to appeal, nor that defendants would not be irreparably harmed if the obligation to produce records was not stayed. Instead, he states that defendants have not shown that a stay pending appeal is warranted. *See* Pl.'s Opp'n at 13. But the key factor – irreparable harm to the defendants – cuts in favor of a stay. *See John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017) ("A party [seeking a stay] does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm).") (citation omitted). Moreover, as discussed above, defendants believe it is likely that they will succeed on the merits, and at the very least, given the uncertainties over the scope of *Cummock* in this unique context, "the case presents a serious legal question." *Id.* The final two factors – the public interest and the balance of equities, cut in favor of the defendants. *Id.*; *see also* Recons. Mem. at 13.

### CONCLUSION

For the reasons above, and those set out in defendants' opening brief, this Court should reconsider and vacate its December 22, 2017, order granting-in-part and denying in part plaintiff's motion for a preliminary injunction.

Dated:  January 24, 2018             Respectfully submitted,

                                     CHAD A. READLER
                                     Acting Assistant Attorney General

                                     ELIZABETH J. SHAPIRO
                                     Deputy Director

                                     */s/ Joseph E. Borson*
                                     CAROL FEDERIGHI
                                     Senior Trial Counsel
                                     KRISTINA A. WOLFE
                                     JOSEPH E. BORSON (Va. Bar. No. 85519)
                                     United States Department of Justice
                                     Civil Division, Federal Programs Branch
                                     P.O. Box 883
                                     Washington, D.C. 20044
                                     Tel: (202) 514-1944 / Fax: (202) 616-8460
                                     E-mail: Joseph.Borson@usdoj.gov