**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MATTHEW DUNLAP,

                Plaintiff,

      v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY *et al.*,

              Defendants.

Civil Docket No. 17-cv-2361 (CKK)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR LEAVE TO SERVE A SUBPOENA**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………………...1

BACKGROUND……………………………………………………………….…….…..2

STANDARD OF REVIEW………………………………………………….…………3

ARGUMENT……………………………………………………………………………...5

    No Good Cause Exists To Serve a "Document Preservation Subpoena"

    on Secretary Kobach………………………………………………………………5

CONCLUSION…………….………………………………………………………12

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                    <u>Page(s)</u>

*Attkisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015) ...................................................... 4, 10

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
  234 F.R.D. 4 (D.D.C. 2006) ............................................................... 3, 4

*District of Columbia v. Trump*,
  No. 17-cv-1596 (D. Md. June 12, 2017) ...................................................... 9

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) ............................................................. 4

*Hayes v. Shalala*,
  933 F. Supp. 21 (D.D.C. 1996) ............................................................... 8

*In re Heckmann Corp. Sec. Litig.*,
  No. 10-378-LPS-MPT, 2011 WL 10636718 (D. Del. Feb. 28, 2011) ................................... 5, 7

*\*In re Massey Energy Co. Sec. Litig.*,
  No. Civ. A. 5:10-0689, 2011 WL 4528509 (S.D.W. Va. Sept. 28, 2011) ....................... 5, 8, 12

*In re Smith Barney Transfer Agent Litig.*,
  No. 05 Civ. 7583 (WHP), 2012 WL 1438241 (S.D.N.Y. Apr. 25, 2012)............................... 5, 8

*In re Tyco Int'l, Ltd., Sec. Litig.*,
  No. 00MD1335, 2000 WL 33654141 (D.N.H. July 27, 2000) ................................... 8

*Johnson v. U.S. Bank Nat'l Ass'n*,
  No. 09-cv-482, 2009 WL 4682668 (S.D. Ohio Dec. 3, 2009) ................................... 9

*Nat'l Century Fin. Enters., Inc. Fin Investment Litig.*,
  347 F. Supp. 2d 538 (S.D. Ohio 2004)...................................................... 5, 8

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982)............................................................ 3, 4

*\*Sarantakis v. Gruttaduaria*,
  No. 02 C 1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ........................................... *passim*

*Sedona Corp. v. Ladenburg Thalmann*,
  No. 03 CIV. 3120 LTSTHK, 2005 WL 2647945 (S.D.N.Y. 2005)........................................... 7

*True the Vote, Inc. v. IRS*,
  No. CV 13-734 (RBW), 2014 WL 4347197 (D.D.C. Aug. 7, 2014) ................................... 4, 10

*Vivendi Univ. S.A. Sec. Litig.*,
  381 F. Supp. 2d 129 (S.D.N.Y. 2003) ..................................................................... 5

*Weeks v. Angelone*,
  528 U.S. 225 (2000) ............................................................................................... 9

**<u>Statutes</u>**

15 U.S.C. § 78u-4(b)(3) .............................................................................................. 5

44 U.S.C. § 2203(a) .................................................................................................. 11

**<u>Rules</u>**

Fed. R. Civ. P. 26(d)(1) ............................................................................................. 3

Fed. R. Civ. P. 34(a) ................................................................................................. 4

Fed. R. Civ. P. 45(a)(1)(A) ....................................................................................... 4

## **INTRODUCTION**

Plaintiff seeks leave for expedited discovery so that he can serve a "document preservation subpoena" on the former Vice Chair of the Presidential Advisory Commission on Election Integrity ("Commission"), Kansas Secretary of State Kris Kobach. Plaintiff must show, at a minimum, good cause for such an extraordinary measure. He has not done so, and therefore this motion should be denied.

