# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW DUNLAP,<br><br>                Plaintiff,<br><br>- versus -<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; MICHAEL R. PENCE, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; KRIS W. KOBACH, IN HIS OFFICIAL CAPACITY AS VICE CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; ANDREW KOSSACK, IN HIS OFFICIAL CAPACITY AS DESIGNATED FEDERAL OFFICER FOR THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; GENERAL SERVICES ADMINISTRATION; TIMOTHY R. HORNE, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION; EXECUTIVE OFFICE OF THE PRESIDENT; OFFICE OF THE VICE PRESIDENT; OFFICE OF ADMINISTRATION; MARCIA L. KELLY, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ADMINISTRATION,<br><br>                Defendants. | Civil Action No. 17-cv-2361-CKK |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO SERVE A SUBPOENA**

## **TABLE OF CONTENTS**

    **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    THE "GOOD CAUSE" STANDARD APPLIES TO THIS MOTION .............................. 2

II.   GOOD CAUSE EXISTS TO SERVE A DOCUMENT PRESERVATION SUBPOENA ON MR. KOBACH ....................................................................................... 3

    A.    No Other Mechanism Is An Adequate Substitute .................................................... 4

        1.    Litigation Hold .............................................................................................. 4

        2.    The Government's Belated, Non-Binding Email Request for Documents ..................................................................................................... 5

        3.    Presidential Records Act .............................................................................. 6

    B.    The Request To Serve A Preservation Subpoena Is Reasonable, Necessary, And Narrowly Tailored ........................................................................... 7

    C.    Preservation Subpoenas Are Permitted Outside The PSLRA Context ................. 10

III.  CONCLUSION .................................................................................................................. 12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Attkisson v. Holder*,
 113 F. Supp. 3d 156 (D.D.C. 2015) ............................................................................2, 3

*Caston v. Hoaglin*,
 2009 U.S. Dist. LEXIS 49591 (S.D. Ohio June 12, 2009) ...............................................4

*\* Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
 234 F.R.D. 4 (D.D.C. 2006) ....................................................................................2, 3, 4, 9

*District of Columbia v. Trump*,
 No. 17-cv-1596 (D. Md. Oct. 27, 2017) ...................................................................10, 11

*Guttenberg v. Emery*,
 26 F. Supp. 3d 88 (D.D.C. 2014) ..............................................................................2, 3, 9

*Houlihan v. Andrews*,
 347 F. Supp. 2d 538 (S.D. Ohio 2004) ............................................................................10

*\* Johnson v. United States Bank Nat'l Ass'n*,
 2009 U.S. Dist. LEXIS 120111 (S.D. Ohio Dec. 3, 2009) ..............................................11

*Joyner v. Presidential Advisory Commission on Election Integrity*,
 No. 17-cv-22568-MGC (S.D. Fla. Jan. 5, 2018) ...............................................................8

*Koncelik v. Savient Pharms., Inc.*,
 2009 U.S. Dist. LEXIS 73607 (S.D.N.Y. Aug. 10, 2009) ................................................9

*Sarantakis v. Gruttadauria*,
 2002 U.S. Dist. LEXIS 14349 (N.D. Ill. Aug. 2, 2002) ....................................................4

*In re Smith Barney Transfer Agent Litig.*,
 2012 U.S. Dist. LEXIS 58070 (S.D.N.Y. Apr. 25, 2012) .................................................9

*True the Vote, Inc. v. IRS*,
 2014 U.S. Dist. LEXIS 108562 (D.D.C. Aug. 7, 2014) ...............................................2, 3

**Statutes**

Presidential Records Act ...........................................................................................6, 7, 10

Private Securities Litigation Reform Act ("PSLRA") ................................................10, 11

The government disbanded the Presidential Advisory Commission on Election Integrity (the "Commission") on January 3, 2018, shortly after this Court granted Secretary Dunlap's motion for a preliminary injunction that would have permitted his full participation in the Commission's activities. As a result, this case now primarily concerns Secretary Dunlap's right as an advisory committee member to receive copies of Commission documents that were created during the life of the Commission, and to participate on equal footing as other commissioners who have been conveying the Commission's purported findings. In this motion, Secretary Dunlap has made a modest request: that he be permitted to serve a narrowly-tailored document preservation subpoena on a single commissioner who likely possesses the only copy of many Commission records to which Secretary Dunlap will be entitled under the Federal Advisory Committee Act, should he prevail in this litigation, and who the government contends is not otherwise subject to a legal obligation to preserve these documents.

