## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MATTHEW DUNLAP,<br><br>                    Plaintiff,<br><br>          v.<br><br>PRESIDENTIAL ADVISORY<br>COMMISSION ON ELECTION<br>INTEGRITY *et al.*,<br><br>                    Defendants. | Civil Docket No. 17-cv-2361 (CKK) |

## JOINT STATUS REPORT

In compliance with this Court's June 27, 2018, Order, ECF No. 51, the parties submit the following joint status report.

**Plaintiff's Position**

As outlined below, Secretary Dunlap has reason to believe that the government's production – required by the preliminary injunction – may not be complete and he is entitled to additional information in order to assess (1) whether the production was deficient, and (2) whether to move to compel compliance with the Court's orders. The government does not dispute that it has this information yet it refuses to provide it to Secretary Dunlap. The parties have conferred in good faith but are at an impasse. Accordingly, Secretary Dunlap respectfully requests that the Court convene a telephone conference so the parties can obtain guidance from the Court regarding the Court's preferred means for resolving the issue. *See* Court's Individual Practices (ECF 6) # 8.

Given this threshold dispute, it is premature to set a briefing schedule on Defendants' planned motion to dismiss.  Setting a briefing schedule for a motion to dismiss – which could require briefing the merits of the case prior to a determination about the defendants' compliance with the Court's orders – would be a waste of the parties' and the Court's resources.  Similarly, the Court should not set a schedule for briefing a motion to compel compliance with the Court's orders until the government provides information sufficient for Secretary Dunlap to assess any deficiencies in the government's production and to determine whether such a motion is necessary.  The government's attempt to force Secretary Dunlap to prepare and file such a motion by August 10 – while the government continues to withhold critical information that bears on the motion – is improper.

On July 18, 2018, the government produced to Secretary Dunlap approximately 1,800 documents and filed a notice with the Court claiming that it had complied with the Court's June 27, 2018 Order.  *See* Notice of Compliance, ECF No. 53.  Secretary Dunlap and his counsel are diligently reviewing the documents and are close to completing their review.  But Secretary Dunlap's review of the documents produced by the government, standing alone, is not enough for either him or the Court to determine whether the government's production complies with the Court's orders.  In order to make this determination – and in order to learn whether the government even collected and received the documents that would allow it to make a complete production – Secretary Dunlap has requested from the government two pieces of additional information.  The government has refused to provide the requested information, making the involvement of the Court unavoidable.[1]

---

[1] While the government complains that Secretary Dunlap should make a formal motion, the issues are simple and this status report provides the Court – which is familiar with the circumstances of this case – with the relevant information.  Should the Court prefer, Secretary

1.  **The Court should require the government to provide basic information concerning the universe of documents it collected.**

First, Secretary Dunlap requested that the government disclose which commissioners provided documents to the government the dates on which each commissioner provided documents, the quantity of documents provided by each commissioner on each date, and the date range covered by each document collection.  Secretary Dunlap first made this request on April 3, 2018.  The government refused to provide the requested information, responding only that the White House Office of Records Management "has confirmed that all former Commission members have either sent in any remaining Commission records which they had not previously provided to the White House, or have confirmed that they do not have any additional records beyond those they have already transmitted."  See 4/15/2018 letter to Sandick.[2]  Secretary Dunlap renewed his request after the July 18, 2018 document production but the government continues to refuse to provide this basic information.

Without this basic information about the universe of documents collected by the government, it is impossible for Secretary Dunlap to know whether he received all the documents to which he is entitled or if documents within the scope of the Court's orders were never collected by the government.  Put simply, the government did not produce documents it never collected; the government does not contend otherwise.

The government collected documents from commissioners in advance of its preparation of the *Vaughn* index in a related case in September 2017, but did not take any additional

---

Dunlap is willing to file a formal motion regarding the government's refusal to provide this information but requests that other briefing schedules not be set until this dispute is resolved.
[2] As Secretary Dunlap pointed out, and the Court acknowledged, neither the government nor Mr. Kobach have disclosed **when** Mr. Kobach or any of the other commissioners provided records or how many records they provided.  ECF No. 52 at 48 n.18.

affirmative steps to collect documents from commissioners until after the Commission terminated.  If a commissioner represented that he had no documents or very few documents to provide in response to the White House's January 2018 request – which covered a period of three months during which there are indications the Commission was still active (*see* ECF No. 33 at 9-10; *infra* Part 3) – it would cast serious doubt on the adequacy of the government's collection and production.  Secretary Dunlap is entitled to know **which** commissioners provided documents and **which** represented that he had none to provide.

