#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW DUNLAP,<br><br>     Plaintiff,<br><br>  v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY *et al.*,<br><br>     Defendants. | Civil Docket No. 17-cv-2361 (CKK) |

### NOTICE OF CATEGORIES OF WITHHELD DOCUMENTS

Pursuant to this Court's August 13, 2018 Order, ECF No. 55, defendants respectfully provide the following information "identifying each category of Commission documents they have *withheld* from their production to Plaintiff." [1]

**A. Defendants' Compliance with this Court's Orders.**

The Court's August 13, 2018 Order noted that, "[t]he universe of documents by which Defendants should asses their withholdings is the set of documents designated as Commission records and provided, or to be provided, to the Archives pursuant to the [Presidential Records Act ("PRA").]" Order, ECF No. 55, at 2. With respect to paper records, Commission records are in fact segregated and designated as Commission records, and were searched in compliance

---

[1] On August 24, 2018, defendants filed a protective notice of appeal of this Court' Order denying their motion for reconsideration, ECF No. 56. That notice, however, does not divest this Court of jurisdiction to clarify and/or enforce its preliminary injunction order. *See* Fed. R. Civ. P. 62(a). Defendants filed the notice of appeal to protect the government's rights in the event that this Court expands the scope of the Order beyond the construction the government has given it.

with the Court's prior orders. Electronic records, by contrast, are not segregated and identified as Commission records. Rather, as the Director of the White House Office of Records Management has explained, electronic documents related to the Commission that were generated by the White House Office, Office of the Vice President, or other Executive Office of the President components that fall under the PRA are preserved as Presidential or Vice Presidential records pursuant to the Presidential Records Act, and will be forwarded to the National Archives and Records Administration at the end of the Administration. *See* Droege Decl. ¶ 2, ECF No. 44-1. In searching those electronic records, counsel followed the process used to create the *Vaughn*-type index in *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1354 (CKK) (DDC). Technical staff "mirror[ed] [the former Commission's designated federal official's] official email account" and hard drive, which was reviewed by undersigned counsel. *See* Fourth Decl. Andrew J. Kossack, ¶ 8, *Lawyers' Committee*, ECF No. 33-2. This image included the former designated federal official's correspondence with other individuals within and beyond the Executive Office of the President. *See* Document Index, *Lawyers' Committee*, ECF No. 33-3. To be clear, this image was created for the purpose of complying with this Court's June 27 Order, and thus was current through the end of the Commission. Accordingly, although electronic records were reviewed manually where feasible, the review was supplemented by using search terms.[2]

In this Court's August 13 Order, it expressed concern that "Defendants are construing the Court's preliminary injunction too narrowly." Order, at 1, ECF No. 55. With respect,

---

[2] During a re-review of these materials, conducted for the purposes of preparing this filing, counsel identified a small number of documents of one former commissioner, Christian Adams, that were inadvertently overlooked. These documents have since been produced to plaintiff.

defendants interpreted the Order broadly, and in accordance with the language set out in the Court's opinions.  *See* June 27 Op., at 22, ECF No. 52; Dec. 22 Op., at 18, ECF No. 33; *see also* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction . . . must: state its terms specifically; and describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.").

As stated in the Notice of Compliance, defendants interpreted the Court's order as applying mainly to documents involving former commissioners, except where the Court stated otherwise.  This interpretation was buttressed by reviewing what defendants considered to be this Court's summary sentence at the end of the operative paragraph: "Plaintiffs *ultimately* should receive relevant documents that *any* of the former commissioners generated or received."  June 27 Op. at 22 (emphasis added).  Defendants viewed this sentence, particularly the use of the adverb "ultimately," as summarizing the general materials to which plaintiff was entitled, and which defendants have produced.  "Relevant," in turn, was interpreted broadly, in light of the three categories of documents set out in the Court's December 22 opinion, to encompass the substantive work of the Commission.  *See* Not. of Compliance, at 1 ("[D]efendants have produced substantive documents generated or received by any of the former commissioners about the Commission's operation, activities, or future plans.").  The focus on commissioner records also follows from the underlying purpose of *Cummock*, which was intended to prevent an advisory committee member from being treated "on less-than-equal footing with other committee members."  *See Cummock v. Gore*, 180 F.3d 282, 293 (Rogers, J., concurring); *id.* at 292 (*Cummock* provides advisory committee member a right to review "information that was made available to the Commission during the course of its deliberative process").  Such a

purpose encompasses material shared with other commissioners, but not necessarily with staff members.

