**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MATTHEW DUNLAP,

                Plaintiff,

    v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY *et al.*,

                Defendants.

Civil Docket No. 17-cv-2361 (CKK)

## JOINT STATUS REPORT

In compliance with this Court's October 1, 2018 Minute Order, the parties submit the following joint status report.

Pursuant to this Court's September 17, 2018, Minute Order, the parties have engaged in a meet-and-confer process in an effort to "further narrow the categories of documents in dispute." As reported in their September 28, 2018, Joint Status Report (ECF No. 60), the parties exchanged written proposals.   After evaluating the respective proposals, the parties had a telephone meet and confer call on October 5, 2018.  The parties, however, did not reach an agreement.

**Plaintiff's Position**:

    **A.**     **The parties' meet and confer efforts were unsuccessful because the government refused to narrow the dispute**

The Court ordered the parties to meet and confer in an attempt to "further narrow the categories of documents in dispute."  Sept. 17, 2018 Minute Order.  The Court reasoned that

further discussion could allow the parties "to identify any other categories of documents that Defendants are willing to provide or that Plaintiff agrees to no longer seek." *Id.*

Secretary Dunlap diligently complied with the Court's Minute Order and identified six additional categories of documents – beyond the 33 previously identified in his Response to the government's Notice of Withheld Documents (ECF 59) – that he would agree not to pursue at this time because, based on the government's descriptions, he was reasonably confident that they contained primarily administrative materials.  Secretary Dunlap also invited the government to provide further information beyond the short category descriptions that could allow Secretary Dunlap to become comfortable that additional categories did not contain substantive Commission materials.  The government declined to provide any additional information in response to this request.  Secretary Dunlap also requested that the government describe the approximate volume of materials in each category to facilitate his evaluation of whether he might forgo additional categories.  Again, the government declined.  Finally, Secretary Dunlap offered for his counsel to view documents in disputed categories, pursuant to an Attorneys' Eyes Only protective order under a procedure similar to the "quick peak" envisioned by Federal Rule of Evidence 502(d), in an effort to narrow the disputes and to withdraw requests to documents that were administrative or otherwise not important to the Commission's work.  The government declined this overture as well.

In light of the government's absolute position regarding records shared between the Chair of the Commission and Commission staff housed in the Office of the Vice President ("OVP"), it became clear early in the parties' discussions that they would not be able to completely resolve this matter, but Secretary Dunlap was eager to narrow the disputed categories that would require judicial attention.  He was willing to forgo materials in six additional categories in exchange for

the government's willingness to provide materials in certain other categories that it had

heretofore withheld.  But despite initially identifying twelve categories of documents it said it

would be willing to provide to Secretary Dunlap, the government refuses to provide *any*

additional documents[1] unless Secretary Dunlap agrees to accept those limited categories of

records as a complete resolution of the case and relinquish his right to any materials in *each and*

*every other category*.  This "take it or leave it" ultimatum hampered Secretary Dunlap's ability to

reach an agreement to "narrow" the issues in dispute consistent with the Court's instructions.

Because of the government's firm position that it is not willing to provide *any* additional

categories of documents unless Secretary Dunlap drops his entire case – including documents to

which he is clearly entitled under FACA and this Court's orders – the parties have reached an

impasse.  For the reasons identified in his September 10, 2018 Response (ECF No. 59), Secretary

Dunlap respectfully requests the Court to order to government to produce additional materials as

described therein without further delay.

**B.      The government's "separation of powers" briefing is improper and meritless**

In stating their position in this Joint Status Report, the government also includes

additional legal argument regarding "separation of powers" concerns purportedly raised by the

application of the Court's orders to substantive records relating to the Commission's work

received or generated by the Chair of the Commission by virtue of the fact that Defendants'

chose to house the Commission staff in the OVP and elected to name Vice President Pence as a

---

[1] With the sole exception of the single specific document identified by the Court in the
September 17, 2018 Minute Order.

Commissioner, and indeed, the Chair of the Commission.[2] This belated argument is improper,

incorrect, and relies on misplaced and incomplete citations to case law.

To begin with, by raising alleged "separation of powers" concerns, the government has

improperly converted this Joint Status Report into an unauthorized reply brief on Secretary

Dunlap's right to additional documents under the Court's orders.  These purported considerations

already have been raised and rejected.  *See* Opp. to Mot. for Preliminary Inj. (ECF No. 30) at 38-

39 ("Applying FACA to this Commission established by the President raises identical separation

of powers concerns to those repeatedly identified by the courts, including the Supreme Court.

