# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MATTHEW DUNLAP,

*Plaintiff*,

v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY, *et al.*,

*Defendants.*

Civil Action No. 17-2361 (CKK)

## ORDER
(January 28, 2019)

The Court has received the parties' [63] Joint Status Report, which responds to the Court's

[62] Order that they specify which categories of documents remain at issue that:

- Plaintiff has conditionally offered to forego, *see* Joint Status Report, ECF No. 61, at 2 (six categories);

- Defendants have conditionally offered to provide, *see id.* at 3, 8 (twelve categories);

- Defendants have claimed should not be released because they are "internal and confidential documents sent to the Vice President by his staff, materials written by the Vice President's personal staff for his use, and other internal records of the Office of the Vice President ('OVP') and the Executive Office of the President ('EOP')," *id.* at 8 (unspecified number of categories) [collectively, "OVP and EOP internal records"]; and

- Defendants claim, if applicable, do not fall within one of the aforementioned groupings but over which they nevertheless continue to assert that withholding is proper.

The Court shall identify the path forward for each of these groupings of documents.

*First*, Plaintiff shall cease pursuing the categories of documents that he conditionally

offered to forego. He evidently does not need these categories because, "based on the

government's descriptions, he was reasonably confident that they contain[ ] primarily

administrative materials." *Id.* at 2. The fact that he made this offer in order to extract some or all

of the remaining categories of documents is inapposite. *See id.* at 2-3.

1

*Second*, subject to a few exceptions, Defendants shall provide Plaintiff with the categories of documents that they conditionally offered to provide.  Of the twelve categories referenced above, Defendants already provided one on October 9, 2018.  Joint Status Report, ECF No. 63, at 2 n.2.  They need not provide two more—"hard copies of unsolicited public comments" and "Letter from Indiana re: critical infrastructure designation for election systems"—because Plaintiff offered to forego them, either conditionally or after assessing that they were beyond the scope of the Federal Advisory Committee Act.  *Id.* at 2 n.3 (citing Joint Status Report, ECF No. 59, at 22).  Evidently Defendants are sufficiently comfortable with producing the remaining nine categories, else they would not have made any offer to divulge them.  The fact that Defendants made their offer in an attempt to secure resolution of this case is inapposite.  These categories look sufficiently substantive that they would have "inform[ed] [Plaintiff's] full participation in the Commission," had he been given access to them, and therefore fall within the scope of the Court's preliminary injunction.  *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 107 (D.D.C. 2017) (*Dunlap I*).  Defendants shall produce the remaining nine categories by **FEBRUARY 27, 2019**.

*Third*, Defendants have described their reasons and authorities for withholding the remaining OVP and EOP internal records.  Joint Status Report, ECF No. 61, at 8-10.  In light of the unique context, however, the Court lacks a sufficient record on which to decide whether Plaintiff is entitled to those documents, notwithstanding Defendants' objections.  Accordingly, the Court shall refrain from a decision until it receives further briefing, presumably in the context of a motion to dismiss.  The parties shall file a proposed schedule for this further briefing by **FEBRUARY 27, 2019**.  The parties shall bear in mind that four of the categories in this third grouping are categories that Plaintiff has been ordered, above, to forego; accordingly, their briefing

need not cover those categories.  *See* Joint Status Report, ECF No. 63, at 1, 3 (three different categories of internal discussions regarding Sept. 12 meeting logistics, and one category regarding "staff support person/detailees").

*Fourth*, the parties have listed six remaining categories of documents that supposedly do not fall within the foregoing three groupings.  The Court understands that Defendants do not assert a privilege over these documents; rather, they simply believe that Plaintiff is not entitled to them. *Cf.*  Pl.'s Resp. to Defs.' Notice of Categories of Withheld Docs., ECF No. 59, at 12-13 (reiterating Plaintiff's concession that he "does not seek properly privileged or classified documents"). The Court shall deal with those categories *à la carte*.  In each instance that the Court requires Defendants to provide further information to the Court, that further information shall be provided by **FEBRUARY 27, 2019**.

- "Emails discussing potential Commission members (e.g., *Vaughn* Index entry Nos. 361, 167)": As Plaintiff observes, discussions concerning additional Commission members took place while he was a commissioner, involved one or more other commissioners, and did not solicit his input.  *Id.* at 4.  Previously, the Court refrained from ordering that Plaintiff be given equal opportunity to participate in the Commission, because the production of documents pursuant to the preliminary injunction would facilitate his full participation moving forward.  *Dunlap I*, 286 F. Supp. 3d at 109; *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 87 n.6 (D.D.C. 2018) (*Dunlap II*) (discussing *Cummock v. Gore*, 180 F.3d 282, 293 (D.C. Cir. 1999) (Rogers, J., concurring)).  But now that the Commission has terminated, the production of these documents is necessary to remedy deficiencies in Plaintiff's opportunity to fully participate during the life of the Commission.  Production of this quasi-procedural category of documents could illuminate ways in which Plaintiff's substantive contributions were inhibited at the time, and he could respond accordingly after the fact. *See Dunlap II*, 319 F. Supp. 3d at 88-89.  Accordingly, Defendants shall provide Plaintiff with the documents in this category by **FEBRUARY 27, 2019**.

- "Emails and proposals with/from third-party data analysis entities and Commission/EOP staff":  These communications may contain information that "the Commission [was] considering relying on in the course of developing its final recommendations."  *Dunlap I*, 286 F. Supp. 3d at 106.  And they may "include[ ] material that commissioners solicited and subsequently received from third parties," which this Court has expressly instructed that the preliminary injunction covers.  *Dunlap II*, 319 F. Supp. 3d at 89.  In order to

determine whether to compel production of these documents even after the dissolution of the Commission, the Court requires further information about the type of entities, the type of data, and the context for these communications.

- "Email with potential panelist about participation in Sept. 12 meeting": The Court has indicated that Plaintiff was entitled to certain types of communications concerning the September 12, 2017, meeting, including at least some communications regarding potential speakers. *See Dunlap I*, 286 F. Supp. 3d at 108. To facilitate the Court's evaluation of this communication, Defendants must further describe its context, including the identity of this potential panelist, who proposed his or her participation, and the content of this communication.

- "Materials forwarded to Commission staff by NASS": This category is no longer at issue because Plaintiff conditionally offered to forego it, and it is among the categories that the Court has ordered, above, that Plaintiff cease pursuing.

- "Emails with public/staff attendees at Sept. 12 meeting": As mentioned above, certain communications regarding the September 12, 2017, meeting fall within the scope of the Court's preliminary injunction. Defendants must further describe the content of these communications and the identities of senders and recipients to enable the Court to assess whether these documents must be produced.

- "Inquiry from DHS re: current status of Commission; internal talking points": DHS's interaction with the Commission prior to the Commission's termination is relevant because of its potential role in carrying on the Commission's work afterwards. *See, e.g.*, *Dunlap II*, 319 F. Supp. 3d at 79, 90. Further information about these materials may indicate whether an opportunity to respond to them *post hoc* is necessary to vindicate Plaintiff's right to fully participate in the Commission. Defendants shall further describe the context for this inquiry (e.g., whether and how it was solicited, and its content) and the internal talking points (e.g., who wrote them, for whom, and their content).

Upon receipt of the proposed schedule and other responses outlined above, the Court shall issue such further decisions as may be necessary to resolve this matter efficiently. The Court welcomes any further effort by the parties to narrow this dispute before the Court makes such decisions.

**SO ORDERED.**

Dated: January 28, 2019

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

4