**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MATTHEW DUNLAP,<br><br>            Plaintiff,<br><br>    v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY *et al.*,<br><br>            Defendants. | Civil Docket No. 17-cv-2361 (CKK) |

**DEFENDANTS' RENEWED MOTION
FOR A PARTIAL STAY PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

STANDARD OF REVIEW ................................................................................................................3

ARGUMENT………..........................................................................................................................3

    I.        Defendants Are Likely To Succeed on the Merits of Their Appeal…. ...............................3

    II.       Defendants Will Be Irreparably Harmed Absent a Stay. ......................................................6

    III.     Plaintiff Will Not Be Substantially Harmed By a Stay........................................................8

    IV.     The Public Interest Supports Granting a Limited Stay .......................................................9

CONCLUSION..................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*Al-Anazi v. Bush*,
  370 F. Supp. 2d 188 (D.D.C. 2005) .................................................................................. 3

*In re al-Nashiri*,
  791 F.3d 71 (D.C. Cir. 2015) ............................................................................................ 4

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
  997 F.2d 898 (D.C. Cir. 1993) .......................................................................................... 5

*Ctr. for Int'l Envt'l Law v. Office of U.S. Trade Rep.*,
  240 F. Supp. 2d 21 (D.D.C. 2003) .................................................................................... 6

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
  217 F. Supp. 2d 48 (D.D.C. 2002) .................................................................................... 7

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ..................................................................................................... 4, 6

*Church of Scientology of California v. United States*,
  506 U.S. 9 (1992) .......................................................................................................... 7, 8

*Committee On the Judiciary U.S. House of Reps.*,
  575 F. Supp. 2d 201 (D.D.C. 2008) ............................................................................... 8, 9

*Cornucopia Inst. v. U.S. Dep't of Agric.*,
  560 F.3d 673 (7th Cir. 2009) ............................................................................................ 8

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985) .......................................................................................... 3

*\*Cummock v. Gore*,
  180 F.3d 282 (D.C. Cir. 1999) .................................................................................. *passim*

*\*Dunlap v. Presidential Advisory Comm'n on Election Integrity* ("*Dunlap II*"),
  319 F. Supp. 3d 70 (D.D.C. 2018) ................................................................................ 3, 7

*Jones v. Exec. Office of the President*,
  167 F. Supp. 2d 10 (D.D.C. 2001) .................................................................................... 3

*Neary v. FDIC*,
  104 F. Supp. 3d 52 (D.D.C. 2015) .................................................................................. 10

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
    518 F. Supp. 2d 174 (D.D.C. 2007) ....................................................................................... 6, 8

*Providence Journal Co. v. FBI*,
    595 F.2d 889 (1st Cir. 1978) ..................................................................................................... 6

*Pub. Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989) .................................................................................................................. 6

*United States v. Philip Morris, Inc.*,
    314 F.3d 612 (D.C. Cir. 2003) .................................................................................................. 8

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) .................................................................................................. 3

**Other Authorities**

Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017) ....................................................... 5

Letter from Sec. Dunlap to Vice President Pence & Sec. Kobach (Aug. 3, 2018),
    http://paceidocs.sosonline.org/ PDF/Dunlap%20PACEI%20Docs%20Findings%20letter%20-
    %20FINAL.080318.pdf ............................................................................................................ 4

PACEI Docs Page, http://paceidocs.sosonline.org/ ......................................................................... 6

Defendants respectfully move this Court to stay the portion of its January 28, 2019 Order ("Order") requiring disclosure of "emails discussing potential Commission members" pending appeal to the D.C. Circuit. *See* Order (Jan. 28, 2019), at 3, ECF No. 64; Notice of Appeal (March 1, 2019), ECF No. 67.

## INTRODUCTION

Defendants have taken significant steps to narrow the remaining issues in dispute and have exceeded the production requirements set forth in the Court's Order. Most notably, rather than just providing the additional descriptive information the Court requested for certain categories of documents, *see* Order at 3-4, Defendants produced these documents to Plaintiff, obviating any need for future proceedings with regard to these materials. *See* Joint Status Report, ECF No. 66. Defendants also produced the materials they had conditionally offered to provide, and negotiated a briefing schedule to resolve the remaining issues as to internal documents of the Executive Office of the President and the Office of the Vice President, which this Court has adopted. *See id.*; Minute Order (Feb. 28, 2019).

