**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

June 14, 2019

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

By ECF

Hon. Colleen Kollar-Kotelly
U.S. District Court for the District of Columbia
333 Constitution Ave. N.W.
Washington D.C. 20001

          Re:    *Matthew Dunlap v. Presidential Advisory Commission on Election Integrity, et al.*, No. 17-cv-2361-CKK (D.D.C.)

Dear Judge Kollar-Kotelly:

      I write on behalf of Plaintiff Matthew Dunlap ("Secretary Dunlap") in response to the Court's minute order dated June 13, 2019. On January 28, 2019, the Court ordered the Defendants to provide Secretary Dunlap with "Emails discussing potential Commission members (e.g. *Vaughn* Index entry Nos. 361, 167)." Dkt. 64 at 3 ("January 28 Order"). The Court held that Secretary Dunlap was entitled to these materials because these "discussions concerning additional Commission members took place while he was a commissioner, involved one or more commissioners, and did not solicit his input." *Id.* This reasoning was sound then, and it is sound now. Defendants' submission on June 12, 2019 of a declaration averring that certain commissioners were not formally appointed to the Commission until June 23, 2017 and July 11, 2017 (Dkt. 79-1 ("Second Droege Declaration")) does not undercut the January 28 Order.

      Although the Defendants may have given contradictory information in the past, the fact that Vice Chair Kobach was not formally appointed a commissioner until June 23, 2017, and that Commissioners Adams and von Spakovsky were not formally appointed as commissioners until July 11, 2017, was disclosed in another proceeding involving the Commission. *See* Fourth Declaration of Andrew J. Kossack, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity et al.*, 17-cv-1364, Dkt. 33-2 (Sept. 29, 2017) at ¶ 1 (listing the dates the Commissioners were "formally appointed").[1] That

---

[1] The claim that Vice Chair Kobach was not officially appointed to the Commission until June 23, 2017 is highly questionable. Kris Kobach was appointed the Vice Chair of the Commission on May 11, 2017, the day the Commission was created. *Dunlap*, 286 F. Supp. 3d at 100. By the Commission's own rules—and contrary to the Second Droege Declaration—this means that Vice Chair Kobach also became a Commissioner that day. Exec. Order No. 13,799, 82 Fed. Reg. 22389 (May 11, 2017) ("The Vice President may select a Vice Chair of the Commission from among the members appointed by the President.").

The Honorable Colleen Kollar-Kotelly
June 14, 2019
Page 2

Commissioners were acting as Commissioners prior to their official appointment, *ultra vires*, is also consistent with the allegations in Secretary Dunlap's Complaint. *See* Compl., Dkt. 1, at ¶¶ 57, 94-101; *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 109 (D.D.C. 2017) ("In his complaint, Plaintiff also seeks a ruling that certain alleged activities of the Commission prior to the filing of its charter constitute a violation of FACA § 9(c).").

But whether or not the information is new, the dates of formal appointment should be irrelevant to the Court's decision of January 28, 2019. Function, rather than official form, is dispositive when interpreting FACA. *See, e.g.*, *Northwest Forest Resource Council v. ESPY*, 846 F. Supp. 1009, 1011-12; 1014-15 (D.D.C. 1994) (ruling, over the objection of the government, that an advisory committee is subject to FACA and that plaintiff is entitled to documents from all 600-plus committee "participants" even though the government was only "presently willing to acknowledge" that 37 of those "participants . . . must be deemed 'members.'"); *see also Dunlap*, 286 F. Supp.3d at 109 (rejecting Defendants' argument that the Court should not issue mandamus because the Defendants merely "agreed voluntarily to abide by the provisions of FACA" without conceding that the Commission is subject to FACA). The record clearly establishes that Vice Chair Kobach and Commissioners Adams and von Spakovsky each functioned as Commissioners prior to their official appointments. Therefore, the emails at issue in the January 28 Order are "discussions . . . [that] took place while [Dunlap] was a commissioner,[2] involving one or more commissioners."

