**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MATTHEW DUNLAP, *Plaintiff*, v. PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*, *Defendants*. |

Civil Action No. 17-2361 (CKK)

**MEMORANDUM OPINION**
(June 21, 2019)

Defendants have appealed the Court's Order that they must produce "[e]mails discussing potential Commission members" pursuant to the Court's preliminary injunction. Order, ECF No. 64, at 3. Presently Defendants move for a stay of their obligation to produce those emails, while briefing of other remaining issues continues.

Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Defendants' [68] Renewed Motion for a Partial Stay Pending Appeal. The Court shall continue to **STAY** Defendants' obligation to produce the emails discussing potential Commission members pending resolution of Defendants' appeal.

---

[1] The parties' briefing of the present motion consists of the following:

- Defendants' Renewed Mot. for a Partial Stay Pending Appeal, ECF No. 68 ("Defs.' Mot.");
- Opp'n to Defs.' Renewed Mot. for a Partial Stay Pending Appeal, ECF No. 70 ("Pl.'s Opp'n");
- Defs.' Reply in Further Supp. of Their Renewed Mot. for a Partial Stay Pending Appeal, ECF No. 71 ("Defs.' Reply"); and
- Notice of Suppl. Auth., ECF No. 72.

1

# I. BACKGROUND

The Court's prior decisions describe the short life of the Presidential Advisory Commission on Election Integrity and most of the pertinent proceedings in this litigation. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96 (D.D.C. 2017) (*Dunlap I*); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70 (D.D.C. 2018) (*Dunlap II*).

To briefly summarize, the Court issued a preliminary injunction compelling Defendants to produce certain documents to Plaintiff, who at that time was a member of the Commission and had not received information to which he was entitled. After the Commission was disbanded, the Court denied Defendants' request for reconsideration of the preliminary injunction. The Court also found that Defendants were not entitled to a stay of the Court's preliminary injunction pending appeal.

Defendants then complied in part with the Court's preliminary injunction compelling production of certain documents. A number of sticking points remained. Defendants raised certain categories of documents to which they did not consider that Plaintiff was entitled under the Court's orders. Disputes about most of those categories have since been resolved. One of the lingering issues is whether Defendants must produce certain emails about potential Commission members.

When that issue ripened, the Court determined on January 28, 2019, that Plaintiff was entitled to these emails to vindicate rights that flowed from the Court's earlier decisions. *See* Order, ECF No. 64, at 3. The Court reasoned as follows:

> "<u>Emails discussing potential Commission members (e.g., *Vaughn* Index entry Nos. 361, 167)</u>": As Plaintiff observes, discussions concerning additional Commission members took place while he was a commissioner, involved one or more other commissioners, and did not solicit his input. [Pl.'s Resp. to Defs.' Notice of Categories of Withheld Docs., ECF No. 59,] at 4. Previously, the Court refrained from ordering that Plaintiff be given equal opportunity to participate in the

> Commission, because the production of documents pursuant to the preliminary injunction would facilitate his full participation moving forward. *Dunlap I*, 286 F. Supp. 3d at 109; *see also* [*Dunlap II*, 319 F. Supp. 3d at 87 n.6] (discussing *Cummock v. Gore*, 180 F.3d 282, 293 (D.C. Cir. 1999) (Rogers, J., concurring)). But now that the Commission has terminated, the production of these documents is necessary to remedy deficiencies in Plaintiff's opportunity to fully participate during the life of the Commission. Production of this quasi-procedural category of documents could illuminate ways in which Plaintiff's substantive contributions were inhibited at the time, and he could respond accordingly after the fact. *See Dunlap II*, 319 F. Supp. 3d at 88-89.

Order, ECF No. 64, at 3. Defendants have appealed the Court's Order to produce these emails. Notice of Appeal, ECF No. 67. Pending the Court's resolution of their (renewed) motion to stay that production obligation, the Court granted a limited stay. Min. Order of Mar. 4, 2019.[2] In order to sharpen the parties' briefing, the Court shared its initial impression of the motion:

> Defendants have made a viable claim of irreparable damage if they were compelled to produce these emails pending appeal. Defendants have already produced a number of other materials, and the Court has set a briefing schedule regarding the production of internal records of the Executive Office of the President and the Office of the Vice President.