"Document preservation subpoenas" are not specifically provided for by the Federal Rules of Civil Procedure. To the extent they are permitted at all, they may be issued to a non-party (as here) only if the plaintiff has affirmatively shown that such an order is *necessary* to preserve documents, *i.e.*, that materials in question are in "immediate and/or probable peril," *Sarantakis v. Gruttaduaria*, No. 02 C 1609, 2002 WL 1803750, at *3 (N.D. Ill. Aug. 5, 2002), as when a non-party has possession of relevant documents, lacks notice of the suit, and has routine document destruction policies and practices in place. Nothing of the sort is present here: the former Commission members (including plaintiff and Secretary Kobach) have been subject to a litigation hold requiring the preservation of documents relating to the Commission's work since before this lawsuit was filed, and the former Commission members were reminded of those obligations upon the Commission's dissolution. Furthermore, the former Commission members (again including plaintiff and Secretary Kobach) have been instructed to turn over any materials related to their service on the Commission that were not previously provided to the Commission in September 2017 to the White House Office of Records Management for preservation pursuant to the Presidential Records Act. Plaintiff fails to show why these existing instructions and obligations are inadequate to preserve the limited number of materials in question, as is his burden. Plaintiff's motion should therefore be denied.

## BACKGROUND

In August 2017, several months before this litigation was filed, the former Commission members received a litigation hold notice instructing them to retain and preserve all documents related to "(1) the motivation and reasons and for creating the Commission; (2) the Commission's establishment, including the appointment of its members; (3) the Commission's operation; (4) the Commission's collection, dissemination, use, and storage of voter information; and (5) the Commission's work, including any documents, emails, electronically-stored information, or tangible items created or received by the Commission's members in carrying out the Commission's mission regardless of whether those materials are disseminated to the Commission as a whole or considered to be subject to Section 10(b) of FACA."   Fourth Kossack Decl. ¶ 2, *Lawyers Committee for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-1354 (D.D.C. Sept. 29, 2017), ECF No. 33-2.  Furthermore, in late September 2017, after the Commission held its last meeting, Commission staff collected all such records from the former Commission members (with the limited exception of certain text messages), and such materials are currently being preserved.  *See* Droege Decl. ¶ 3, ECF No. 44-1.  Additionally, on July 19, 2017, the former Commission members were provided training on the Presidential Records Act, where they were also instructed to copy the Commission's former Designated Federal Officer, or the Commission's email account, on all communications.  *See* Fourth Kossack Decl. ¶ 1.  On January 3, 2018, the night the Commission was dissolved, the former Commission's former Designated Federal Officer sent a letter to all former Commissioners reminding them of their continuing litigation hold obligations.  Ex. 1 to Pl.'s Supp. Br., ECF No. 42-1.

On January 17, 2018, the Director of the White House Office of Records Management, Philip C. Droege, sent a letter by email to all former Commissioners – including Secretaries Dunlap

and Kobach, stating that, "[a]s you have been previously informed, documents, including electronic records such as electronic mail, text messages, or other electronic records, that you created, gathered, received, or used in connection with your activities as a member of the Commission constitute Commission records that must be preserved." *E.g.* Jan. 17, 2018, Email of Philip C. Droege ("Jan. 17 Droege Email") [attached hereto as Ex. A]; *see also* Droege Decl. ¶ 4, (announcing that he is sending such a letter to former Commissioners).  Director Droege further instructed the former Commissioners to send these materials to his office.  Jan. 17 Droege Email.

Plaintiff claims that he "has not received such a letter."  Mem. Supp. Mot. Leave to File Subpoena ("Pl.'s Subpoena Br.") at 3, ECF No. 48-7.  The relevant email (which described itself as a "letter," *see* Jan. 17 Droege Email), was sent to his "matthew.dunlap@maine.gov" email address, the mode of contact that he had requested, and the same email address used for the January 3 email that he attached in his previous filings (and therefore necessarily received).  *See* Ex. 1 to Pl.'s Supp. Br.