The government opposes this request even though (1) it is unable to provide assurances that the documents will be preserved absent a subpoena; and (2) the government faces no burden from the issuance of a subpoena. The recipient of the proposed subpoena, Mr. Kobach, will face virtually no burden (and will have an opportunity to move to quash the subpoena if he can identify any excessive burden). The contemplated subpoena does not seek an end-run around the discovery timeline by requiring the production of any documents; it merely requires Mr. Kobach to ***refrain from destroying*** documents which, if destroyed, would prevent future discovery and, more to the point, would prevent Secretary Dunlap from obtaining the relief that he seeks in this action. Given these facts, there is good cause for this Court to grant leave to serve this subpoena to maintain the status quo.

I.      THE "GOOD CAUSE" STANDARD APPLIES TO THIS MOTION

Secretary Dunlap's motion should be granted because he has demonstrated good cause for the service of a single document preservation subpoena. Courts in this district considering motions for expedited discovery apply a "good cause" or "reasonableness" standard. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (choosing reasonableness standard over more stringent test from the *Notaro* case); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) ("[T]he good-cause standard is more appropriate."); *True the Vote, Inc. v. IRS*, 2014 U.S. Dist. LEXIS 108562, at *24-25 (D.D.C. Aug. 7, 2014) (agreeing with courts that rejected the *Notaro* test in favor of a reasonableness standard). The government concedes that courts in this district typically apply the good cause standard. Opp. Br. 4 (Dkt. 49).[1] The good cause standard is appropriate because it is the most consistent with "the Court's broad discretion in handling discovery." *Guttenberg*, 26 F. Supp. 3d at 98.

Under the good cause standard, "courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). Five factors typically guide the good cause inquiry: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.*

Although the government emphasizes the lone factor that it believes favors its position, the first four factors all strongly favor Secretary Dunlap. First, the government's motion to reconsider the preliminary injunction ruling is pending. Second, the proposed subpoena is

---

[1] The government appropriately has discarded its original position that this motion should be treated as one for preliminary injunctive relief. *See* Dkt. 48-7 at 8-9.

appropriately limited and the government does not even argue that it is overbroad. Third, Secretary Dunlap seeks limited discovery (in the form of document preservation only) solely to preserve the status quo because the facts of this case suggest that absent a subpoena, key documents—the very object of this litigation—may not be preserved. Fourth, the subpoena places no burden on the government and requires Mr. Kobach only to refrain from deleting documents. Finally, Secretary Dunlap is not seeking to accelerate document production or reach the merits of the litigation through early discovery; he seeks only to preserve his remedy should he ultimately prevail.

The "irreparable harm" element cited by the government is a vestige of the *Notaro* test and does not appear in the good cause standard that courts in this district have overwhelmingly favored. *See True the Vote, Inc.*, 2014 U.S. Dist. LEXIS 108562, at *24 ("Under the *Notaro* test, courts should require the plaintiff to demonstrate [] irreparable injury . . . ."); *Guttenberg*, 26 F. Supp. 3d at 97 (same). Defendants' own cases make clear that "a motion for expedited discovery [is supported] when the plaintiff seeks . . . to preserve the status quo," as Secretary Dunlap seeks here. *Attkisson*, 113 F. Supp. 3d at 164; *Disability Rights*, 234 F.R.D. at 7 (rejecting motion for expedited discovery because plaintiff was seeking to "radically transform the status quo"). In any event, Secretary Dunlap will be irreparably harmed if documents to which he is entitled are destroyed, and given the record in this case, a preservation subpoena is necessary to ensure that such documents are preserved.