This is a real concern; even with Secretary Dunlap's limited information, there is reason to believe that the government did not receive and review all of the relevant Commission documents.  For example, Secretary Dunlap's own production in response to the White House request totaled approximately 1,300 documents.   The entire volume of documents produced to him – purportedly containing all documents from all commissioners and staff within the scope of the Court's orders – was approximately 1,800 documents, a count which includes many duplicates.  Moreover, Secretary Dunlap received – and provided to the government – hundreds of comments from the public regarding the Commission.  The government has stated that it produced to Secretary Dunlap all such comments it received from other commissioners.  ECF 53 at 2.  The production contains public comments sent to Commissioners Gardner and Rhodes yet does not appear to contain public comments sent to Mr. Kobach.  It would be surprising if Mr. Kobach – who, like Secretary Dunlap, is also a Secretary of State and is also a known national political figure and the Vice-Chair of the Commission – received no public comments about the Commission.  Given this disparity, it is reasonable for Secretary Dunlap to have concerns regarding whether Mr. Kobach provided all responsive documents to the government.  This is exactly the "concrete evidence" the government has said Secretary Dunlap must provide.

The government has not contended that it lacks this information or that it would be burdensome to provide it to Secretary Dunlap.  The government should be required to provide basic information about the extent of its document collection efforts so Secretary Dunlap has a basis to evaluate whether the defendants complied with the Court's orders.

   2.   **The Court should require the government to provide basic information about the documents it withheld from Secretary Dunlap.**

Second, Secretary Dunlap requested a list of documents in the government's possession that were not provided to him and the reason why each document was withheld.  The government has refused to provide this information and has even refused to provide a privilege log.  The government notes that it has produced approximately 1,800 documents, but the number of documents produced only tells half the story; to evaluate whether the production fully complies with the Court's order, Secretary Dunlap also needs information sufficient to show whether relevant documents in the government's possession that have not been produced should have been under the terms of the Court's orders.

Producing a log of withheld documents is standard in civil litigation generally as well as in contexts comparable to FACA, such as FOIA.[3]  A party responding to document demands is required to produce a privilege log that allows the receiving party to assess claims of privilege. *See* Fed. R. Civ. P. 45(d)(2)(A) (requiring a party invoking a privilege to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim").  In FOIA

---

[3] This Court has recognized the parallels to FOIA cases by ordering the production of a *Vaughn* index in a related case.  *See* Order, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1354 (Aug. 30, 2017) (ECF 28) (ordering a *Vaughn* index "sufficiently broad and detailed to permit the Court to ascertain why a Commission member created or obtained a certain document").

cases, agencies are regularly required to submit a *Vaughn* index "to assist both courts and requesters in reviewing the validity of an agency's decision to withhold documents." *Campaign for Responsible Transplantation v. United States FDA*, 219 F. Supp. 2d 106, 111 (D.D.C. 2002).[4] The government's general description of categories of documents it withheld, ECF No. 53, does not allow Secretary Dunlap or the Court to meaningfully assess the adequacy of the production.

As with Secretary Dunlap's first request, the government has this information and has not indicated that is unable to provide this information.  Indeed, this information must be readily available because the government must have made individualized determinations about whether or not to produce each document to Secretary Dunlap.  Secretary Dunlap is willing to work with the government to minimize any burden that this request may create, but the government has not identified any particular burdens related to producing an account of the Commission records that have been withheld.

### 3. Secretary Dunlap has reason to believe that the government did not produce all Commission documents that exist and were required to be produced.

While conferring with counsel for the government in an attempt to obtain the requested information or narrow this dispute, the government stated that it will not provide this basic, standard information unless Secretary Dunlap identifies—to the government's satisfaction— deficiencies with the document production.  The government repeats that position today.  But the government is putting the cart before the horse:  without the requested information, which is exclusively in the government's control, Secretary Dunlap cannot fully assess whether any deficiencies exist, and if they do, whether they are the result of the government's

---

[4] "A Vaughn index is an affidavit that indexes and specifically describes withheld or redacted documents and explains why each withheld record is exempt from disclosure." *Id.* (internal citation omitted); *see also* 32 C.F.R. 701.39 (a Vaughn index's contents include the date of document, originator, subject/title of document, and justification for withholding).

misclassification of documents or a result of the failure of commissioners or staff to provide

Commission documents to the government.