The focus on materials involving commissioners was also supported by the exemplary categories set out in the Court's opinion. The first two categories involved plaintiff's ability to receive and comment on proposals put forward by former Commission members, Vice Chair Kobach's state voter request in the case of the first example, and Secretary Gardner's plans for the September 12 meeting in the case of the second. Dec. 22., Op. at 18 ("Plaintiff should have been informed about, received a draft of, and been given the opportunity to comment on the voter request that the *Vice Chair* planned to send"); ("Plaintiff should have been informed about . . . *Secretary Gardner's* proposals [for the September 12 meeting]"). These categories did not relate to all documents relating to the state voter request or the September 12 meeting, or to staff materials more generally, since the categories did not use such broad language, but focused on materials generated or provided by a fellow commissioner. *See* Dec. 22 Op. at 18.

The third category identified in the December 22 order involved materials related to an alleged third meeting, which never occurred. *See* Dec. 22 Op. at 18 ("Plaintiff should have been informed of and been given the opportunity to comment on plans for the next meeting whenever it is held . . ."). Because this category was not specifically focused on commissioner-related documents, undersigned counsel did not limit their review only to documents received or generated by the former commissioners. Rather, counsel searched staff materials more broadly for documents relating to plans for a future meeting, including specific searches for any records relating to the Minnesota Voter Alliance or any alleged third "Minnesota" meeting, a meeting that never existed. Undersigned counsel did not identify any records relating to plans for a third meeting, and are not withholding any such documents.

Defendants also interpreted this Court's Order to require them specifically to search for materials that could be construed as "findings" or "draft reports," regardless of whether they were generated or received by any of the former commissioners. *See, e.g.*, June 27 Op. at 20 ("Plaintiff is entitled to see for himself whether any documents that were generated can be considered 'findings' by Commission staff or between certain of the commissioners and staff that, in lieu of a formal set of 'findings' or formal final report, will be recorded for posterity in the Archives as the fruits of the Commission."); *id.* ("Plaintiff is entitled to see any such findings, report, or internal characterization that was not shared with him before it became the final work product of the Commission."); *id.* at 24 n.12 ("Defendants fail to obtain reconsideration due, in part, to the possibility that a draft report or informal findings are among the documents."). Defendants produced such staff documents where they were identified. *See* Not. of Compliance, at 2.

### B. Categories of Documents.

Defendants provide below the following additional information on categories of materials that have not been produced to plaintiff, which were largely identified in Defendants' Notice of Compliance and the index produced in *LCCR*.

#### 1. Commissioner-related materials.

As discussed in the Notice of Compliance, at 2, ECF No. 53, defendants have not produced certain materials generated or received by former Commissioners, because they are not the type of "relevant materials" identified in this Court's orders, *i.e.*, are not related to the substance of the Commission's work.

| Category | Approx. Date Range |
|---|---|
| Material related to pending litigation (e.g., draft declarations, forwarding pleadings, discussing legal strategy, potential responses to court orders, etc.) | July 3, 2017 – approx. Sept. 2017 |
| Litigation hold and follow-up communications | August 7, 2017 – August 30, 2017 |
| Communication/materials related to document collection for *Lawyers' Committee* *Vaughn*-type index | Sept. 13, 2017 – end of Sept. 2017 |
| Personal material/disclosure forms (EFT); discussion re: disclosure requirements | July 2017 – September 2017 |
| Travel/reimbursement forms | Approx July – October 2017 |
| Hard copies of unsolicited public comments | Undated, but roughly life of Commission. |
| Emails discussing potential Commission members (e.g., *Vaughn* Index entry Nos. 361, 167) | Approx. June 2017 – early July 2017 |

### 2. Staff materials.

As discussed in the notice of compliance, defendants have not produced emails or records internal to the White House that were never shared with any former Commissioner, with certain exceptions noted above. These categories are identified below. The category list was created using the list of categories provided in the *Vaughn*-type index in the *Lawyers' Committee* litigation, as supplemented to provide date ranges and to account for records throughout the life of the Commission. Undersigned counsel manually reviewed the relevant materials to identify the relevant categories of staff material and the corresponding date ranges.[3]

---

[3] Counsel used best efforts to categorize the documents and identify the appropriate date range. Despite the time and effort invested to ensure accuracy, however, counsel cannot warrant perfection.

| Category | Date Range | *LCCR* Index Reference (where applicable) |
|---|---|---|
| Internal discussions[4] about media requests, media interviews & media strategy, including responses to litigation events | June 28, 2017 to January 3, 2018 | 755, 776 |
| Internal discussions about data collection process, including July 7 follow-up letter to states | July 5 to July 18, 2017 | 756 |
| Internal discussions about data collection process, including data collection process (storage of documents, technical issues) | June 26 to September 26, 2017 | 756 |
| Internal discussions about data collection process, including July 10 email to states to hold off submitting materials pending *EPIC* TRO) | July 9 to 10, 2017 | 756 |
| Internal discussions re: data collection from third-parties | August 2 to 25, 2017 | 756 |
| Internal discussions re: data collection process (discussions about July 26 follow-up letter re: collection mechanics) | July 25 to 26, 2017 | 756 |
| Internal emails re: staff support person/detailees (including HR and logistics) | June 7 to October 19, 2017 | 757 |
| Internal discussions and documents (e.g., briefing memos) on appointment of potential members to Commission | June 1 to July 10, 2017 | 758 |
| Internal discussions about Charter | June 12 to June 23, 2018 | 761 |
| Internal memos/drafts to VP re: update on Commission activities/litigation | June 23 to December 1, 2018 | 761 |