Accordingly, any argument to proceed against the Commission under the mandamus statute

needs to be balanced against the serious constitutional implications of regulating the manner in

which the President receives advice; that balance counsels against application of FACA via

mandamus here.").  Indeed, in its opposition to the preliminary injunction motion, the

---

[2] Secretary Dunlap is troubled by the government's failure to make clear its position regarding the records involving Vice President and Chair Pence and Commission staff housed in OVP at an earlier stage in this litigation.  In its July 18, 2018 Notice of Compliance, the government stated that it had "produced substantive documents generated or received by *any* of the former Commissioners about the Commission's operation, activities, or future plans."  ECF No. 53, at 1 (emphasis added); *see also* Notice of Categories of Withheld Documents (ECF No. 58), at 3 (August 27, 2018).  These statements are at best misleading, because the government's production did not include substantive communications regarding the work of the Commission with Vice President Pence, who was undoubtedly a "former Commissioner" at the time of these representations.  Yet neither the Notice of Compliance nor the Notice of Categories of Withheld Documents clearly explained that the government did not view the Chair of the Commission to be a Commissioner for purposes of these blanket representations or that the government's production had intentionally excluded communications between Commission staff and the Commission's Chair.  Indeed, only Secretary Dunlap's careful review and sustained pressure for additional information regarding withheld records, eventually provided over the government's objection, *see* ECF No. 54, prevented these representations from misleading Secretary Dunlap regarding the scope of the produced records.  Had the government been more forthright regarding their decision to exclude such communications, the parties and the Court could have avoided unnecessary delay regarding the Court's consideration of the merits of this position.

government repeatedly cited the only cases the government relies on in this Joint Status Report.

*See id.* at 38-39 (citing *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 385 (2004)).[3]

Moreover, it is apparent that any "separation of powers" concerns are illusory.  The disclosure obligations Secretary Dunlap seeks to vindicate are consequences that flow directly from the government's own voluntary decisions.  As reflected in the Commission's charter, the government voluntarily chose to convene the Commission as a FACA advisory committee.[4] Knowing the Commission was a federal advisory committee, the President voluntarily chose to appoint the Vice President as a member of the Commission and to name him the Chair of the Commission.[5]  The government voluntarily chose to name an employee in the Office of the Vice

---

[3] Even if it had not been briefed previously, the government's alleged "separation of powers" concerns could have been raised on numerous prior occasions.  *See* Opp. to Mot. for Prelim. Inj. (ECF No. 30); Mot. for Recons. (ECF No. 39); Reply In Supp. of Mot. for Recons. (ECF No. 47).  The government may not now, in the guise of interpreting the Court's orders, raise new legal arguments in its effort to avoid compliance with the Court's order.  *See Loumiet v. United States*, 65 F. Supp. 3d 19, 25 (D.D.C. 2014) (declining to consider argument that party "clearly could have made" in prior briefing); *Bryant v. Rumsfeld*, 2007 U.S. Dist. LEXIS 97521, *19 (D.D.C. Mar. 12, 2007) (declining to consider underdeveloped arguments "even where those arguments raise constitutional issues").

[4] *See* Charter, Presidential Advisory Commission on Election Integrity, § 2 ("Charter") (providing that the Commission "is established in accordance with . . . the provisions of the Federal Advisory Committee Act ('FACA'), as amended (5 U.S.C. App.)") (available at https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/commission-charter.pdf); *see also* Bylaws and Operating Procedures, Presidential Advisory Commission on Election Integrity, § II ("Bylaws") (available at https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/pacei-bylaws_final.PDF).

[5] *See* Executive Order 13799, § 2 ("Establishment of a Presidential Advisory Commission on Election Integrity") (May 11, 2017) ("The Vice President shall chair the Commission, which shall be composed of not more than 15 *additional* members.") (emphasis added); Charter, § 11(a) (same); Bylaws, § III(B) (same); *see also* https://www.whitehouse.gov/articles/presidential-advisory-commission-election-integrity/ (including Vice President Pence in the list of Commission Members).