That leaves only the small number of documents regarding the appointment of potential Commission members, which the Court has ordered disclosed by March 8, 2019. *See* Minute Order (Feb. 22, 2019). Defendants respectfully contend that *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), does not "clearly and indisputably" entitle Plaintiff to such documents, which is the mandamus standard Plaintiff must meet to challenge the activities of the former Presidential Advisory Commission on Election Integrity ("Commission"). Therefore, Defendants respectfully request that this Court stay the portion of its Order related to these documents pending appeal.

1

Defendants satisfy all the elements of a stay pending appeal. Defendants are likely to succeed on the merits of their appeal because these documents do not implicate the concerns addressed in *Cummock*, as they do not involve the "work of the committee." Instead, the advice sought from these individuals is advice to be provided to the President in support of his exclusive duty to appoint members of the former Commission.

Defendants will also be irreparably harmed if these documents are released pending appeal. Once the information is disclosed, it cannot be recalled, and the confidentiality of these documents will be lost for all time. Moreover, the injury would be particularly salient here, since it would implicate the ability of the President to receive advice about the execution of his duties. Furthermore, Plaintiff will not be substantially injured by a limited stay. A preliminary injunction has been in place for a year, and the Commission at issue was dissolved over a year ago without ever issuing a report. Moreover, any delay in adjudicating one limited category of documents (consisting of approximately 20 documents) is outweighed by Defendant's voluntary disclosure of many more documents, obviating the need to further litigate whether or not they fall within the terms of the Court's preliminary injunction order. A stay will also serve the public interest, particularly because the remainder of this case can continue to be briefed and resolved while the limited appeal is pending.

Defendants, therefore, request that the Court stay the portion of its order requiring disclosure of "emails discussing potential Commission members" pending appeal to the D.C. Circuit. Pursuant to LCvR 7(m), Defendants have consulted with Plaintiff, who states that he opposes a stay pending appeal.

## STANDARD OF REVIEW

A party seeking a stay pending appeal must show that four factors weigh in favor of a stay: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam). "A party does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)." *Dunlap v. Presidential Advisory Comm'n on Election Integrity* ("*Dunlap II*"), 319 F. Supp. 3d 70, 83 (D.D.C. 2018) (citing *Cuomo*, 772 F.2d at 974). Furthermore, "courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (citations omitted).

## ARGUMENT

### I. Defendants Are Likely To Succeed on the Merits of Their Appeal.

First, Defendants are likely to succeed on the merits of their appeal, and they have, at a minimum, demonstrated a "serious legal question on appeal."

Plaintiff may only proceed in this litigation through the extraordinary writ of mandamus.[1] *See* Defs.' Opp'n Prelim. Inj., at 8-17, ECF No. 30. Mandamus, in turn, requires that the right to

---

[1] The Federal Advisory Committee Act ("FACA") does not create a private right of action, *see Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32-33 (D.D.C. 2011), and the Administrative Procedure Act ("APA") does not apply to the Office of the Vice President or the White House Office of Records Management, the entities with custody of the relevant documents, *see Jones v. Exec. Office of the President*, 167 F. Supp. 2d 10, 13-14 (D.D.C. 2001); *Wilson v. Libby*, 535 F.3d 697, 707-08 (D.C. Cir. 2008).

relief be "clear and indisputable," *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). Open legal questions, or ones where "the answer was hardly 'clear' *ex ante*," or where there is not on-point controlling precedent, are not sufficient. *In re al-Nashiri*, 791 F.3d 71, 86 (D.C. Cir. 2015).

There are at least two reasons why Defendants are likely to show that Plaintiff's right to relief is not "clear and indisputable" with respect to the limited set of Commissioner-appointment documents. First, *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), vindicated a member's "right to fully participate in the deliberations of a Commission," such that the member had a right "to review documents that were prepared for or relied upon the Commission in formulating its recommendations, and to amend her dissent if necessary to reflect this information." *Id.* at 285. This Court's preliminary injunction does not vindicate that right with respect to this category of documents. Here, the Commission was terminated without ever issuing a report or making any conclusions or recommendations. *See* Third Decl. of Christopher C. Hendon ("Third Herndon Decl.") ¶ 5, *Joyner v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-22568 (S.D. Fla. Jan. 16, 2018), ECF No. 82-2. Moreover, pursuant to this Court's orders, Plaintiff has already reviewed draft internal documents (not shared with other Commissioners nor published) as well as documents prepared by or for any of the former Commission members, and has drafted and published a response to these non-public documents. *See* Letter from Sec. Dunlap to Vice President Pence & Sec. Kobach (Aug. 3, 2018), http://paceidocs.sosonline.org/ PDF/Dunlap%20PACEI%20Docs%20Findings%20letter%20-%20FINAL.080318.pdf. The scope of *Cummock* in a mandamus context under these circumstances and with respect to these remaining documents is far from "indisputable." *See, e.g.*, Defs' Mem. Supp. Mot. for Reconsideration, ECF No. 39-1; Defs' Reply Supp. Mot. for

4

Reconsideration, ECF No. 47; Joint Status Report, ECF No. 54; Notice of Categories of Withheld Documents, ECF No. 58.