The "*Vaughn*-type index" created in a related action to track Commission documents is instructive. Order, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity et al.*, 17-cv-1364, Dkt. 28 at 1 (Aug. 30, 2017) ("Aug. 30 Order"). Defendants produced this *Vaughn* index on September 29, 2017, along with a declaration from the Executive Director and Designated Federal Officer for the Commission, Andrew Kossack ("DFO Kossack"). *See* Third Declaration of Andrew J. Kossack, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity et al.*, 17-cv-1364, Dkt. 33-1 (Sept. 29, 2017) ("Third Kossack Declaration") and Document Index, *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity et al.*, 17-cv-1364, Dkt. 33-4 (Sept. 29, 2017) ("the *Vaughn* Index"). The *Vaughn* Index has also been used extensively in this case to adjudicate Secretary Dunlap's rights. *See, e.g.*, Notice of Categories of Withheld Documents, Dkt. 58 (Defendants explaining how they complied with the Court's issuance of a preliminary injunction by reference to the *Vaughn* Index); January 28 Order at 3 (referencing *Vaughn* Index entry numbers to describe examples of documents that must be produced).

---

[2] Like other individuals announced as Commissioners on the day the Commission was created, Secretary Dunlap believed that he was appointed to the Commission on May 11, 2017. *See* Declaration of Matthew Dunlap, Dkt. 7-1 at ¶ 1 ("I was appointed to the Presidential Advisory Commission on Election Integrity (the "Commission") on May 11, 2017."); *see infra* at 4.

The Honorable Colleen Kollar-Kotelly
June 14, 2019
Page 3

In his declaration accompanying the *Vaughn* Index, DFO Kossack organized documents into different categories to explain why he believed they were not subject to disclosure under FACA § 10(b). Third Kossack Declaration at 7-13. The status of the person who either originated or received the document was a crucial factor in his determinations. *Id.* at 11 (excluding from disclosure "(n) Emails and documents created not in an individual's capacity as a Commission member, but in the member's other professional capacity," which are "not subject to section 10(b) because they are not part of the work of the Commission, . . ."); *id.* at 13 (excluding from disclosure "(w) Emails and documents received from third parties volunteering to collaborate on Commission work and any associated responses or exchanges" because, *inter alia*, they "were not solicited by the Commission nor used or prepared by Commissioners for the work of the Commission.").

In the January 28 Order, the Court identified Entries 361 and 167 as two examples of "discussions concerning additional Commission members [that] took place while [Secretary Dunlap] was a commissioner, [that] involved one or more commissioners," and held that Secretary Dunlap is entitled to their production. January 28 Order at 3. Entry 167 is an email sent by Commissioner J. Christian Adams to DFO Kossack and OVP Counsel on July 6, 2017, *four days before his "formal" appointment*. (The *Vaughn* Index at 12, entry 167). Entry 361 is an email sent by OVP Counsel to DFO Kossack and Commissioners Adams and von Spakovsky on June 14, 2017, *nearly one month before either were "formally" appointed*. (The *Vaughn* Index at 21, entry 361).

Despite Commissioners Adams and von Spakovsky's technical status as non-Commissioners at the time of these communications, DFO Kossack did not assert that these emails were being withheld under either category (n), category (w), or any other category created to classify communications with non-Commissioners that were being withheld. Instead, DFO Kossack asserted that they should be withheld under category (g): "Emails and associated materials *sent by individual Commission members* discussing staffing and potential Commission members." Third Kossack Declaration at 9 (emphasis added). DFO Kossack gave four more examples of "category (g)" documents in his Declaration:

- Entry 162, an email sent by Commissioner Adams to OVP Counsel on May 18, 2017, *nearly two months before his "formal" appointment*. The *Vaughn* Index at 12, entry 162.

- Entry 357, an email sent by Commissioner Spakovsky to Vice Chair Kobach, Commissioner Adams, OVP Counsel, and OVP staff on May 15, 2017, *nearly two months before his "formal" appointment*. The *Vaughn* Index at 21, entry 357.

- Entry 362, an email sent by DFO Kossack to Vice Chair Kobach on June 16, 2017, *one week before his "formal" appointment*. The *Vaughn* Index at 21, entry 362.

The Honorable Colleen Kollar-Kotelly
June 14, 2019
Page 4

- Entry 364, emails sent between Vice Chair Kobach and DFO Kossack on June 17, 2017 and June 19, 2017, *several days before his "formal" appointment*. The *Vaughn* Index at 21, entry 364.