Min. Order of Mar. 4, 2019. The Court instructed Plaintiff to focus on "the prejudice, if any, that he would suffer" as a result of a stay pending appeal. *Id.*

After briefing concluded, the Court requested *ex parte* submission of the emails at issue for the Court's *in camera* review.[3] Min. Order of May 22, 2019; Defs.' Notice of Delivery for *in Camera* Inspection, ECF No. 76. Review of those emails raised a question about the timeline of Commission appointments, so the Court invited or permitted further filings. *See* Min. Orders of

---

[2] The renewal of this motion stems from the Court's denial of its predecessor without prejudice. Rather than grant their initial request for a stay of the Court's Order to produce these emails, while Defendants decided whether to appeal, the Court simply gave Defendants more time to produce these emails. Min. Order of Feb. 22, 2019. Now that Defendants have moved forward with their appeal, they properly renew their motion.

[3] The Court also asked that the emails be submitted under seal. Defendants did not submit a motion to seal with the emails.

June 11, 2019, and June 13, 2019; Notice of Filing, ECF No. 79; Resp. to Defs.' June 13, 2019 Notice of Filing, ECF No. 83; Defs.' Resp. to Pl.'s June 14, 2019, Filing, ECF No. 81-1.

The only issue presently before the Court is whether its Order to produce emails concerning potential Commission members should be stayed pending Defendants' appeal. That issue is ripe for resolution. Having reviewed the emails, the Court may now make a more informed decision.

## II. LEGAL STANDARD

A party that moves for a stay pending appeal bears the burden of showing that the balance of four factors weighs in favor of the stay:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam); *see also id.* at 978 ("On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy."); *Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1263-64 (D.C. Cir. 2007) (Randolph, J., concurring) (citing *Cuomo* as demonstrative of the Court of Appeals' "long-standing principles governing stays").

"The test for a stay or injunction pending appeal is essentially the same" as the test for a preliminary injunction, "although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay[.]" *Al–Anazi v. Bush*, 370 F. Supp. 2d 188, 193 & n.5 (D.D.C. 2005) (citing *United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003), *abrogated on other grounds*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *Cuomo*, 772 F.2d at 978; *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977)).

4

"A party does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) (Kollar-Kotelly, J.); *see also Cuomo*, 772 F.2d at 974 ("Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*."). Ultimately, a court must weigh the factors depending on the circumstances of the particular case. *See, e.g.*, *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003).

## III. DISCUSSION

Defendants have discharged their burden to justify a stay of their email production obligation pending the Court of Appeals' decision.

### A. Likelihood That Defendants Prevail on the Merits

The Court found that Plaintiff is entitled to production of emails concerning potential Commission members "to remedy deficiencies in Plaintiff's opportunity to fully participate during the life of the Commission." Order, ECF No. 64, at 3. That opportunity is grounded in *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999). This appeal is the first to test the Court's application of *Cummock* to the Commission.[4]

Defendants argue that the Court should evaluate their likelihood of appellate success based on whether Plaintiff's entitlement to documents is "clear and indisputable," such that mandamus is warranted. Defs.' Mot. at 3-4 (quoting *Cheney v. U.S. District Court for the District of*

---

[4] Defendants previously filed an appeal in this case, but the Court understands that it did not go forward, as Defendants chose instead to comply, bit by bit, with much of the Court's preliminary injunction.

*Columbia*, 542 U.S. 367, 380-81 (2004)) (internal quotation marks omitted). In granting the preliminary injunction, this Court indeed found that Plaintiff was "likely to succeed in obtaining mandamus relief" because, among other reasons, he had "a clear and indisputable right to further documents" under *Cummock*. *Dunlap I*, 286 F. Supp. 3d at 105-06.

When the Court denied reconsideration of that decision, however, the Court lacked information that has since surfaced. Aside from documents about data disposition and others that were privileged, Defendants had not "argue[d] that *any other* documents are sensitive." *Dunlap II*, 319 F. Supp. 3d at 106-07. At that time, either the parties had not briefed, or had not sufficiently focused the Court's attention on, the specific category of documents presently at issue: *non-privileged* communications about potential Commission members.

Although Defendants do not invoke privilege over these documents, they argue that these emails were "intended to provide confidential advice to the President (through the Office of the Vice President) on the appointment of potential members to the Commission." Defs.' Reply at 5. That argument dovetails with separate, ongoing briefing in this case regarding separation of powers concerns with the disclosure of Executive Office of the President ("EOP") and/or Office of the Vice President ("OVP") documents.

Plaintiff attempts, however, to distinguish the present issue from that separate briefing by indicating that these emails are "*not* documents internal to the White House, the Executive Office of the President ('EOP'), or the Office of the Vice President ('OVP') that have not been shared with any commissioners." Pl.'s Opp'n at 1-2. Rather, "[e]ach document was shared with at least one commissioner who was not a federal government employee—but not with Secretary Dunlap." *Id.* at 7. That, of course, supports the Court's decision to compel Defendants to produce the

6

documents in the first place, but it does not fully address potential separation of powers issues that might justify a stay.