## STANDARD OF REVIEW

Where, as here, the parties have not answered the complaint or conducted a Rule 26(f) conference, they are not permitted to "seek discovery from *any* source" absent court order.  Fed. R. Civ. P. 26(d)(1) (emphasis added).  The court has "the authority to direct expedited discovery" only in "limited circumstances."  *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).  Courts in this Circuit have developed two standards for determining whether expedited discovery is appropriate.  The first, based on the Southern District of New York's decision in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), requires the "plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4)

some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Disability Rights Council*, 234 F.R.D. at *6 (quoting *Notaro*, 95 F.R.D. at 405). The second standard, termed a "reasonableness" or "good cause" inquiry, "considers the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." *Id.* Courts in this district more generally apply the good cause standard, at least if the motion for expedited discovery is related to a motion for a preliminary injunction. *See id.*; *see also Attkisson v. Holder*, 113 F. Supp. 3d 156, 161-62 (D.D.C. 2015).

Under either standard, however, irreparable harm to the plaintiff is key to the inquiry: "[w]hen the plaintiff will be irreparably harmed without expedited discovery, this factor weighs in favor of granting a motion for expedited discovery. . . . If there is no urgency in conducting discovery, however, this factor weighs against granting expedited discovery." *Attkisson*, 113 F.3d at 164 (citing *True the Vote, Inc. v. IRS*, No. CV 13-734 (RBW), 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014); *see also Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014)). Similarly, if a motion to dismiss is pending or expected to be pending, that also cuts against allowing expedited discovery. *Guttenberg*, 26 F. Supp. 3d at 99.

Further, the Federal Rules of Civil Procedure do not explicitly authorize a party to serve a so-called "document preservation subpoena." *See* Fed. R. Civ. P. 34(a) (party may request that another party "produce" certain documents within the party's possession); Fed. R. Civ. P. 45(a)(1)(A)(iii) (subpoena can only "command each person to whom it is directed to do the following at a specific time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in the person's possession, custody, or control; or permit the inspection of premises."). Only in the context of the Public Securities Litigation

4

Reform Act ("PSLRA"), which provides an explicit requirement for the provision of evidence that has been interpreted to allow for document preservation subpoenas to be issued for third parties, *see* 15 U.S.C. § 78u-4(b)(3), have courts articulated several principles for the limited circumstances when these subpoenas may be issued. "A preservation subpoena to a non-party may be issued 'when the non-party does not have actual notice of the litigation or when the non-party is a corporate entity which typically destroys electronic information by 'performing routine backup procedures.'" *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2011 WL 10636718, at *4 (D. Del. Feb. 28, 2011) (quoting *In re. Nat'l Century Fin. Enters., Inc. Fin Investment Litig.*, 347 F. Supp. 2d 538, 542 (S.D. Ohio 2004)). Notably, "[c]ourts have required something more than mere speculation that documents may be lost or destroyed" before permitting a document preservation subpoena. *In re Massey Energy Co. Sec. Litig.*, No. Civ. A. 5:10-0689, 2011 WL 4528509, at *5 (S.D.W. Va. Sept. 28, 2011); *see also Sarantakis* , 2002 WL 1803750, at *3 (evidence must be "in immediate and/or probable peril"); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012) ("A party alleging discovery is necessary to preserve evidence must . . . make a specific showing that the loss of evidence is imminent as opposed to merely speculative.") (quoting *In re Vivendi Univ. S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003)).

## ARGUMENT

### NO GOOD CAUSE EXISTS TO SERVE A "DOCUMENT PRESERVATION SUBPOENA" ON SECRETARY KOBACH.

Plaintiff's extraordinary motion for leave to file a "document preservation subpoena" – even assuming one is permitted outside the context of the PLSRA – should be denied because plaintiff has failed to meet his burden of showing good cause for such a remedy.