## II.    GOOD CAUSE EXISTS TO SERVE A DOCUMENT PRESERVATION SUBPOENA ON MR. KOBACH

Good cause exists for this Court to grant Secretary Dunlap leave to serve a single, narrowly tailored document preservation subpoena.

3

### A. No Other Mechanism Is An Adequate Substitute

The government contends that a preservation subpoena is unnecessary because the government has taken "affirmative preservation steps." Opp. Br. 6-8. But the "entire record to date and all of the surrounding circumstances" demonstrate that the steps taken by the government are not sufficient to guarantee preservation of key Commission documents. *Disability Rights*, 234 F.R.D. at 6. None of the steps taken by the government actually binds the commissioners to preserve or produce Commission records in their possession.

#### 1. Litigation Hold

The government states that each commissioner received litigation hold notices in connection with this litigation. Opp. Br. 6. But while the government characterizes these as creating an "obligation," there is nothing requiring the commissioners' compliance with the notices and no penalty if they do not comply. The government has taken the position that the commissioners, including Mr. Kobach, are no longer parties to this case and are beyond the reach of any court order. Dkt. 44 at 3-6 ("Secretary Kobach is not a party to this case."); *cf. Sarantakis v. Gruttadauria*, 2002 U.S. Dist. LEXIS 14349, at *9 (N.D. Ill. Aug. 2, 2002) (declining to allow service of preservation subpoenas because "[a]ll of those from whom the plaintiffs seek discovery are parties and therefore are obligated . . . to preserve evidence . . . ."). Any residual obligations from the litigation hold are merely aspirational, as the government has admitted. Dkt. 44 at 12 ("[D]efendants themselves cannot directly issue . . . binding commands to the former Commissioners . . . ."). Courts considering the appropriateness of a preservation subpoena distinguish between preservation letters and preservation subpoenas precisely because a mere request that non-parties "preserve certain documents lacks the force of a subpoena." *Caston v. Hoaglin*, 2009 U.S. Dist. LEXIS 49591, at *12 (S.D. Ohio June 12, 2009) (granting leave to serve preservation subpoenas on non-parties). Thus, a request to former commissioners

4

that they preserve, voluntarily and at their discretion, the Commission records sought by Secretary Dunlap is not an adequate substitute for a binding subpoena or court order.

        2.        <u>The Government's Belated, Non-Binding Email Request for Documents</u>

Next, the government argues that a document preservation subpoena is unnecessary because the Director of the White House Office of Records Management sent an email to the former commissioners requesting Commission documents in their possession. Opp. Br. 6-7. Again, there are no teeth behind this request. The government contends that *parties* should be presumed to comply with instructions. Opp. Br. 8-9. But the government has taken the position that Mr. Kobach is no longer a party in this case and the government does not control Mr. Kobach; indeed, that is the very reason Secretary Dunlap was obliged to make this motion.[2] The government's position makes no sense: it has told the Court that the former commissioners are no longer parties to this case, are not subject to the jurisdiction of the Court, and are not represented by government counsel yet suggests that they are required to fully comply with an informal request for "self-collection" made by a representative of the White House.

Additionally, the government has shown only that it has *requested* documents from the commissioners. The government has made no proffer that it actually has *received* any documents as a result of its request, much less that any response was complete. The current record shows only that the government last received documents from commissioners at the end of September 2017. Opp. Br. 6 (noting that the "Commission staff already collected for preservation all materials . . . through the Commission's second and last meeting in September

---

[2] The government counters that its past representations concerned the lack of control of Mr. Kobach's *dissemination* of documents, not his *preservation*. Opp. Br. 10-11. But the government has never represented that it has control over Mr. Kobach's preservation, has provided no basis for believing it controls Mr. Kobach's preservation of documents, and has identified no *legal obligation* it believes constrains Mr. Kobach's actions with respect to the records.