Even operating from this information deficit, Secretary Dunlap's review to-date of the

produced documents raises serious concerns that the government's production is incomplete and

does not comply fully with the Court's orders.[5]  It is hard to see how Secretary Dunlap can be

expected to provide more specific examples of what he did ***not*** receive without additional

information.  For example:[6]

- Documents and communications concerning the Commission's purchases of state voter data were provided by the General Services Administration to Senator Claire McCaskill in response to the Senator's request.[7]  Yet documents related to these purchases do not appear to be included in the production.

- On October 19, 2017 the Minnesota Voters Alliance sent a fundraising email stating that it "was invited to speak at the December 2017 meeting of the" Commission.  Compl. (Dkt. 1) ¶ 68.  Yet the production does not appear to contain any communications about this invitation or any other communications about meetings planned after September 2017.[8]

- The production contains no text messages even though the Court's orders did not exclude text messages.

- The production appears to contain very few documents provided by Mr. Kobach, Mr. Adams, or Mr. von Spakovsky.  Communications to or from these individuals typically appear in the production only when a Commission staff member with an official government email address was copied, suggesting that the government collected emails from staff members but collected few emails directly from these individuals, who

---

[5] These examples are exemplary and non-exhaustive.  Secretary Dunlap can provide additional examples upon request.

[6] The government does not contend that any of these documents are, in fact, in the production.

[7] The documents are available at https://www.hsgac.senate.gov/imo/media/doc/2017-12-19%20Response%20from%20GSA%20re%20Kobach%20Commission.pdf

[8] The government apparently would have the Court believe that the Minnesota Voters Alliance simply made up its invitation to a Commission meeting.  Secretary Dunlap respectfully submits that it is far more likely that the invitation exists but was not provided to the government or that the government is improperly withholding the invitation.  Secretary Dunlap is entitled to information that would explain this discrepancy..

conducted Commission business using non-governmental email addresses.[9]  In general, there are surprisingly few commissioner-to-commissioner communications in the production.

Lacking any additional information, Secretary Dunlap does not know if (1) the government is improperly withholding documents; or (2) the government never collected these documents in the first place.  Secretary Dunlap is entitled to basic information – which the government possesses and can easily provide – before deciding whether to seek further relief from the Court.  Secretary Dunlap respectfully requests that the Court set a telephone conference to discuss resolution of his request for this information, which is necessary to assess compliance with the Court's orders.

**<u>Defendants' Position</u>**

The appropriate next step in this litigation is for this Court to set a briefing schedule on defendants' forthcoming motion to dismiss for lack of subject-matter and mandamus jurisdiction. Defendants propose that schedule should build in time for the parties to brief, and the Court to resolve, any motion that plaintiff may file should he conclude – upon completion of his review of the documents produced – that defendants' compliance with the Court's order was inadequate. Defendants would propose that any motion on the adequacy of defendants' production be filed during the first two weeks of August or a reasonable time thereafter, and a motion to dismiss to be filed pursuant to a schedule to be set upon the resolution of any motion related to the preliminary injunction.  Defendants oppose resolving a significant legal dispute in a telephonic status conference, as the Federal Rules require that requests for judicial relief be made by motion.  *See* Fed. R. Civ. P. 7(b)(1).

---

[9] While the government has stated before that commissioners were instructed to always copy a staff member, this instruction was not provided until July 2017 and there is no evidence it was diligently followed.

Plaintiff and his counsel admit that they "have not yet completed their review" of the produced documents. Plaintiff nonetheless demands judicial relief in this joint status report, stating repeatedly that this Court should require the government to produce additional information. Plaintiff's portion of this joint status report, which was provided to defendants' counsel late in the afternoon the day before this filing, is entirely inappropriate. Though couched as a request for a status conference, plaintiff's submission clearly invites the Court to issue relief.[10] *See supra* ("The Court should require the government to provide basic information . . . .").

Such an end run around the Rules deprives defendants of the time that the Rules provide to respond to a motion, which is especially important to ensure the necessary review from institutional clients, as here. Should plaintiff seek relief from this Court, he must file a motion, which he has not done. That in itself is grounds for rejecting his request. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *see also Taragan v. Eli Lilly & Co.*, 838 F.2d 1337, 1340 (D.C. Cir. 1988) (discussing purposes of Rule 7(b)(1)). Defendants raised these concerns during the meet-and-confer process, but plaintiffs insisted on using the joint status report to argue for court-ordered relief. Regardless of the form in which it is requested, however, the relief plaintiff seeks is inappropriate.