---

[4] "Internal discussions," here and throughout this index, includes discussion between and among Commission staff and Executive Office of the President staff, including the Office of the Vice President. *See* Document Index, Entry No. 754, *Lawyers' Committee*, ECF No. 33-3.

| | | |
|---|---|---|
| Internal discussions re: timing, potential location, and logistics of first meeting | June 1 to June 27, 2017 | 762 |
| Internal discussions about EOP internal meeting scheduling | June 24, 2017 | 762 |
| Internal discussions/vetting of Sept. 12 meeting panelists | August 3 to 31, 2017 | 762, 759 |
| Internal discussion about Sept. 12 meeting logistics (Federal Register notice publication) | August 9 to 17, 2017 | 762 |
| Internal discussion about Sept. 12 meeting logistics (press release announcing meeting) | August 17 to 23, 2017 | 762 |
| Internal discussion about Sept. 12 meeting logistics (draft agenda) | Aug. 17 to Sept. 5, 2017 | 762 |
| Internal discussions about Sept. 12 meeting logistics (email to members about logistics, misc. logistics discussions) | Aug. 24 to Sept. 12, 2017 | 762 |
| Internal discussions about Sept. 12 meeting logistics (member-submitted materials) | Sept. 7, 2017 | 762 |
| Internal discussions about Sept. 12 meeting logistics (summary, meeting minutes) | Sept. 23 to Dec. 7, 2017 | 762 |
| Internal discussions about letterhead design | June 23 to July 13, 2017 | 763 |
| Internal discussions about June 28 letter (mechanics, logistics, address research) | June 20 to 27, 2017 | 764, 786 |
| Internal discussions about OVP meetings/discussion with third-parties about potential assistance to Commission | Aug. 11 to 22, 2017 | 765 |
| Internal discussions about disclosure forms and Hatch Act/compliance requirements | June 27 to Oct. 11, 2017 | 766 |
| Internal email discussions with or about DFO on | June 29 to July 13, 2017 | 767 |

| | | |
|---|---|---|
| President's Commission on Drug Addiction about managing a committee | | |
| Internal discussions re: response to June 28 letter and Borunda resignation | July 3, 2017 | 768 |
| Internal discussions about responding to inquiries from public officials | July 6 to Oct. 18, 2017 | 769 |
| Internal discussions of July 19 meeting (agenda, VP remark, logistics) | July 10 to 19, 2017 | 770 |
| Internal discussions re: vendors/consultants | Aug. 17 to Sept. 18, 2017 | 771 |
| Internal discussions about posting public comments | July 12 to Aug. 17, 2017 | 772 |
| Internal discussions about website and email technical issues, including posting material to GSA's FACA Database | July 4, 2017 to Jan. 2, 2018 | 773 |
| Internal research on previous presidential commissions on election issues | June 26, 2017 | 774 |
| Commission staff research or suggesting ideas relating to substance of Commission's work | July 12 to Oct. 4, 2017 | 774, 775 |
| Internal emails re: records management | July 24, 2018 to Dec. 8, 2017 | 777 |
| Litigation documents and emails (e.g., service copies, final versions, drafts, comments on drafts, discussions of legal strategy, updates, etc.). Both internal to EOP and with DOJ | July 3, 2017 to Jan. 3, 2018 | 778 |
| Internal emails/documents re: budget | June 22, 2017 – Oct. 25, 2017 | 779 |
| Internal emails re: scheduling time to discuss next steps for Commission | July 8 to Sept. 13, 2017 | 781 |
| Internal discussion of current status of Commission and potential plans | Sept. 13 to Dec. 1, 2017 | 781 |