President as its Designated Federal Officer, and it voluntarily decided to house the Commission's

staff inside the OVP.[6]  With these voluntary choices, the government effectively waived any

"separation of powers" concerns regarding the application of FACA to these Commission

records.  The government was not required to commingle the OVP and the Commission, and the

government should not be able to evade its obligations under FACA by doing so.  Secretary

Dunlap is not seeking sensitive Vice Presidential or White House communications unrelated to

the work of the Commission.  He only seeks – and is entitled to – communications and materials

"made available to or prepared for or by" the Commission in the course of its substantive work.

5 U.S.C. app. 2 § 10(b).  No "separation of powers" concerns are implicated.

Defendants' reliance on case law is misplaced and incomplete.  The government is wrong

that *Cummock v. Gore* did not entitle Commissioner Cummock to OVP and EOP records.  In

*Cummock*, the Chair of the advisory committee was, like here, the Vice President, and the

Designated Federal Officer was a cabinet official, the Secretary of Transportation.  *See*

*Cummock*, 180 F.3d at 286.  Nothing in *Cummock* or in this Court's orders in *Cummock* on

remand suggests that "separation of powers" concerns superseded or in any way limited

Commissioner Cummock's FACA rights.  Indeed, on remand the government was ordered to

produce "*all* documents that were retained by Commission staff" and "*all* documents that were

retained by the Commissioners."  *See* Order, *Cummock v. Gore*, No. 97-cv-982 (D.D.C. Nov. 16,

1999) (submitted in this action at ECF No. 31-1).

*Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004) also is

inapposite.  In *Cheney*, the issue was a whether a committee whose members were all federal

government employees – but where non-governmental employees participated informally – was

---

[6] *See* Bylaws, § III(C) & (D).

subject to FACA at all under the "de facto membership" doctrine.  *See id.* at 374.  The Supreme

Court instructed the D.C. Circuit to be cognizant of potential "separation of powers" concerns

associated with applying FACA to a committee not designed to comply with FACA.  *See id.* at

382.  On remand, the D.C. Circuit, sitting en banc, made clear that these "separation of powers"

concerns did not exist where, like here, the President voluntarily appoints a FACA committee.

> If the President considers appointing a committee to advise him on a policy matter, as he did in this case, he has two options.  He may choose to form a FACA committee by appointing some of its members from outside the federal government. Or he may choose to form a committee composed only of federal employees and thus exempt from FACA.  By following the latter course, the President can easily create an advisory body whose internal communications will remain confidential, so long as the right to vote or veto is not later extended to a non-federal employee.

*In re Cheney*, 406 F.3d 723, 728 (D.C. Cir. 2005) (en banc).  Because the President here chose

the first option, the Commission is subject to FACA under controlling circuit precedent.[7]  The

government cannot use vague "separation of powers" concerns to justify withholding

Commission materials from a duly-appointed commissioner on a FACA advisory committee.

Nor should it be permitted to relitigate the question of whether or how FACA applies in the

absence of a final commission report.  It has been over nine months since the Court first ordered

the government to produce Commission materials to Secretary Dunlap and the Court should

reject the government's attempt to further delay compliance with the Court's orders.

---

[7] The distinction drawn by the D.C. Circuit between these two approaches also highlights that applying FACA to the Commission records at issue here, as Secretary Dunlap proposes, creates no impediment to confidential executive branch deliberations in the future, as the Executive Branch can simply opt not to include senior White House officials on advisory committees and can choose not to house the operations of future advisory committees in the White House.  The government also may contest the applicability of FACA to an advisory committee involving senior White House officials from the outset and advance any constitutional objections in any ensuing litigation attempting to apply FACA's requirements.  What the government cannot do is voluntarily form an advisory committee expressly under FACA's statutory authority and then not comply with its requirements.

If the Court is inclined to consider the "separation of powers" arguments presented in this report, Secretary Dunlap requests additional time to provide a more thorough response, as we did not receive the government's argument until just a few hours before it was to be filed.