Moreover, the limited set of documents at issue here -- emails, involving one or more Commissioners and members of the Executive Office of the President, which discussed the appointment by the President of potential future Commissioners – is manifestly outside the scope of *Cummock*. *See* Order (Jan. 28, 2019), at 3, ECF No. 64. *Cummock* was about "confer[ing] on a committee member the right to fully participate in the work of the committee to which he or she is appointed." 180 F.3d at 291. But discussions about the potential appointment of Commission members do not constitute the "work of the committee," *e.g.*, the substantive policy-based recommendations it is to collectively provide to the President. *See* ECF No. 48 at 5-6. Rather, these discussions are separately designed to support the President's power to appoint members to the Commission – a task that is solely within his province. *See* Exec. Order No. 13,799 § 2 ("The President shall appoint the additional members [of the Commission] . . ." ). It is of no moment that others outside the White House participated in providing this advice. The President may rely on anyone he chooses to advise him with respect to his exclusive appointment power with regard to the Commission. *Cf. Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 910 (D.C. Cir. 1993) (noting that "[a] group directly reporting and advising the President must have confidentiality at each stage in the formulation of advice to him" and further stating that an exemption to disclosure statutes "may be constitutionally required to protect the President's executive powers").

Applying *Cummock* to presidential advice about the appointment of individuals in this way would come into direct tension with the Supreme Court's decision in *Cheney* (which, of course, post-dates *Cummock*), and which made clear that "separation-of-powers considerations

5

should inform a [court's] evaluation of a mandamus petition involving the President or the Vice President." *Cheney*, 542 U.S. at 382. The Supreme Court also made clear that "the Executive's constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation against it." *Id.* at 385 (citations omitted). That is particularly so when such a determination would interfere with the President's ability to discharge his duties. *See, e.g.*, *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 488-89 (1989) (Kennedy, J., with whom Rehnquist, C.J., and O'Connor, J. join, concurring in the judgment). At a minimum, and informed by the Supreme Court's post-*Cummock* case law, Defendants respectfully submit that they have raised a serious legal question regarding whether Plaintiff has a "clear and indisputable" right to such documents under these circumstances so as to tip the "likely to succeed" factor in Defendants' favor.

## II.     Defendants Will Be Irreparably Harmed Absent a Stay.

Defendants will also be irreparably harmed absent a stay, for a simple reason: once the information contained in these documents is released to Plaintiff, the information cannot ever be clawed back. *See, e.g.*, *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored."); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) ("Particularly in the FOIA context, courts have routinely issued stays where the release of documents would moot a defendant's right to appeal."); *Ctr. for Int'l Envt'l Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003); *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002). That is particularly true here: Plaintiff has already made previously released documents public, *see* PACEI Docs Page, http://paceidocs.sosonline.org/. Plaintiff's decision to release publicly

the documents he received pursuant to the Court's preliminary injunction order suggests that he will publicly release these documents. Once Plaintiff posts the documents online or otherwise publicly releases them, they cannot be recalled should Defendants prevail on appeal. Even if Plaintiff elected not to publicly release these documents, the confidential information within them would be known to him and could not be withdrawn. Moreover, while the injury reaped by disclosure may always exist, it is particularly present here, when disclosure would involve documents related to the President and who he should or should not appoint to a Presidential Commission. The injury would thus bear on core separation of powers concerns.

This Court's June 2018 order denying an earlier stay does not suggest that it should deny a stay here. There, the Court observed that it "presumes that Defendants are troubled, not about the content of documents they did not address, but rather by the Court's finding, on December 22, 2017, that Plaintiff has a *right* to certain Commission documents." *Dunlap II*, 319 F. Supp. 3d at 107. That presumption is not applicable here: rather, Defendants here object specifically to the disclosure of the information in these documents, which, as already discussed, *see* ECF No. 58, they had not understood this Court's preliminary injunction orders to encompass, and to which they have argued Plaintiff is not entitled.