The fact that these documents were even collected in the first place demonstrates that each of these individuals knew they were acting as Commissioners and conducting the work of the Commission prior to their official appointments. *See* Aug. 30 Order at 2 (specifying that the *Vaughn* Index should include documents that were "created or obtained by a Commission member in the course of his or her work for the Commission."). Other Commissioners also believed that they were engaged in Commission work prior to their formal appointments. Indeed, every person who was announced as a commissioner on May 11, 2017, produced documents to the Commission that they considered to have been "created or obtained . . . in the course of his or her work for the Commission" that predated their formal appointments on June 23, 2017. *See* the *Vaughn* Index at 21, entries 352-369 ("Materials of Vice Chair Kris Kobach" dated prior to his formal June 23, 2017 appointment); the *Vaughn* Index at 14-15, entries 209-217 ("Materials of Commission Member Matthew Dunlap" dated prior to his formal June 23, 2017 appointment); the *Vaughn* Index at 28, entries 510-512 ("Materials of Commission Member Connie Lawson" dated prior to her formal June 23, 2017 appointment); the *Vaughn* Index at 17, entries 263-264 ("Materials of Commission Member William Gardner" dated prior to his formal June 23, 2017 appointment); the *Vaughn* Index at 13-14, entries 191-192 ("Materials of Commission Member Kenneth Blackwell" dated prior to his formal June 23, 2017 appointment); and the *Vaughn* Index at 30, entries 539-541 ("Materials of Commission Member Christy McCormick" dated prior to her formal June 23, 2017 appointment).

The argument implicitly raised by the Defendants—that Secretary Dunlap's rights to certain documents turn on when Commissioners were formally appointed—has never been raised by Defendants during this case's long history. When Defendants attempted to stay the Court's January 28 Order, they did not argue that Secretary Dunlap was not entitled to these documents because these were communications between non-Commissioners. *See* Defendants' Motion for a Partial Stay Pending Possible Appeal, Dkt. 65. To the contrary, Defendants admitted that the documents at issue are "emails, involving one or more Commissioners and members of the Executive Office of the President." *Id.* at 5. They did not make this argument in their Renewed Motion for a Partial Stay Pending Appeal. *See* Dkt. 68 at 5. Nor in their Motion to Dismiss. *See* Dkt. 75. Nor in their appeal of the January 28 Order. *See* Brief for Appellants, 18-5266, Dkt. 1791875 at 8-9 (describing the January 28 Order as requiring the government to produce "a collection of emails in which personnel from the Office of the Vice President, some members of the Commission, and Commission staff discuss the qualification of individuals the President might consider nominating as additional Commission members.").

Up to this point, none of the Court's decisions about Secretary Dunlap's rights have turned on when formal appointments to the Commission were made, and with good reason. The Defendants elected to announce Commission members and begin work before the final paperwork was processed, but this carelessness or delay should not allow the Defendants to

The Honorable Colleen Kollar-Kotelly
June 14, 2019
Page 5

avoid their obligations under FACA.  A rule that emphasized the date of formal appointment, when that may occur more than a month after the identities of the committee members are announced, would facilitate gamesmanship and tactical decision about when to "officially" appoint commissioner in order to evade the disclosure and other requirements of FACA.  It would allow the government to imbue a committee with the political legitimacy that accompanies FACA compliance while violating FACA's core principle: that the committee must be a body of individuals with diverse opinions that acts as a group:

> The group's activities are expected to, and appear to, benefit from the interaction among the members both internally and externally.  Advisory committees not only provide ideas to the government, they also often bestow political legitimacy on that advice. . . .  When the executive branch endorses its advice and seeks to promote the policy course suggested by the committee, the executive branch draws upon the committee's political legitimacy.  Congress' effort to ensure that these committees are balanced in terms of viewpoint recognizes their usefulness for political (and patronage) purposes.  But committees bestow these various benefits only insofar as their members act as a group.  The whole, in other words, must be greater than the sum of the parts.

*Association of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 913-14 (D.C. Cir. 1993).

The Second Droege Declaration does not provide any reason for the Court to alter its January 28 Order.  Secretary Dunlap was entitled to the documents the Court discussed in that order when the Court granted his preliminary injunction over 18 months ago, and he is still entitled to those documents today.

Respectfully submitted,

/s/ Harry Sandick

Harry Sandick (admitted *pro hac vice*)