In light of those issues, Defendants have raised a sufficiently significant legal question that this factor weighs somewhat in their favor, especially when considering the likelihood of irreparable harm. *See Cuomo*, 772 F.2d at 974; *Al–Anazi*, 370 F. Supp. 2d at 193 & n.5.

### B. Likelihood of Irreparable Harm to Defendants

Earlier in this litigation, when the Defendants requested a stay pending appeal of the Court's preliminary injunction, Plaintiff had not yet received any documents from Defendants. If the Court's decision were to be reversed, the "Court of Appeals could still craft a remedy that grants some relief to Defendants," because "Plaintiff could be compelled to return all copies of documents provided to him in compliance with the Court's preliminary injunction." *Dunlap II*, 319 F. Supp. 3d at 108.

That limited relief is no longer available. When Plaintiff received the documents produced pursuant to the Court's preliminary injunction, he published them online. *See* Defs.' Mot. at 6-7 (citing PACEI Docs Page, Maine Secretary of State Matthew Dunlap, http://paceidocs.sosonline.org/). If Plaintiff's past practice in this case is any guide, he is quite likely to publish to the world any further documents that he receives, including communications regarding potential commissioners. Any harm from the release of this information to Plaintiff and in turn to the public is likely "irreparable," at least in the lay sense.

But, in this Circuit, irreparability is effectively a term of art incorporating a further test: Would the harm be "both certain and great"? *Cuomo*, 772 F.2d at 976 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (internal quotation marks omitted); Pl.'s

7

Opp'n at 8.  Before evaluating the harm under that standard, the Court first considers what the alleged harm actually is.

Defendants focus on one particular harm that would arise if the documents were given to Plaintiff, and presumably made public:  The disclosure of information in "documents related to the President and who he should or should not appoint to a Presidential Commission." Defs.' Mot. at 7.  That harm would purportedly entail "core separation of powers concerns" inherent in such documents. *Id.*  Such separation of powers issues are the subject of separate briefing as to whether Plaintiff is entitled to internal EOP and OVP communications.  The Court agreed that those issues were appropriately resolved on motions briefing, not simply as a matter of compliance with the Court's preliminary injunction.  *See* Order, ECF No. 64, at 2.  Assuming, arguendo, that the Court of Appeals validates Defendants' concern in the presently pending appeal, then the harm from disclosure would be certain.  *See Wis. Gas Co.*, 758 F.2d at 674 ("[T]he movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin.").  That harm would also, arguably, be significant.  These emails contain frank comments—not all of which are positive—about the qualifications and viewpoints of potential Democratic appointees to the Commission.  The individuals involved are conveying sensitive advice.

The Court finds sufficient evidence of irreparable harm that this factor weighs modestly in Defendants' favor.

**C. Harm to Plaintiff of a Stay**

Plaintiff has already received reams of documents and responded publicly to them. Discussions about potential Commission members are not as central to Plaintiff's rights under *Cummock* as other documents that he already has received.  As the Court previously noted, "[p]roduction of this quasi-procedural category of documents *could* illuminate ways in which

8

Plaintiff's substantive contributions were inhibited at the time, and he could respond accordingly after the fact." Order, ECF No. 64, at 3 (emphasis added). In other words, the production of these documents *might not* have that effect.

Moreover, Plaintiff's efforts to participate in a national debate were furthered by his dissemination, already, of his "preliminary findings" upon review of the Commission documents. *See* Letter from Secretary Dunlap to Vice President Pence & Secretary Kobach (Aug. 3, 2018), http://paceidocs.sosonline.org/PDF/Dunlap%20PACEI%20Docs%20Findings%20letter%20-%20FINAL.080318.pdf, cited in Defs.' Mot. at 4. These communications about potential Commission members would appear to facilitate only a modest post-script to that assessment.

The harm to Plaintiff of awaiting the Court of Appeals' decision is accordingly rather limited. Defendants have the better argument as to this factor.

**D. Public Interest in Granting a Stay**

Previously the Court recognized the public interest in "efficient resolution of litigation concerning the now-defunct Commission." *Dunlap II*, 319 F. Supp. 3d at 109. That public interest has been furthered by the Court's document disclosure orders thus far. Defendants have, to their credit, now complied with most of the disclosure obligations reflected in these orders.