To begin, there is no good cause for issuing a "document preservation subpoena" against a non-party because all of the former Commission members – including Secretary Kobach and plaintiff himself – have been subject to litigation hold obligations in Commission-related litigation since well before the instant lawsuit was filed.  Notably, in August 2017, each former Commission member received a litigation hold notice instructing them to retain and preserve all documents related to "(1) the motivation and reasons and for creating the Commission; (2) the Commission's establishment, including the appointment of its members; (3) the Commission's operation; (4) the Commission's collection, dissemination, use, and storage of voter information; and (5) the Commission's work, including any documents, emails, electronically-stored information, or tangible items created or received by the Commission's members in carrying out the Commission's mission regardless of whether those materials are disseminated to the Commission as a whole or considered to be subject to Section 10(b) of FACA."  Fourth Kossack Decl. ¶ 2.  On January 3, 2018, the night the Commission was dissolved, the former Commission's former Designated Federal Officer sent a letter to all former Commission members reminding them of their continuing litigation hold obligations. Ex. 1 to Pl.'s Supp. Br., ECF No. 42-1.

Defendants have not merely instructed the former Commission members to preserve documents, they have taken active steps to collect those materials.  Commission staff already collected for preservation all materials created, gathered, or received by individual Commission members through the Commission's second and last meeting in September 2017 (with the limited exception of certain text messages, which are in the process of being collected).  *See* Droege Decl. ¶ 3.  On January 17, 2018, the Director of the White House Office of Records Management, Philip C. Droege, sent a letter by email to all former Commissioners – including Secretaries Dunlap and Kobach, stating that "[a]s you have been previously informed, documents, including electronic

records such as electronic mail, text messages, or other electronic records, that you created, gathered, received, or used in connection with your activities as a member of the Commission constitute Commission records that must be preserved." Jan. 17 Droege Email.; *see also* Droege Decl. ¶ 4 (announcing that he is sending such a letter to former Commissioners). Director Droege further instructed the former Commission members to send these materials to his office no later than February 28, 2018. Jan. 17 Droege Email.

These affirmative preservation steps negates any potential good cause that could justify a "document preservation subpoena." As discussed above, "a preservation subpoena to a non-party may be issued when the non-party does not have actual notice of the litigation or when the non-party is a corporate entity which typically destroys electronic information." *In re Heckmann*, 2011 WL 10636718, at *4. Here, of course, Secretary Kobach has actual notice of the litigation – indeed, in response to plaintiff's demand, he has already agreed not to share any Commission records not otherwise made public with the Department of Homeland Security or any other federal entity, other than the White House for preservation purposes. Defs.' Resp. to Supplemental Br., at 14, ECF No. 44. And not only is Secretary Kobach not a corporate entity that conducts routine data destruction, but he – and all the other former Commission members – have been subject to litigation preservation hold obligations, as well as preservation obligations under the Presidential Records Act since before this lawsuit commenced. Plaintiff has not shown why these preservation efforts are insufficient, as is his burden. *In re Heckmann*, 2011 WL 10646718, at *5 (plaintiff has obligation to show why preservation letters are inadequate); *Sedona Corp. v. Ladenburg Thalmann*, 2005 WL 2647945, at *4 (S.D.N.Y. 2005) (plaintiff had not met burden of showing that discovery was necessary to preserve evidence when preservation letters had been sent to third-parties). Moreover, the former Commission members have not only been instructed to preserve

documents relating to the Commission, but they have been affirmatively instructed to send those materials not previously forwarded to the Commission to the White House Office of Records Management for preservation pursuant to the Presidential Records Act.

Nor has plaintiff demonstrated that any records in the possession of Secretary Kobach are in "immediate and/or probable peril." *Sarantakis*, 2002 WL 1803750, at *3.  This allegation requires "something more than mere speculation that documents may be lost or destroyed," *In re Massey*, 2011 WL 4528509, at *5, but an affirmative showing on the part of plaintiffs, such as showing that a third party is currently being reorganized or that its documents are generally subject to overwriting in the normal course, *see In re Nat'l Century Fin.*, 347 F. Supp. 2d at 542; *In re Tyco Int'l, Ltd.*, *Sec. Litig.*, 2000 WL 33654141, at *3 (D.N.H. July 27, 2000); *In re Smith Barney Transfer Agent*, 2012 WL 1438241, at *3 ("A party alleging discovery is necessary to preserve evidence must . . . make a specific showing that the loss of evidence is imminent as opposed to merely speculative.").  Plaintiff has utterly failed to make such a showing.  Instead, plaintiff points only to a sanction imposed on Secretary Kobach in an unrelated case that does not appear to relate to preservation, Pl.'s Subpoena Br., at 7-8, and has nothing to do with the facts in this case.  Nor does plaintiff rebut – or engage with – the preservation steps that have already been taken, much less attempt to show how they are inadequate.

In essence, plaintiff seeks to impose a presumption that former Commission members will *not* follow the explicit directions they have been given.  Such a presumption has it exactly backwards in this context: parties should be presumed to comply with the instructions they have been given absent evidence to the contrary. *Cf., e.g.*, *Hayes v. Shalala*, 933 F. Supp. 21, 27 (D.D.C. 1996) ("The Court will not presume that the Secretary of Health and Human Services and her

employee will not follow the law"); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

Furthermore, plaintiff has not shown that "document preservation subpoenas" are proper outside the context of the PSLRA.  Plaintiff offers only two examples of out-of-circuit courts authorizing pre-Rule 26(f) discovery for the purposes of serving a document preservation subpoena outside the context of the PSLRA.  Pl.'s Subpoena Br. at 5.  Neither case explicitly considered whether such a subpoena would be proper in a non-PSLRA case.  In *District of Columbia v. Trump*, No. 17-cv-1596 (D. Md. June 12, 2017), the court issued a four sentence order, ECF No. 64 (Nov. 28, 2017), which was devoid of analysis, and the plaintiff in that case specifically referenced PSLRA case law.  *See* Mot. for Leave to Serve Document Preservation Subpoenas, at 2, No. 17-cv-1596, ECF No. 43 ("In analogous circumstances, where PSLRA . . . imposes by way of statute a stay of discovery in securities cases until after any motion to dismiss is resolved, courts in this Circuit permit preservation subpoenas to be served when the specific statutory standards of PSLRA are met.") (citation omitted).  As discussed *supra*, plaintiffs have not satisfied the PSLRA's standards.  Moreover, in that case – unlike here – the preservation subpoenas were apparently directed at third-party independent companies that lacked independent preservation obligations: the record does not reflect that they were subject to litigation notices, nor were they subject to the Presidential Records Act.  Here, by contrast, the former Commission members had and continue to have preservation obligations because of the litigation and the Presidential Records Act, and can be presumed to fulfil those duties absent evidence to the contrary.  The second cited case, *Johnson v. United States Bank Nat'l Association*, No. 09-cv-482, 2009 WL 4682668, at *1-2 (S.D. Ohio Dec. 3, 2009), permitted the plaintiff to issue a document preservation subpoena based on authority that concluded that "[g]ood cause is also found where,

in putative class actions, the information sought is relevant to the membership of the proposed class."  Such a rationale is irrelevant to this case.

Plaintiff's remaining arguments can be quickly dispatched.  First, plaintiff speculates that Secretary Kobach "maintains sole possession of highly relevant documents."  Pl.'s Subpoena Br. at 6.  But that is not the question for a document preservation subpoena.  Rather, the inquiry is whether those documents are in "imminent and/or probable peril."  *Sarantakis*, 2002 WL 1803750 at *3.  Even assuming Secretary Kobach does, in fact, have sole possession of a subset of Commission records (and, recall, he has been instructed to send those documents to the White House Office of Records Management and has already sent a number of records to the former Commission), there is no indication that those documents are in any peril, such that there would be good cause to permit a document preservation subpoena. *See True the Vote*, 2014 WL 4347197, at *8 ("[I]t is unclear why *expedited* discovery is now needed, especially given ongoing efforts to recover and preserve the emails at issue by [defendants].."); *Attkisson*, 113 F. Supp. 3d at 164 ("When the plaintiff will be irreparably harmed without expedited discovery, this factor weighs in favor of granting a motion for expedited discovery.").

Second, plaintiff asserts that "DOJ has made crystal clear that it no longer believes that DOJ, as counsel to Defendant Kobach, or this Court, has any power to control the documents in the possession of individual commissioners."  Pl.'s Subpoena Br. at 6.  This argument misconstrues defendants' position.  In response to this Court's order to brief "the ancillary issue of whether restraints can be placed on the unofficial dissemination by former Commission members of official Commission records," Minute Order (Jan. 10, 2018), defendants stated that they were "not aware of authority that would allow them to directly restrict former Commission members' ability to unofficially disseminate Commission records under these circumstances."  Defs.' Resp. to Supp.

Br. at 12, ECF No. 44. But controlling a former Commission member's ability to discuss or share copies of documents is not at all the same as whether the Executive Office of the President has the ability to require former Commission members to preserve copies of those documents.

Plaintiff further posits that "DOJ has disavowed any authority to legally obligate individual commissioners to preserve or return Commission records in their sole possession." Pl.'s Subpoena Br. at 7. This is not defendants' position. In that same brief submitted in response to this Court's order, defendants stated that "[t]he [Presidential Records Act] requires that the President 'preserve[] and maintain[] Presidential records, 44 U.S.C. § 2203(a), but does not address the President's control over the disposition of additional copies of presidential records that are held by third parties. In other words, it is a statute governing preservation, not, by its terms, control over additional copies of Presidential records not otherwise restricted." Defs.' Resp. to Supp. Br. at 13. Indeed, only two sentences later, defendants noted that there could be a remedy if "defendants . . . determined that the Presidential records needed to be recovered." *Id.* Plaintiff's attempt to twist a discussion about the unofficial dissemination of copies Commission records into a legal position on the preservation of Presidential records has no support in the record, and should be rejected. And plaintiff's position, of course, ignores the fact that the White House Office of Records Management has already instructed that records be sent to the White House for preservation in accordance with the Presidential Records Act to the extent that such records were not previously provided to the Commission (and are thus already being preserved).

Next, plaintiff states that "a preservation subpoena is the most readily available mechanism to create a legally enforceable obligation for [Secretary] Kobach to preserve (and, ultimately, to be in a position to return) any Commission records in his sole possession." Pl.'s Subpoena Br. at 8. Again, this misstates the inquiry. The test here is not whether the plaintiff desires to serve a

subpoena, but whether good cause exists to issue it when considering all the circumstances – and here, that requires that the plaintiff show "something more than mere speculation that documents may be lost or destroyed." *In re Massey Energy*, 2011 WL 4528509, at *5. In this case – where the White House Office of Records Management is actively collecting records not previously provided to the former Commission and where the individual former Commission members are subject to preservation holds – there is no basis for such a conclusion.

Finally, plaintiff suggests that "it is difficult to understand why DOJ is opposing the issuance of a subpoena that seeks only to protect the Government's interest in the preservation of Commission records." Pl.'s Subpoena Br. at 9. To the contrary, defendants have taken repeated steps to ensure that relevant documents are not only being preserved, but are being transferred to the White House Office of Records Management. Plaintiff, for his part, has submitted no evidence, or even non-speculative allegations, that such a "document preservation subpoena" is necessary, as is his burden. *See In re Massey Energy*, 2011 WL 4528509, at *5; *Sarantakis*, 2002 WL 1803750, at *1. Moreover, the government has an interest in ensuring that former federal employees – particularly those, like advisory committee members, who volunteer their time without compensation, are not subjected to the time and expense of receiving and responding to unnecessary subpoenas in their personal capacity, nor subjected to the contempt power of a court absent a showing of good cause. Plaintiff has not shown good cause, or indeed, any cause. For that reason, his motion should be denied.

## CONCLUSION

For the aforementioned reasons, plaintiff's motion to serve a document preservation subpoena should be denied.

Dated:  February 14, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINIA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-1944 / Fax: (202) 616-8460
E-mail: Joseph.Borson@usdoj.gov