2017" with certain exceptions). The record provides no evidence that the government has collected any documents from Mr. Kobach or from any other commissioner in the past five months, as the Court's December 22 Order required.[3]

The off-hand method of requesting a voluntary submission of documents also contributes to Secretary Dunlap's concern about this method's effectiveness as a substitute for a properly-served subpoena. On February 15, after reading the government's opposition asserting that the letter was, in fact, emailed to him, Secretary Dunlap found the January 17 email in his email "spam" folder. It is possible that other commissioners similarly missed the single email that was sent. In the month since the email was sent, it appears that the White House has not done any diligence to ensure that the emails were received, read, and understood by the commissioners; there has been no follow-up phone call, email, letter, or other communication despite the ostensible deadline for providing documents being only a few days away. And there is no evidence that commissioners have complied with the request or that the government has a plan to ensure compliance.

### 3. Presidential Records Act

The Presidential Records Act ("PRA") is not a substitute for a subpoena. Opp. Br. 10-11. Just last month in this case, the government disclaimed control over documents in the sole possession of commissioners (the very documents that are the focus of the proposed subpoena). The government took the position that the PRA "does not address the President's control over the disposition of additional copies of presidential records that are held by third parties." Dkt. 44 at 12-13. The government also contends that records in Mr. Kobach's sole possession are not

---

[3] The government states that Mr. Kobach "has already sent a number of records to the former Commission," Opp. Br. 10, but it is unclear whether the government is referring to documents sent prior to September 2017 or afterwards. In any event, there has been no proffer or other evidence that Mr. Kobach has provided *all* relevant documents in his possession.

6

Presidential records. *Id.* ("Presidential records constitute [only] materials 'created or received' by the President or his staff."). If the government is correct that these copies of Commission documents that have never been sent to the White House are not Presidential Records, the PRA cannot be used as a basis for demanding their preservation or production.

The government also has taken the position that "there is no private right of action" under the PRA. Dkt. 44 at 13. Thus, enforcing the PRA against Mr. Kobach could only happen if the government were to initiate an action to recover records that the government contends are not subject to the PRA. This is truly implausible. In fact, the government has expressly declined to undertake such an action.[4] It is difficult to understand why the government has invoked the PRA at all.

    **B.    The Request To Serve A Preservation Subpoena Is Reasonable, Necessary, And Narrowly Tailored**

Several other points bear mentioning in response to the government's other objections to the proposed subpoena.

First, the government does not dispute that key Commission documents are in the sole possession of Mr. Kobach. Opp. Br. 10. In fact, there can be no doubt that Mr. Kobach possesses large numbers of Commission documents. Mr. Kobach used his personal email address for Commission business and, in the period of time covered by the *Vaughn*-type index, sent or received hundreds of communications about the Commission and its business that were not contemporaneously shared with the White House. *See* Dkt. 48-7 at 6. Indeed, this motion could have been avoided had the government (consistent with standard practice) assigned to each commissioner an official government email address and instructed the commissioners to use

---

[4] When counsel for Secretary Dunlap followed the government's earlier suggestion to petition the National Archivist to initiate an action for replevin to enforce the PRA, the National Archives declined. Dkt. 48-2.

those email addresses for all Commission business, or if the government had collected Commission documents from commissioners before disbanding the Commission.

Second, the fear that Mr. Kobach may neglect to preserve documents is well grounded. Opp. Br. 8, 12. In this case and in a related case, the government—for unknown reasons—has studiously fought so that Mr. Kobach would not need to make a simple sworn representation that he will preserve Commission documents. In a related case pending in the Southern District of Florida, plaintiffs moved for a temporary restraining order concerning the disposition of Commission documents and data. Emergency Motion, *Joyner v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-22568-MGC (S.D. Fla. Jan. 5, 2018) (Dkt. 69). The magistrate judge ordered Mr. Kobach to submit a declaration concerning the Commission documents and data. *Id.* (Dkt. 71). Rather than comply with this basic order, the Department of Justice unsuccessfully moved to amend the order to spare Mr. Kobach from making a declaration, *id.* (Dkt. 76), and then appealed the order to the district court, *id.* (Dkt. 81), which affirmed that Mr. Kobach or another member of the Commission with knowledge of the issues was required to submit a declaration, *id.* (Dkt. 83). Mr. Kobach still did not submit a sworn declaration, instead submitting a letter stating his personal opinion that a declaration "would not be appropriate." *Id.* (Dkt. 89-4) (attached hereto as Ex. 1).

In this case, the government offered an unsworn representation from Mr. Kobach, but again, that unsworn representation glaringly avoids any mention of preservation; Mr. Kobach agreed only to refrain from ***sharing*** nonpublic Commission documents, and only with the Department of Homeland Security or other ***federal*** agencies. Dkt. 44 at 14. The lengths to which the government is going to avoid a simple sworn declaration by Mr. Kobach confirming that he will preserve documents raise questions as to why Mr. Kobach is so unwilling to make

such representations and confirms the need for a preservation subpoena.[5] The government's ardent defense of Mr. Kobach's right to destroy documents subject to litigation (and federal record-keeping requirements) remains a mystery.

Third, the government incorrectly suggests that a preservation subpoena is appropriate only when a non-party lacks notice of the litigation or regularly destroys information. Opp. Br. 7. The doctrine is not so limited; granting the request is within the Court's discretion based on "the entire record to date and all of the surrounding circumstances." *Disability Rights*, 234 F.R.D. at 6; *see also Koncelik v. Savient Pharms., Inc.*, 2009 U.S. Dist. LEXIS 73607, at *6 (S.D.N.Y. Aug. 10, 2009) (permitting service of preservation subpoena on non-parties that "likely already know[] of the allegations contained in the complaint"). In fact, subpoenas are warranted because, unlike mere notices they "impose[] upon [non-parties] a ***duty*** to preserve certain relevant evidence in their possession." *In re Smith Barney Transfer Agent Litig.*, 2012 U.S. Dist. LEXIS 58070, at *11-12 (S.D.N.Y. Apr. 25, 2012) (emphasis added).

Fourth, most of the cases cited by the government that denied applications for expedited discovery concerned requests that were overbroad, required "extensive and expensive discovery," *Guttenberg*, 26 F. Supp. 3d at 99, or sought an end-run around the typical discovery schedule, *see Disability Rights*, 234 F.R.D. at 7. Secretary Dunlap seeks only preservation of documents; he selected only one recipient who is most likely to possess relevant documents; and he limited the scope of the subpoena to documents relevant to this litigation. It is telling that the government has identified no actual burden Mr. Kobach would face in connection with the

---

[5] The government tries to minimize the prior judicial sanction levied on Mr. Kobach by noting that it "does not appear to relate to preservation." Opp. Br. 8. But the conduct for which Mr. Kobach was sanctioned was far ***worse***: he was found to have affirmatively misled the court regarding documents in that case. Dkt. 48-4 at 3 (finding that Mr. Kobach's statement to the court "most charitably, can be construed as word-play meant to present a materially inaccurate picture of the documents").

proposed subpoena. If Mr. Kobach is not planning to destroy documents and if there are no automatic document destruction polices to stop, he need not do anything as a result of this subpoena. And should Mr. Kobach have "concerns about the burdens imposed by the [preservation subpoena, he] can make those arguments to th[e] Court." *Houlihan v. Andrews*, 347 F. Supp. 2d 538, 541 (S.D. Ohio 2004).

### C. Preservation Subpoenas Are Permitted Outside The PSLRA Context

The government acknowledges that district courts have authorized service of document preservation subpoenas outside the PSLRA context. Its attempt to distinguish these cases fails. Opp. Br. 9. In *District of Columbia v. Trump*, although the Court's order did not expressly mention the PSLRA, the Department of Justice's response to the motion made the argument that plaintiffs relied on caselaw from PSLRA cases. Response, *District of Columbia v. Trump*, No. 17-cv-1596 (D. Md. Oct. 27, 2017) (Dkt. 44) (attached hereto as Ex. 2). That Court thus was aware of the fact that many document preservation subpoenas are in the PSLRA context yet granted leave to serve the subpoenas in a non-PSLRA case.[6] Nor is *Trump* distinguishable on the basis that non-parties in that case had no independent preservation obligations. Opp. Br. 9. As discussed, *supra*, neither the litigation hold notice nor the Presidential Record Act places "independent preservation obligations" on Mr. Kobach, who is a non-party according to the government.

In *Trump*, the government took a more rational position in response to plaintiffs' motion to serve *23* document preservation subpoenas. There, the Department of Justice stated that it

> does not represent the private third-party entities which are the subject of Plaintiffs' proposed "preservation subpoenas." Accordingly, we leave it to those third parties to lodge any appropriate objections to such subpoenas if and when

---

[6] The government has not cited any decision that denied a motion for leave to serve a document preservation subpoena for the reason that document preservation subpoenas are improper in non-PSLRA cases.

10

>they are served, including whether Federal Rule of Civil Procedure 45 expressly permits using documentary subpoenas in this manner in a case such as this.

Just as in *Trump*, the government does not represent Mr. Kobach and will not be burdened or prejudiced by the service of the proposed subpoena. Nor has the government explained how Mr. Kobach or any other party will be burdened.

Rather than follow its own prior position in *Trump*, the government chooses to cherry pick one line from *Johnson v. United States Bank Nat'l Ass'n*, 2009 U.S. Dist. LEXIS 120111, at *4-5 (S.D. Ohio Dec. 3, 2009). Opp. Br. 9-10. In fact, the court in *Johnson* applied the good cause standard and noted that "[g]ood cause may be found where the plaintiff's need for expedited discovery outweighs the possible prejudice or hardship to . . . the third party." *Id.* at *4; *see also id.* ("Good cause is often found in cases where there is a concern that documents or other data will be lost or destroyed."). Just like here, the *Johnson* court held that the "subpoena is narrowly tailored to secure data and documents against destruction or spoliation. The subpoena imposes no immediate obligation to produce responsive documents or data. The only obligation it imposes upon the third-party is to describe responsive documents and protect them for subsequent production." *Id.* at *5. *Johnson* and *Trump* show that document preservation subpoenas may be served in non-PSLRA cases when appropriate.

The government does not address Secretary Dunlap's alternative proposal: if despite the authority permitting the service of a document preservation subpoena outside the PSLRA context, *supra*, the Court is uncertain of its authority to permit service of a document preservation subpoena, it should permit the issuance of a document production subpoena which Secretary Dunlap will make clear does not require immediate production of any documents. Document preservation is a prerequisite to production of documents, so such a subpoena would accomplish the necessary freezing of the status quo.

11

### III. CONCLUSION

While Secretary Dunlap hopes that the government is correct that Mr. Kobach will voluntarily comply with the non-binding requests to produce relevant documents, an enforceable obligation is necessary and appropriate. Secretary Dunlap has shown good cause for serving a narrowly tailored document preservation subpoena on Mr. Kobach, an individual who possesses relevant documents and who may not voluntarily preserve them.

Dated: February 21, 2018				Respectfully submitted,

						By:
						    /s/ Harry Sandick

						PATTERSON BELKNAP WEBB & TYLER LLP
						Daniel S. Ruzumna (D.C. Bar No. 450040)
						Harry Sandick (admitted *pro hac vice*)
						Daniel A. Friedman (admitted *pro hac vice*)
						1133 Avenue of the Americas
						New York, N.Y. 10036
						Tel:  (212) 336-2000
						Fax:  (212) 336-2222
						druzumna@pbwt.com
						hsandick@pbwt.com
						dfriedman@pbwt.com

						AMERICAN OVERSIGHT
						Austin R. Evers (D.C. Bar No. 1002367)
						Melanie Sloan (D.C. Bar No. 434584)
						John E. Bies (D.C. Bar No. 483730)
						Cerissa Cafasso (D.C. Bar No. 1011003)
						1030 15th Street NW, B255
						Washington, DC 20005
						Tel: (202) 869-5246
						austin.evers@americanoversight.org
						msloan@americanoversight.org
						john.bies@americanoversight.org
						cerissa.cafasso@americanoversight.org

						*Attorneys for Plaintiff Matthew Dunlap*