---

[10] Plaintiff attempts to characterize its request for a status conference as an effort to resolve a discovery dispute. *See supra* at 1 (citing "Court's Individual Practices (ECF 6) #8."). But that characterization is a straw man erected to disguise an improperly brought motion, as no discovery has ever been authorized or taken in this case. To the extent plaintiff seeks a court order permitting discovery, he needs to do so through a motion. Requesting relief through a motion is more than a mere procedural nicety. Motions create a formal record of the arguments in a way that telephonic status conferences do not.

1.      **Defendants have already provided the relevant information about the universe of documents they reviewed and produced.**

Plaintiff demands that "the government disclose which commissioners provided documents to the government, the dates on which each commissioner provided documents, the quantity of documents provided by each commissioner on each date, and the data range covered by each document collection."  But this request is unnecessary and inappropriate – defendants have repeatedly confirmed to plaintiff that the White House Office of Records Management ("WHORM") collected any remaining Commission-related materials from the former Commissioners *after* the Commission had been terminated.  Plaintiff does not need more information to determine whether the July 18 production included "relevant documents generated or received . . . [until] the Commission's termination."  Slip Op. at 22, ECF No. 52

As this Court is aware, on January 17, 2018, the Director of the White House Office of Records Management sent all of the former Commissioners a letter directing them to send all documents that they "created, gathered, received, or used in connection with [their] activities as a member of the Commission," which they had not previously provided to the Commission, to the White House.  *See* ECF No. 49-1.  In response to that letter, the White House Office of Records Management "confirmed that all former Commission members have either sent in any remaining Commission records which they had not previously provided to the White House, or have confirmed that they do not have any additional records beyond those they have already transmitted."  *See* Ex. A (Apr. 15 letter).  (Because former Commissioner Dunn died on October 16, 2017, the White House did not receive any records from him after that date.)

As plaintiff acknowledges, defendants' counsel informed plaintiff's counsel of this fact by letter dated April 15, 2018, and then again during the meet-and-confer process for this filing. *See* Ex. A.  Accordingly, all of the materials provided to the White House from the former

Commissioners were reviewed and, as appropriate, produced in accordance with this Court's June 27 order.  *See* Notice of Compliance, at 1, ECF No. 53.

Plaintiff has provided no basis why additional information is required.  Instead, he speculates that, "[i]f a commissioner represented that he had no documents or very few documents to provide in response to the White House's January 2018 request – which covered a period of three months . . . it would cast serious doubt on the adequacy of the government's collection and production."  But this simply is not so.  The fact that there may not be documents generated during a specific time period is not an indication that a search was inadequate – it is an indication that the documents plaintiff hypothesizes do not exist.  That is particularly so where, as here, the former Commissioners were explicitly directed to turn over any Commission-related documents they had not previously provided to the White House. Plaintiff's request suggests (together with his refusal to set a briefing schedule) that plaintiff is seeking simply to prolong this long-defunct matter through an unwarranted fishing expedition.[11]

At the very least, any suggestion that the government's collection of documents was inadequate must wait until plaintiff has completed his review of the produced documents, and

---

[11] Plaintiff's footnote 8 is revealing.  Plaintiff poses two alternate hypotheses.  One is that it is "far more likely" that any allegedly missing document "was not provided to the government." *Supra* at 7 n.8.  With this hypothesis plaintiff thus concedes that his true complaint is with the White House Office of Records Management's efforts to collect documents from the former Commissioners.  But to the extent plaintiff theorizes that it can pursue discovery against the former Commissioners or the White House on the extent of the White House's collection efforts under the Presidential Records Act ("PRA"), the Court has already expressly foreclosed that path, emphatically stating that, "[t]he Court has found that the President and the Vice President, but not plaintiff, are responsible for managing Commission documents pursuant to the PRA." Slip. Op. at 36, ECF No. 52.  Plaintiff's alternative hypothesis for any supposedly missing document is that "the government is improperly withholding" the allegedly missing document. *Supra* at 7 n.8.  Such speculation, however, is wholly unfounded, and consists of nothing more than accusing the government of lying in its description of what it did and did not produce in response to the Court's order.

can point to concrete evidence of why that might be so.  *See, e.g.*, *Ahuruonyu v. United States Dep't of Interior*, 239 F. Supp. 3d 136, 143 (D.D.C. 2017) ("Absent any evidence of bad faith, the Court must accept the defendant's representations that a reasonable search was conducted in good faith, that the [document] the plaintiff requested does not exist, and that all responsive documents were released to the plaintiff."); *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (holding that a FOIA requestor cannot rebut an agency's representations with "purely speculative claims about the existence and discoverability of other documents").

   **2.     Plaintiff's extraordinary suggestion that defendants' should list and describe *non-responsive* documents should be rejected.**

   Plaintiff also demands that defendants produce a list of "all documents in the government's possession that *were not* provided to him and the reason why each document was withheld."  (Emphasis added).  In essence, he demands a log of all documents defendants determined were <u>non-responsive</u> to this Court's order.  There is no basis for such an extraordinary request.

   Non-responsive documents need not be produced or logged.  In the Freedom of Information Act context, to which plaintiff analogizes, it is well established that "non-responsive records need never be produced at all," and that the agency is not required to "justify their withholding," such as in a *Vaughn* index.  *Competitive Enterprise Institute v. EPA*, 12 F. Supp. 3d 100, 114 (D.D.C. 2014); *see also Leopold v. National Security Agency*, 118 F. Supp. 3d 302, 311-12 (D.D.C. 2015) (stating that agency "is under no obligation to produce non-responsive documents if any exist," and not ordering agency to identify the nature of any non-responsive records).  Indeed, courts have noted that even putting nonresponsive documents on a *Vaughn* index is not proper practice.  *See, e.g.*, *Competitive Enterprise Institute*, 12 F. Supp. 3d at 114 ("it would have been preferable for EPA to leave these non-responsive documents *off* its final list

of fully withheld documents") (emphasis added).  Nor is an agency required to justify why it

withheld documents as non-responsive, particularly where it "defined the parameters it used to

uncover <u>responsive</u> material."  *Leopold v. Central Intelligence Agency*, 177 F. Supp. 3d 469, 489

(D.D.C. 2016).  Here, defendants did just that – *see* Notice of Compliance – and if plaintiff takes

issue with those parameters or the production, the appropriate mechanism is for him to identify

specific concerns and, if necessary, file a motion.  He is not entitled to conduct a fishing

expedition into the work product of counsel's document production on the bare hope that he

might find some deficiency.  *Cf. Judicial Watch v. U.S. Dep't of State*, No. CV 13-1363, 2016

WL 10770466, at *8 (D.D.C. Aug. 19, 2016) ("Judicial Watch is clearly speculating about

conversations that may or may not have occurred. The Court declines to authorize additional

discovery that amounts to a 'fishing expedition'").

     Plaintiff analogizes to civil discovery and the need to produce a privilege log.  *See supra*

at 5 (citing Fed. R. Civ. P. 45).  Privilege logs, however, apply to documents that are *responsive*

but are being withheld pursuant to privilege.  Documents that are *non-responsive* need not be

logged nor produced.  *See, e.g.*, *Favors v. Cuomo*, 285 F.R.D. 187, 213 n.26 (E.D.N.Y. 2012)

(directing that non-responsive documents "should be removed from the privilege log"); Fed. R.

Civ. P 45(e)(2)(A) (party must produce a privilege log if they are "withholding *subpoenaed* [i.e.,

responsive] information under a claim that it is privileged") (emphasis added).[12]

---

[12] The index that the government provided in *Lawyers' Committee* was not such an index of
privileged documents.  Rather, as this Court explained, it was for the purpose of "understanding
[] the Commission's position on the documents to date as to whether they're subject to 10(b)
disclosures and under what circumstances."  Transcript of Hearing at 14, *Lawyers' Committee
for Civil Rights Under Law v. PACEI, et al.*, No. 17-cv-1354 (CKK) (Aug. 30, 2017).

Indeed, absent a specific reason to conclude that defendants' production was inadequate, plaintiff's request is unjustifiable.  As Magistrate Judge Facciola of this District explained in a related context:

> Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end. Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed.

*Hubbard v. Potter,* 247 F.R.D. 27, 29 (D.D.C. 2008) (citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 313 (S.D.N.Y. 2003); *Peskoff v. Faber*, 244 F.R.D. 54 (D.D.C. 2007)); *see also Orillandeda v. French Culinary Institute*, No. 07-cv-3206 (RJH)(HBP), 2011 WL 4375365 (S.D.N.Y. 2011) (rejecting plaintiff's demand for supplemental production of information when "plaintiff has not identified any specific reasons for believing that defendant's production is deficient").

Defendants' counsel has already committed to engage with plaintiff's counsel if, after he completes review of the documents, he has a good faith belief that something is missing. Plaintiff, for the first time in this joint status report, attempts to identify supposed deficiencies in the government's production.  He notes that documents related to the Commission's purchases of state voter data do not appear to be included in the production.  But plaintiff never explains why he should expect to find such records when, by plaintiff's own description such documents do not involve any Commissioners, and do not fit within the parameters of the Court's order. Indeed, defendants' have already identified which categories of documents are and are not included in the production.  *See* Notice of Compliance at 2 (stating that defendants had produced "relevant documents that *any* of the former commissioners generated or received," but are not

producing records where no commissioner was involved with the exception of certain identified

categories of material).  To the extent that plaintiff disagrees with defendants about the scope of

the Court's order, plaintiff's objections should be properly briefed in a future motion, as

defendants have proposed.

In any event, most of plaintiff's concerns represent his supposition about what documents

"should" exist, with a focus on certain Commissioners. But with respect to those former

Commissioners, defendants have identified what categories of documents were and were not

produced, and why: to the extent documents were not produced, that is an indication that they do

not exist or were not responsive, not that they are being withheld. [13]  *See Ahuruonye*, 239 F.

Supp. 3d at 143.  Absent more concrete evidence, plaintiff's speculation – and any relief on that

speculative, premature basis – is unwarranted.  *See Hubbard*, 247 F.R.D. at 29.

\*\*

Accordingly, the appropriate step forward is for plaintiff to complete his review of the

produced documents, for him to confer with defendants' counsel if he identifies a good-faith

issue with the production, for the parties to brief the adequacy of defendants' compliance if

plaintiff views such a motion as necessary, and then for the parties to brief defendants' motion to

dismiss, if at that juncture issues remain in dispute.

Defendants propose that plaintiff be given two weeks to file any motion regarding

defendants' compliance with this Court's June 27 order, or until August 10, 2018.  If no motion

---

[13] Plaintiff complains, for example, that there are no documents planning a meeting in Minnesota, and supposes there must be because of a statement from the Minnesota Voters' Alliance. Plaintiff assumes such records are being withheld, but never considers the possibility that, consistent with the government's earlier representations, no such meeting was being planned, and therefore no records exist.  *Cf.* Third Kossack Decl. ¶ 14, ECF No. 30-3; Kossack Email, ECF No. 7-7.

is filed by that point, the government will file a status report advising the Court on whether the

parties have resolved the case, and if not, suggesting a timetable for the defendants' forthcoming

motion to dismiss on the merits.  If plaintiff does file a motion regarding the government's

compliance with the court's preliminary injunction order, defendants propose that a schedule for

motion to dismiss briefing be set upon the resolution of that motion.


Dated:  July 27, 2018

PATTERSON BELKNAP WEBB &
TYLER LLP

*/s/ Harry Sandick*
Daniel S. Ruzumna (D.C. Bar No. 450040)
Harry Sandick (admitted pro hac vice)
Daniel A. Friedman (admitted pro hac vice)
1133 Avenue of the Americas
New York, N.Y. 10036
Tel:  (212) 336-2000
Fax:  (212) 336-2222
druzumna@pbwt.com
hsandick@pbwt.com
dfriedman@pbwt.com

AMERICAN OVERSIGHT
Austin R. Evers (D.C. Bar No. 1002367)
Melanie Sloan (D.C. Bar No. 434584)
John E. Bies (D.C. Bar No. 483730)
Cerissa Cafasso (D.C. Bar No. 1011003)
1030 15th Street NW, B255
Washington, DC 20005
Tel: (202) 869-5246
austin.evers@americanoversight.org
msloan@americanoversight.org
john.bies@americanoversight.org
cerissa.cafasso@americanoversight.org

*Attorneys for Plaintiff Matthew Dunlap*

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Kristina A. Wolfe*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 353-4519/ Fax: (202) 616-8460
E-mail: Kristina.Wolfe@usdoj.gov

*Counsel for Defendants*