| Internal discussion about responding to records requests (FACA, FOIA) | June 30 to Sept. 19, 2017 | 782 |
|---|---|---|
| Internal email discussions re: interagency agreement between OVP and GSA | July 7 to 12, 2017 | 783 |
| Internal emails discussing draft DOD talking points re: SAFE site and suggesting changes | July 7, 2017 | 784 |
| Legal research conducted by staff/internal legal consultation | June 1 to July 18, 2017 | 785 |
| Internal discussion about draft bylaws | July 15 to 18, 2017 | 787 |
| Commission member appointment documents (e.g., commissions) | Misc. | 788 |
| Copies of bylaws and Roberts Rules of Order | July 17, 2017 | 789 |
| Miscellaneous staff research, (substance of Commission's charge, FACA, previous election commissions) | Undated | 774 |
| Unsolicited requests from third-parties to Commission/WH staff to join the Commission | August 16 to 27, 2017 | 793 |
| Emails and proposals with/from third-party data analysis entities and Commission/EOP staff | July 11 to Sept. 14, 2017 | 794 |
| Emails/documents from third-parties to Commission staff about potential collaboration | June 2 to Nov. 3, 2017 | 795 |
| Third-party provided list of suggested witnesses to EOP/Commission staff | July 31 to Sept. 15, 2017 | 796 |
| FOIA/FACA requests for documents | July 5 to Nov. 7, 2017 | 797 |
| Email with potential panelist about participation in Sept. 12 meeting | Aug. 17 to 22, 2017 | 798 |
| Email from third-party about data sources | June 5 to Sept. 20, 2017 | 799 |

| Materials forwarded to Commission staff by NASS | July 24, 2017 | 800 |
|---|---|---|
| Constituent letters to Vice President and received by Commission staff | July 20, 2017 | 801 |
| GSA/OVP reimbursement funding documents regarding PACEI operations (Form FMS-7600A, Department of Treasury Financial Management Service) | July 10 to 13, 2017 | 802 |
| Unsolicited emails/communications from individuals alleging voter fraud | Aug. 4 to Sept. 19, 2017 | 803 |
| Discussions with third-party vendor about procuring and operating livestream of Sept. 12 meeting | Sept. 5 to 12, 2017 | 804 |
| Emails between Commission staff and states about mechanics of data sources | July 10 to Oct. 4, 2017 | 805 |
| Press inquiries to Commission/EOP staff; copies/links press articles | Life of Commission | 806 |
| Discussions with host staff at Sept. 12 meeting event site about logistics | Aug. 18 to Sept. 11, 2017 | 807 |
| Emails with public/staff attendees at Sept. 12 meeting | Aug. 28 to Sept 12, 2017 | |
| EFT/reimbursement/logistics emails with Sept. 12 meeting panelists | Aug. 30 to Sept. 23, 2017 | |
| Email re: meal and follow-up study between Commission staff and Sept. 12 panelist | Sept. 19, 2017 to Jan. 3, 2018 | |
| Internal discussions about future status of Commission | Sept. 26, 2017 to Jan 3, 2018 | |
| Email re: follow-up between Commission staff and Sept. 12 panelist about election studies | Sept. 27 to Oct. 10, 2017 | |
| Letter from Indiana re: critical infrastructure designation for election systems | November 2, 2017 | |

| | | |
|---|---|---|
| Internal cover email forwarding produced copy of draft reports to EOP staff | November 18, 2017 | |
| Internal discussion re: disposal of voter data | Dec. 13 to 18, 2017 | |

Commission staff also had a number of communications with staff at other federal agencies (not counting DOJ staff for litigation purposes, as identified above).[5] These discussions are listed at entries 681 to 753 in the *Vaughn* index provided in the *Lawyers' Committee* litigation. They are further supplemented as follows:

| **Category** | **Date Range** |
|---|---|
| Discussion with Election Assistance Commission about pending FOIA request | Sept. 20, 2017 |
| Discussions with GSA about Federal Register notices, public comments, reporting requirements, and expenses | Sept. 22 to Dec. 29, 2017 |
| Inquiry from DHS re: current status of Commission; internal talking points | November 5, 2017 |
| Discussion with GSA re: pending FOIA request | Nov. 11 to Dec. 18, 2017 |

---

[5] While not subject to disclosure pursuant to this Court's order, for the reasons discussed, GSA, the Department of Homeland Security ("DHS"), and the Social Security Administration ("SSA") have publicly released records related to the former Commission pursuant to Freedom of Information Act ("FOIA") requests submitted by the Brennan Center for Justice, the Electronic Privacy Information Center, and plaintiff. *See* Investigating Trump's "Voter Fraud" Commission: Federal Records Requests, Brennan Center for Justice, https://www.brennancenter.org/foia-requests-presidential-advisory-commission-election-integrity (last visited Aug. 21, 2018); Presidential Executive Order 13,799, DHS Publications Library, https://www.dhs.gov/publication/executive-order-13799 (last visited Aug. 21, 2018); *see also* Not. of Compliance at 2 (defendants are generally not re-releasing materials that are publicly available).

Dated:  August 27, 2018                    Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Director

                                           */s/ Joseph E. Borson*
                                           CAROL FEDERIGHI
                                           Senior Trial Counsel
                                           KRISTINA A. WOLFE
                                           JOSEPH E. BORSON (Va. Bar No. 85519)
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           P.O. Box 883
                                           Washington, D.C. 20044
                                           Tel: (202) 514-1944 / Fax: (202) 616-8460
                                           E-mail: Joseph.Borson@usdoj.gov