**Defendants' Position:**

Pursuant to the Court's September 17, 2018, Minute Order, defendants entered into discussions with plaintiff's counsel with the goal of resolving this matter without further Court intervention.  To that end, defendants made a good faith offer to disclose to plaintiff a number of additional categories of documents that, in the government's view, are neither subject to the Court's order nor fall within the scope of either Section 10(b) of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 § 10(b), or *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), in exchange for resolution of this matter.   Defendants are not willing to disclose additional documents without a final resolution of this matter.[8]

The parties, however, were not able to bridge their differences.  In particular, plaintiff intends to maintain his claim to internal and confidential documents sent to the Vice President by his staff, materials written by the Vice President's personal staff for his use, and other internal records of the Office of the Vice President ("OVP") and the Executive Office of the President ("EOP").  *See*, *e.g.*, Pl.'s Response, ECF No. 59, at 3-4.  But these materials were neither addressed nor reasonably covered by this Court's December 22 and June 27 Orders.  Nor does their disclosure align with the underlying purpose of *Cummock*, which was intended to prevent an advisory committee member from being treated "on less-than-equal footing with other committee members."  *See Cummock*, 180 F.3d at 293 (Rogers, J., concurring).  *Cummock* did

---

[8] The Court identified one specific document in its September 17, 2018, Minute Order – a cover email to the beginnings of a draft staff report.  The draft staff report was produced to plaintiff on July 18, 2018.  The referenced cover email is attached to this report as Exhibit 1.

not hold that this right entitles a former member of a Presidential advisory committee to

documents sent to the Vice President by his staff or other internal OVP and EOP records (and to

which *no* other commission member was given access).

Furthermore, in a FACA case that postdates the D.C. Circuit's decision in *Cummock*, the

Supreme Court instructed the D.C. Circuit to exercise "judicial deference and restraint" when

reviewing a request for Presidential and Vice Presidential records in the context of mandamus.

*Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 385 (2004) (case

involving FACA claim against the Vice President); *see also* Defs.' Opp'n Pl.'s Mot Prelim Inj. at

37-39, ECF No. 30.  Indeed, the Supreme Court made clear that "separation-of-powers

considerations should inform a [court's] evaluation of a mandamus petition involving the

President or the Vice President." *Cheney*, 542 U.S. at 382.  The Supreme Court explained that

"special considerations control when the Executive Branch's interests in maintaining the

autonomy of its office and safeguarding the confidentiality of its communications are

implicated." *Id.* at 385.  The Supreme Court also emphasized that the reviewing court must

specifically ask whether its actions would "constitute[] an unwarranted impairment of another

branch in the performance of its constitutional duties." *Id.* at 390.  On remand, the *en banc* D.C.

Circuit adhered to the Supreme Court's admonitions and held that, "[i]n light of the severe

separation-of-powers problems" engendered by the lawsuit, "we must construe [FACA]

narrowly, and the question of whether there is a duty "narrowly." *In re Cheney*, 406 F.3d 723,

728-29 (D.C. Cir. 2005) (en banc).  Application of these principles makes clear that there is no

"duty" to disclose documents sent to the Vice President by his staff or other internal OVP and

EOP records where the records have not been shared outside the White House, with the

exception of litigation counsel, and the former Presidential advisory committee was terminated

without issuing a recommendatory report.[9]


Dated:  October 9, 2018

PATTERSON BELKNAP WEBB &
TYLER LLP

*/s/ Harry Sandick*
Daniel S. Ruzumna (D.C. Bar No. 450040)
Harry Sandick (admitted pro hac vice)
Daniel A. Friedman (admitted pro hac vice)
1133 Avenue of the Americas
New York, N.Y. 10036
Tel:  (212) 336-2000
Fax:  (212) 336-2222
druzumna@pbwt.com
hsandick@pbwt.com
dfriedman@pbwt.com

AMERICAN OVERSIGHT
Austin R. Evers (D.C. Bar No. 1002367)
Melanie Sloan (D.C. Bar No. 434584)
John E. Bies (D.C. Bar No. 483730)
Cerissa Cafasso (D.C. Bar No. 1011003)
1030 15th Street NW, B255
Washington, DC 20005
Tel: (202) 869-5246
austin.evers@americanoversight.org
msloan@americanoversight.org
john.bies@americanoversight.org
cerissa.cafasso@americanoversight.org

*Attorneys for Plaintiff Matthew Dunlap*

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Kristina A. Wolfe*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-4519/ Fax: (202) 616-8460
E-mail: Kristina.Wolfe@usdoj.gov

*Counsel for Defendants*

---

[9] Nor does any other disclosure regime, such as the Freedom of Information Act, the Presidential Records Act, or any interpretation of FACA to which defendants are aware, require such a disclosure, particularly under the circumstances where a former Presidential Commission was terminated without issuing a report.