Moreover, the Supreme Court's decision in *Church of Scientology of California v. United States*, 506 U.S. 9, 10-12 (1992), on which the Court previously relied, is not to the contrary. As this Court noted, *see Dunlap II*, 319 F. Supp. 3d at 108, in that case, the Supreme Court held that a case challenging the delivery of tape recordings to the IRS during litigation did not moot the appeal. The Court noted that a taxpayer has a "possessory interest in their records," and that the court could effectuate this interest by "ordering the Government to destroy or return any and all copies it may have in its possession." *Church of Scientology*, 506 U.S. at 13. The case was not,

therefore, moot. This case does not apply here for several reasons. First, *Church of Scientology* merely held that the fact that a court could issue "some relief" did not mean the case was constitutionally moot; it said nothing at all about whether the defendant would be irreparably injured by the act of disclosure for purposes of a stay pending appeal (as Defendants would be here). Moreover, here, Defendants' interest is not merely a possessory interest in the physical or electronic records, but an interest in the information contained within those records. Ordering the post-release destruction of those records would not vindicate that interest. Moreover, in the FOIA context (which also concerns the release of information within records), courts have overwhelmingly concluded that a case is moot when the documents sought have been released. *See, e.g.*, *People for the Am. Way Found*, 518 F. Supp. at 177 (citing *John Doe Agency, et al. v. John Doe Corp.*, 488 U.S. 1306, 1308-09 (1989) (Marshall, J., in chambers)). The mere fact that a court might issue a future declaratory judgment about the status of the documents would not render the case un-moot. *See, e.g.*, *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 675-76 (7th Cir. 2009) (citing *Church of Scientology*, 506 U.S. at 12).

### III. Plaintiff Will Not Be Substantially Harmed By a Stay.

Furthermore, a stay of a limited part of this Court's order pending appeal is appropriate because the "issuance of the stay will not cause substantial harm to other parties." *Committee On the Judiciary U.S. House of Reps. v. Miers*, 575 F. Supp. 2d 201, 203 (D.D.C. 2008) (quoting *United States v. Philip Morris, Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003)). Here, as discussed above, the Commission no longer exists, Plaintiff has already received thousands of pages of records, and he has already written a public report about the former Commission's activities. Information about the *appointment* of Commissioners would not vindicate his interest under *Cummock* in fully participating in the work of the former Commission. Nor did the former

Commission publish a report that others might presently rely upon (and such that Plaintiff's need to prepare a response would need to be immediately effectuated, as in *Cummock*). Rather, these Commission-related records are mainly of historical interest – and that interest can be vindicated at the end of any appeal. *Contra, e.g.*, *Committee on the Judiciary*, 575 F. Supp. 2d at 208 (Congress will suffer "substantial harm" if it is denied information prior to the expiration of the current Congress). And, as discussed below, Plaintiff will not be harmed because only one discrete part of the case would be stayed pending appeal. The remainder of the case would continue unabated, including briefing on Plaintiff's alleged entitlement to internal White House documents that never circulated outside the White House.

Finally, any delay in adjudicating this narrow category of documents is more than countered by Defendant's release of many more documents without further litigation, thereby providing Plaintiff with information to which Defendants maintain is not within the reach of the Court's prior preliminary injunction order, and to which Plaintiff is not entitled under *Cummock*. *See* Joint Status Report, ECF No. 66 (discussing production).

**IV.    The Public Interest Supports Granting A Limited Stay.**

Finally, the public interest supports granting a stay limited solely to the Commissioner-selection related documents. The granting of a limited stay would not prevent this Court from resolving Plaintiff's entitlement to "the remaining OVP and EOP internal records." Order (Jan. 28, 2019), at 2, ECF No. 64. Those proceedings will continue unimpeded. In addition, not only is Plaintiff not entitled to the Commissioner-selection documents, but these same documents contain, *inter alia*, discussions about third-parties who were not appointed to the former Commission. Those individuals have privacy interests in these records, which would be best served by allowing for full appellate review of whether that information is subject to disclosure

under the unique facts of this case. *Cf. Neary v. FDIC*, 104 F. Supp. 3d 52, 58 (D.D.C. 2015) (noting that job applicant information may be exempt from disclosure under FOIA for reasons of personal privacy).

## **CONCLUSION:**

For the aforementioned reasons, this Court should stay the portion of its January 28, 2019 order requiring Defendants to produce "emails discussing potential Commission members" pending appeal.

Dated:  March 1, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINA A. WOLFE
JOSEPH E. BORSON (Va. Bar No. 85519)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-1944 / Fax: (202) 616-8460
E-mail: Joseph.Borson@usdoj.gov