The public also has an interest in ensuring that government materials are kept confidential when necessary. The parties are litigating an aspect of that issue at present before this Court, and that motion practice will be unaffected by the stay. The Court of Appeals will weigh in further on the issue of this confidentiality through the presently pending appeal.

Moreover, privacy issues are at stake. A minor premise of the Court's prior denial of a stay was that this case appeared to lack privacy equities analogous to certain Supreme Court precedent. *See Dunlap II*, 319 F. Supp. 3d at 108 (citing *Church of Scientology of Cal. v. United*

9

*States*, 506 U.S. 9, 12-13 (1992)).  Now, however, the Court observes that there are certain people named in these emails who are not themselves communicating.  The Court has mentioned that comments about these individuals are frank.  Only one of those people, Judge Alan King, was ultimately appointed to the Commission.  Judge King and the other individuals may have a privacy interest that would be affected by disclosure of these communications.  That is true even if material were redacted.  To borrow terminology from the Freedom of Information Act ("FOIA") context, much of the releasable material is not "reasonably segregable" from the material that would give away their identities.  5 U.S.C. § 552(b); *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 259-62 & n.55 (D.C. Cir. 1977) (discussing the application of this standard to a FOIA release).  Accordingly, this factor weighs in favor of withholding the emails.

Plaintiff counters with a recent FOIA case in this jurisdiction.  Judge Amy Berman Jackson ordered the government to release the names of individuals in an email chain concerning potential appointees to the Commission.  Notice of Suppl. Auth., ECF No. 72 (discussing *Campaign Legal Ctr. v. U.S. Dep't of Justice*, 373 F. Supp. 3d 160 (D.D.C. 2019)).  The government had previously released several of the names on the grounds that those individuals' "heightened degree of 'engagement' with the government"—by authoring or forwarding the email—"reduced their privacy interest." *Campaign Legal Ctr.*, 373 F. Supp. 3d at 166.  The remaining names consisted of a recipient of an email in the thread; someone else who was copied on that email and characterized as sharing the author's concerns about pending appointments; and a third person identified as an expert on voter fraud matters. *Id.* at 166-67.  Applying the balancing test under FOIA Exemption 6, and recognizing the "strong presumption in favor of disclosure," Judge Jackson found that the public interest in identifying each individual who was connected to the appointment process outweighed these three individuals' respective privacy interests. *Id.* at 171-

73 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)) (internal quotation marks omitted). Accordingly, the remaining names needed to be released. As in this case, the government appealed Judge Jackson's order too, although the docket shows that the government most recently moved to dismiss that appeal. The expected appellate decision in this case will presumably address this issue.

On balance, the public interest considerations tilt in favor of a stay.

***

The Court finds that each factor weighs at least modestly in favor of a stay. Arguments that the Court has not addressed in this Memorandum Opinion do not affect its decision.

That decision is reinforced by recourse to the Court's inherent discretion, which can be triggered only in exceptional circumstances. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)); *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Landis*, 299 U.S. at 255 (requiring movant to prove "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else"). Those exceptional circumstances are present here.

Whereas before, Defendants had not produced any documents in this litigation, they have since produced many. Of the documents that remain withheld, the emails about potential Commission members raise putative separation of powers issues. The Court of Appeals will presumably address those issues in the pending appeal, and this Court too will address them, in part, during other proceedings in this case that will continue in parallel. Once these emails are produced to Plaintiff—and almost inevitably disseminated more broadly—there is no going back. And these emails would contribute only marginally to Plaintiff's inability to vindicate his

11

*Cummock* rights; he would not suffer much prejudice from his inability to obtain access to these emails sooner. This is a close call, but Defendants have persuaded the Court to stay their obligation to produce the emails at issue.

One recent development warrants brief closing remarks. The Court's review of the emails submitted *ex parte* and the appointments timeline shows that J. Christian Adams and Hans A. von Spakovsky were in communication with OVP personnel before they were publicly named and later formally appointed to the Commission. *See, e.g.*, 2d Decl. of Philip C. Droege, ECF No. 79-1, at 2-3. Kris Kobach too was in communication before he was formally appointed to the Commission, although he had previously been publicly named its Vice-Chair. *Id.* Only Judge King was appointed out of the batch of Democratic candidates that these individuals were discussing. But because the Court of Appeals is presently considering the Court's Order to produce these emails, the Court shall not address any further the implications of this new information.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Renewed Motion for a Partial Stay Pending Appeal.

The Court shall continue to **STAY** Defendants' obligation to produce the emails discussing potential Commission members pending resolution of Defendants' appeal.

An appropriate Order accompanies this Memorandum Opinion.

Dated: June 21, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge